**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

---

| | | |
|---|---|---|
| GLORIA STEGINSKY, Individually and On Behalf of All Others Similarly Situated, | : | Case No. 3:12-cv-00188-SRU |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| XCELERA INC., OFC LTD.,VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M. VIK, and HANS EIRIK OLAV, | : | |
| | : | |
| Defendants. | : | Dated: June 5, 2012 |
| | : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION FOR ENTRY OF DEFAULT JUDGMENT**

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham (*pro hac vice*)
Philip T. Taylor (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655
jabraham@aftlaw.com
ptaylor@aftlaw.com

**SCOTT + SCOTT LLP**
Joseph P. Guglielmo (CT 27481)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537- 432
jguglielmo@scott-scott.com

**Plaintiff's Counsel**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND.................................................................................................3

      Defendant OFC was Properly Served With
      the Complaint and Failed to Timely Respond ................................................3

ARGUMENT ..........................................................................................................................4

A.     Defendant OFC Failed to Respond to a Properly Served Complaint ................5

B.     Plaintiff Asserts Valid Insider Trading Claims Against Defendant OFC.........6

      1.     Plaintiff Properly States a Claim for Insider Trading Pursuant to
             Section 10(b) of the Exchange Act ....................................................7

             i.     Omission of a Material Fact ..................................................8

             ii.    In Connection With the Purchase or Sale of a Security.............8

             iii.   Scienter ..................................................................................9

             iv.   Reliance.................................................................................10

             v.    Causation...............................................................................10

             vi.   Damage..................................................................................10

      2.     Plaintiff Properly States a Claim Pursuant to Section 14(e) of the
             Exchange Act and Rule 14e-3 Promulgated Thereunder.....................11

      3.     Plaintiff Properly States a Claim Pursuant to Section 20A(a) of the
             Exchange Act ......................................................................................12

C.     Discovery Concerning the Amount of Damages is Appropriate .....................13

D.     Additional Proceedings Concerning Class Certification Are Appropriate ......14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Action S.A. v. Marc Rich & Co.*,
    951 F.2d 504 (2d. Cir. 1991) ........................................................................4

*Affiliated Ute Citzens v. U.S.*,
    406 U.S. 128 (1972) ......................................................................................10

*ALV Events International v. Johnson*,
    821 F. Supp. 2d 489 (D. Conn. 2010) ...............................................4, 6, 13

*Au Bon Pain Corporation v. Artect, Inc.*,
    653 F.2d 61 (2d Cir. 1981) ........................................................................4, 13

*Chiarella v. U.S.*,
    445 U.S. 222 (1980) .......................................................................................6

*Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*,
    480 F.2d 341 (2d Cir. 1973) ..........................................................................11

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
    183 F.3d 151 (2d Cir. 1999) .....................................................................13-14

*Davis v. Hutchins*,
    321 F.3d 641 (7th Cir. 2003) .........................................................................14

*Du Pont v. Brady*,
    828 F.2d 75 (2d Cir. 1987) ............................................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ......................................................................................10

*Feiner Family Trust v. VBI Corporation*,
    352 Fed. Appx. 461 (2d Cir. 2009) ..................................................................9

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000) ............................................................................7

*Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*,
    973 F.2d 155 (2d Cir 1992) .............................................................................4

**Page(s)**

*Iavarone v. Raymond Keyes Assoc., Inc.*,
    733 F. Supp. 727 (S.D.N.Y. 1990) ...............................................................12

*In re Pfizer Sec. Litig.*,
    No. 04 Civ. 9866,
    2012 U.S. Dist. LEXIS 44330 (S.D.N.Y.  Mar. 29, 2012) ..............................15

*In re Strum, Ruger & Co. Sec. Litig.*,
    No. 09 Civ. 1293,
    2011 U.S. Dist. LEXIS 11341 (D. Conn. Feb. 7, 2011) ....................................7

*Kramer v. Time Warner, Inc.*,
    No. 89 Civ. 8234 (LBS),
    1990 U.S. Dist. LEXIS 14171 (S.D.N.Y. Oct. 24, 1990) ...............................11

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (1991) .......................................................................................12

*Panos v. Island Gem Enterprises, Ltd.*,
    880 F. Supp. 169 (S.D.N.Y. 1995) ................................................................13

*Piper v. Chris-Craft Industries, Inc.*,
    430 U.S. 1 (1977) ...........................................................................................11

*Poptech, L.P. v. Stewardship Inv. Advisers, LLC*,
    No. 10 Civ. 967 (MRK),
    2012 U.S. Dist. LEXIS 37532 (D. Conn. Mar. 19, 2012) ..............................10

*Press v. Chemical Investor Services Corp.*,
    166 F.3d 529 (2d Cir. 1999) .............................................................................8

*Scheiber v. Burlington Northern, Inc.*,
    472 U.S. 1 (1985) ...........................................................................................11

*SEC v. Alexander*,
    160 F. Supp. 2d 642 (S.D.N.Y. 2001) ..........................................................8-9

*SEC v. Franco*,
    253 F. Supp. 2d 720 (S.D.N.Y. 2003) ..............................................................9

**Page(s)**

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968) ...................................................................................2, 6

*SEC v. Warde*,
    151 F.3d 42 (2d Cir. 1998) ...........................................................................................8

*SEC v. Zanford*,
    535 U.S. 813 (2002) .....................................................................................................8

*Telford v. Ideal Mortgage Bankers, Ltd.*,
    No. 09 Civ. 5518,
    2010 U.S. Dist. LEXIS 110540 (S.D.N.Y. Aug. 17, 2010) .....................................14-15

*Telequip Corp. v. Change Exchange*,
    No. 01 Civ. 1748,
    2004 U.S. Dist. LEXIS 14892 (N.D.N.Y. Aug. 3, 2004) ................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .....................................................................................................9

*Transworld Airlines, Inc. v. Hughes*,
    308 F. Supp. 679 (S.D.N.Y. 1969) ...............................................................................4

*U.S. v. Chestman*,
    947 F.2d 551 (2d Cir. 1991) .................................................................................7, 11

*U.S v O'Hagan*,
    521 U.S. 642 (1997) ..................................................................................................6, 8

## Statutes and Regulations

15 U.S.C. § 78j(b) .................................................................................................................6

15 U.S.C. §78n(e) ...............................................................................................................11

15 U.S.C. §78t-1 ..................................................................................................................7

17 C.F.R. § 240.10b-5(a) and (b)........................................................................................6,8

Plaintiff Gloria Steginsky ("Plaintiff") respectfully submits this memorandum of law in support of her motion for entry of default judgment against defendant OFC Ltd. ("OFC") on the issue of liability pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2).

## INTRODUCTION

OFC was properly served with the Complaint and a proof of service has been filed with the Court. *See* ECF No. 19. Nevertheless, OFC has failed to respond to the Complaint or even file an appearance in this action. Default has been entered by the Clerk of the Court. *See* ECF No. 35. Default judgment on the issue of liability should be entered as well because OFC lacks any meritorious defense to the claims asserted.

This action arises out of a fraudulent scheme to depress the trading price of the common stock of Xcelera Inc. ("Xcelera" or the "Company") by corporate insiders, in order to facilitate a squeezing out of minority shareholders at unfairly low prices. The Vik defendants and their family own over 75% of Xcelera's common stock and control its board of directors. Defendants pursued this goal by refusing to make any public statements concerning Xcelera's financial condition and results of operations and willfully violating the reporting requirements of Section 13(a) of the Securities Exchange Act of 1934 (the "Exchange Act") causing the Securities and Exchange Commission (the "SEC") to de-register Xcelera's stock and ultimately end trading of the stock in the United States.

Defendants' fraudulent scheme culminated in a tender offer (the "Tender Offer") made by defendant OFC, an entity incorporated in Malta, to acquire Xcelera common stock owned by Xcelera's minority shareholders for $0.25 per share. Hans Eirik Olav ("Olav"), the sole contact person for OFC identified in the Tender Offer material, is a long time business associate of defendant Alexander Vik, having served as a member of Xcelera's board of directors and also

manages substantial sums of money for Vik.  Olav, however, is only a front man as in prior similar purchases from Xcelera minority shareholders Michael J. Kugler ("Kugler"), another business associate of Vik, acted as the contact person for such purchases.

The Tender Offer was made without disclosing material facts -- or **any** facts for that matter -- concerning the operations and financial condition of Xcelera.  In doing so, OFC ran afoul of the well-settled "disclose or abstain" rule applicable to claims arising under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") first announced by the Second Circuit in its seminal decision in *Texas Gulf Sulphur*,[1] *i.e.*, a corporate insider purchasing stock from a public shareholder is required to either disclose all material facts prior to trading in such shares or, in the alternative, abstain from trading.  This fundamental principle of fair dealing embraced by the federal securities laws has been strengthened over the years by specific statutory enhancements contained in Section 14(e) of the Exchange Act directed towards the specific situation of tender offers and Section 20A(a) of the Exchange Act directed generally towards insider trading.

Taking the facts of the complaint as true, as is legally required in the context of a default, OFC has no meritorious defense to the claim that it is liable for insider trading in Xcelera common stock.  Therefore, as discussed in greater detail below, there is no reason to delay entering a final judgment on these claims against OFC while allowing it the opportunity to contest the amount of damages and, if it so desires, the propriety of class certification in this case.

---

[1]     401 F.2d 833 (2d Cir. 1968), *cert. denied*, 394 U.S. 976 (1969).

## FACTUAL BACKGROUND

On or about December 17, 2010, OFC commenced the Tender Offer with the stated purpose of acquiring 10 million shares of Xcelera common stock for $0.25 per share. *See* Complaint ¶¶3 and 42-43. OFC, a shell company incorporated under the laws of Malta, conducted the Tender Offer on behalf of defendant Alexander Vik and his family who collectively control over 75% of Xcelera's outstanding common stock. *Id.* Olav, the contact person for the Tender Offer serves on Xcelera's board of directors and manages money for Vik. *See* Complaint ¶15; Declaration of Alexander Vik ¶9 (attached to the Declaration of Jeffrey S. Abraham ("Abraham Decl.") as Exhibit A).

OFC took advantage of the lack of any publicly available information concerning Xcelera or a trading market in its stock to buy the Company's common stock for $0.25 per share. *See* Complaint ¶29. Defendant Olav is a long time business associate of defendant Alexander Vik and was listed as the contact person for OFC's Tender Offer. *Id.* ¶43. Olav has served in various roles under Vik's control, including as *a member Xcelera's board of director*s and an Xcelera subsidiary called Confirmit, Inc. *Id.* ¶¶15 and 40. Significantly, Olav also serves as an investment manager for defendant Vik's personal holding company, Sebastian Holdings, Inc. managing holdings in excess of $50 million focused on direct equity and debt investments . *See* Abraham Decl. Exhibit A ¶9.

**Defendant OFC was Properly Served With**
**the Complaint and Failed to Timely Respond**

On February 6, 2012, Plaintiff filed this action and published a notice disseminated over Business Wire which distributed news of this action nationally. *See* Abraham Decl. Exhibit B. On April 11, 2012, Plaintiff effected service of the Summons and Complaint on defendant OFC's registered office located in Birżebbugia, Malta, via the Convention on the Service of

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). *See* Certificate of Service (ECF No. 19). On April 20, 2012, Plaintiff filed the affidavit of service with the Court. *Id.* Pursuant to Rule 12(a)(1)(A)(i), the deadline for responding to the Complaint expired 21 days after service on May 2, 2012. On May 14, 2012, Plaintiff served Defendant OFC by mail with the Request to Enter Default which was filed with the Court that same day. *See* ECF No. 33 at 3. To date, defendant OFC has failed to respond to the Complaint or otherwise enter an appearance in this Action. *See* Abraham Decl. ¶10.

## ARGUMENT

Entry of default judgment is entrusted to the "sound judicial discretion" of the Court. *ALV Events International v. Johnson*, 821 F. Supp. 2d 489, 493 (D. Conn. 2010) (citation omitted). This Court has previously ruled that a default may be entered upon the failure of a defendant to timely respond to a complaint. *Id.* (citing Rule 55(b)(2)). In deciding whether to enter a default judgment the Court "is in the best position to evaluate the good faith and credibility of the parties." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d. Cir. 1991), *cert denied*, 503 U.S. 1006 (citation omitted). In addition, the Court may look to whether the complaint states a valid cause of action prior to entry of default judgment. *ALV Events*, 821 F. Supp. 2d at 493.

Upon a finding of default pursuant to Rule 55, a court shall accept "as true all the factual allegations of the complaint . . . ." *Au Bon Pain Corporation v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citing *Transworld Airlines, Inc. v. Hughes*, 308 F. Supp. 679 (S.D.N.Y. 1969), *aff'd*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)); *see also Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir 1992) ("a party's default is deemed to constitute a concession of all well pleaded allegations of liability").

- 4 -

**A.      Defendant OFC Failed to Respond to a Properly Served Complaint**

Pursuant to Rule 4(f)(1), service may be effected outside of the U.S. "by any international agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ."  The Hague Convention, in turn, provides that where the defendant has failed to appear judgment is proper where service was effected in sufficient time to enable the defendant to defend and: (a) the document was served according to the laws of the country in which it was served; or (b) the document was actually delivered to the defendant or his residence as provide for the Hague Convention.  *See* Hague Convention Article 15 (Abraham Decl. Exhibit C).  Maltese law provides that a company may be served by leaving a copy of the pleading at the company's registered office, principal office or place of business with any person authorized to act on the company's behalf or one of its employees.  *See* Malta Code of Organization and Civil Procedure §187(4)(a) (Abraham Decl. Exhibit D).

Here, Plaintiff has clearly established the grounds for entry of default judgment. Defendant OFC's registered office is located at 13, Curate Fenech Street, Birżebbugia, Malta. *See* OFC's Memorandum and Articles of Association at 2 (Abraham Decl. Exhibit E).  On April 11, 2012, service of the Summons and Complaint was made at OFC's registered office as certified by the Maltese Attorney General's office.  *See* ECF No. 19.  Accordingly, Plaintiff's service satisfies Rule 4(f)(1), Maltese Law and the Hague Convention.

Although defendant OFC has been properly served, it has failed to timely respond to the Complaint or otherwise appear in this action.  Plaintiff waited until May 14, 2012, twelve days after OFC's time to respond had expired on May 2, 2012, prior to requesting that a default be entered and also sent notice of that request to OFC's registered office.  Accordingly, defendant

OFC's failure to respond to the Complaint after having been properly served warrants entry of default judgment. *Accord ALV Events*, 821 F. Supp. 2d at 493.

**B.      Plaintiff Asserts Valid Insider Trading Claims Against Defendant OFC**

In enacting the Exchange Act, Congress meant to "eliminate the idea that the use of inside information for personal advantage was a normal emolument of corporate office." *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 n.9 (2d Cir. 1968) (citations omitted). As explained by the Second Circuit in the seminal insider trading case, *Texas Gulf Sulfur*:

> anyone in possession of material inside information must either disclose it to the investing public, or, if he is disabled from disclosing it in order to protect a corporate confidence, or he chooses not to do so, must abstain from trading in or recommending the securities concerned while such inside information remains undisclosed.

*Id.* at 848. That theme of ***disclose or abstain from trading*** is at the core of Plaintiff's claims asserted against defendant OFC, including Sections 10(b), 14(e) and 20A(a) of the Exchange Act.

Section 10(b) of the Exchange Act makes it unlawful to employ any manipulative or deceptive device in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b). Rule 10b-5 promulgated under the Exchange Act also forbids the use of "any device, scheme or artifice to defraud" or any other omissions of material fact. 17 C.F.R. § 240.10b-5(a) and (b) (2012). Those provisions have been interpreted to prohibit insider trading as a "deceptive device." *U.S. v O'Hagan*, 521 U.S. 642, 652 (1997) (quoting *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980)).

Section 14(e) and Rule 14e-3 were also designed to prohibit insider trading, however, more specifically in the context of a tender offer. As discussed by the Supreme Court in *O'Hagan*:

> One violates Rule 14e-3(a) if he trades on the basis of material nonpublic information concerning a pending tender offer that he knows or has reason to know has been acquired "directly or indirectly" from an insider of the offeror or issuer, or someone working on their behalf. Rule 14e-3(a) is a disclosure provision. It creates a duty in those traders who fall within its ambit to ***abstain or disclose***, without regard to whether the trader owes a pre-existing fiduciary duty to respect the confidentiality of the information.

521 U.S. at 669 (quoting *U.S. v. Chestman*, 947 F.2d 551, 557 (2d Cir. 1991) (en banc), *cert. denied*, 503 U.S. 1004 (1992)) (emphasis added).  This principle is also found in Section 20A(a) of the Exchange Act, which prohibits a person from "purchasing or selling a security while in possession of material, nonpublic information . . . ." 15 U.S.C. §78t-1.

OFC engaged in insider trading by purchasing Xcelera common stock while failing to disclose material, nonpublic information concerning the Company's financial condition, results of operations and future prospects.  Plaintiff has, therefore, stated valid causes of action against defendant OFC for the insider trading violations at issue.

### 1.   Plaintiff Properly States a Claim for Insider Trading Pursuant to Section 10(b) of the Exchange Act

The elements of a claim arising under Section 10(b) of the Exchange Act and SEC Rule 10b-5 are that a defendant (i) made a material misstatement or omitted to disclose a material fact (ii) in connection with the purchase or sale of a security (iii) with scienter (iv) upon which plaintiff relied (v) causing (vi) plaintiff to be damaged.  *See In re Strum, Ruger & Co. Sec. Litig.*, No. 09 Civ. 1293, 2011 U.S. Dist. LEXIS 11341, at *6 (D. Conn. Feb. 7, 2011) (citing *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)).  Plaintiff has adequately stated a claim for defendant OFC's liability under Section 10(b) of the Exchange act and SEC Rule 10b-5 thereunder.

### i.    Omission of a Material Fact

Rule 10b-5, promulgated by the SEC, provides for liability where a person employs a device to defraud or "omit[s] to state a material fact . . . ."  17 C.F.R. §240.10b-5(a) and (b). Plaintiff alleges that defendant OFC omitted to disclose material non-public information concerning Xcelera in connection with the purchase of Plaintiff's shares.  *Id.* ¶¶49-52.  Such conduct constitutes insider trading, *i.e.*, a deceptive device under the Exchange Act.  *See O'Hagan*, 521 U.S. at 651-52 (discussing the duty disclose or abstain from trading); *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998) (discussing insider's improper trading activity); *SEC v. Alexander*, 160 F. Supp. 2d 642, 650 (S.D.N.Y. 2001).  Accordingly, Plaintiff has properly stated that defendant OFC employed a deceptive device in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### ii.    In Connection With the Purchase or Sale of a Security

The "in connection with" element is met where "a fraudulent scheme and a purchase or sale of securities coincide."  *See SEC v. Zanford*, 535 U.S. 813, 822 (2002).  The Second Circuit has broadly construed the phrase "in connection with" to mandate only that the act complained of somehow induced the securities transaction at issue.  *See Press v. Chemical Investor Services Corp.*, 166 F.3d 529, 537 (2d Cir. 1999).

Here, Plaintiff alleges that defendant OFC failed to disclose material non-public information with the intent to induce Plaintiff and others to sell their shares of Xcelera common stock at an artificially deflated price.  *See* Complaint ¶49.  Accordingly, Plaintiff has adequately stated the "in connection with" element.

### iii.   Scienter

Scienter is "a mental state embracing intent to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  In the context of a claim for failing to disclose material facts in connection with a tender offer, such scienter exists where the defendant knows or recklessly disregards that it is failing to disclose material information in connection with a tender offer.  *See*, *e.g.*, *Alexander*, 160 F. Supp. 2d at 650-51.  Here, the Tender Offer materials failed to disclose ***any*** facts concerning Xcelera's financial condition or results of operations.  *See* Complaint ¶¶3 and 44.  In contrast, OFC through defendant Olav had access to such information.  *See* Complaint ¶¶15, 43 and 52.  Therefore, OFC acted knowingly in failing to disclose material information.  *Accord SEC v. Franco*, 253 F. Supp. 2d 720, 732 (S.D.N.Y. 2003) (imputing knowledge and scienter of an individual defendant to the trust defendant he allegedly controlled and caused to trade in violation of the Exchange Act).[2]

---

[2]     In previous litigation concerning Xcelera, the Second Circuit held that the plaintiff in that action had not adequately alleged scienter where the shareholders, themselves, called the defendants for information concerning the Company.  *See Feiner Family Trust v. VBI Corporation*, 352 Fed. Appx. 461, 463-64 (2d Cir. 2009).  The Second Circuit held that: "Absent any allegation of a 'going private' transaction, ***tender offer***, or scheme to take advantage of depressed share prices, we cannot conclude that Feiner's urged inference of scienter is compelling." (Emphasis added).

Here, Plaintiff alleges exactly such a tender offer, *i.e.*, the Tender Offer, which was absent from the previous Xcelera litigation.  *See* Complaint ¶42.  Plaintiff alleges that Defendants bought back shares at artificially deflated prices in the Tender Offer after having destroyed any trading market and value of Xcelera common stock.  *Id.* ¶43.  Plaintiff further alleges that although the Tender Offer was purportedly being conducted by defendant OFC, the true actors included defendant Alexander Vik and the other Defendants.  *Id.*  Tellingly, defendant Olav, a long time Vik employee managing Alexander Vik's personal fortune, was listed with the transfer agent as the contact person for the Tender Offer.  *Id.*  Moreover, defendant OFC reserved the right to transfer the shares purchased in the tender offer to its affiliates.  *Id.*  Plaintiff alleges that Xcelera and the Vik Defendants were included among those affiliates.  *Id.*  Accordingly, accepting all the allegations as true, Plaintiff has adequately stated that defendant OFC acted with scienter.

### iv.     Reliance

In circumstances "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."  *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972).  Instead, reliance is presumed.  *Accord Du Pont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987).  Here, Plaintiff alleges claims which primarily involve a failure to disclose material information concerning Xcelera. *See*, *e.g.*, Complaint ¶3.  Thus, reliance is presumed for purposes of Plaintiff's claims.

### v.     Causation

A basic element of a securities fraud claim includes "loss causation," which is a causal connection between the alleged material misdeed and the loss.  *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  "A misstatement [or omission] is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations [or omissions] alleged by a disappointed investor."  *Poptech, L.P. v. Stewardship Inv. Advisers, LLC*, No. 10 Civ. 967 (MRK), 2012 U.S. Dist. LEXIS 37532, at *62 (D. Conn. Mar. 19, 2012) (internal quotes and citation omitted).

Here, Plaintiff alleges that as a result of OFC's wrongful conduct in failing to disclose material information about the Company and seeking the tender of Xcelera common stock, Plaintiff sold her shares at an artificially deflated price in the Tender Offer and was damaged thereby.  *See* Complaint ¶54.  Accordingly, Plaintiff has adequately stated loss causation.

### vi.     Damage

Economic loss is a necessary element of a Section 10(b) claim.  *Poptech*, 2012 U.S. Dist. LEXIS 37532, at *33.  Plaintiff satisfies this element in alleging that she was damaged by

Defendants' wrongful conduct by selling her shares at an unfairly low price.  *See*, *e.g.*,

Complaint ¶54.

> **2.** **Plaintiff Properly States a Claim Pursuant to Section 14(e) of the Exchange Act and Rule 14e-3 Promulgated Thereunder**

Section 14(e), 15 U.S.C. §78n(e) (2012), provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

Section 14(e) was originally added to the Exchange Act as part of the Williams Act.

*Scheiber v. Burlington Northern, Inc.*, 472 U.S. 1, 8 (1985).  The purpose of the Williams Act

was to insure that investors would be provided with adequate information when presented with a

tender offer.  *Id.*  Section 14(e), added a "broad antifraud prohibition" modeled after Section

10(b) of the Exchange Act and Rule 10b-5 thereunder, but was more explicitly addressed to the

tender offer context.  *Id.* (quoting *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 24 (1977)).

Rule 14e-3, in turn, "was [also] aimed at promoting full disclosure in the tender offer context . . .

."  *Chestman*, 947 F.2d at 559.

With the exception of the "in connection with" requirement, application of Section 10(b)

and Section 14(e) are essentially the same.  *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*,

480 F.2d 341, 362 (2d Cir. 1973);  *Kramer v. Time Warner, Inc.*, No. 89 Civ. 8234 (LBS), 1990

U.S. Dist. LEXIS 14171, at *9 (S.D.N.Y. Oct. 24, 1990), *aff'd*, 937 F.2d 767 (2d Cir. 1991).

Accordingly, a Section 14(e) claim is adequately stated if a material omission is alleged in

connection with a tender offer.  *See Iavarone v. Raymond Keyes Assoc., Inc.*, 733 F. Supp. 727, 734 (S.D.N.Y. 1990).

Here, for the same reasons as discussed above with respect to Plaintiff's Section 10(b) claim, Plaintiff has adequately stated a claim under Section 14(e) and Rule 14e-3 promulgated thereunder.  Indeed, Plaintiff alleges that defendant OFC failed to disclose materially non-public information concerning Xcelera's results of operations in connection with the Tender Offer.  *See*, *e.g.*, Complaint ¶3.

### 3.      Plaintiff Properly States a Claim Pursuant to Section 20A(a) of the Exchange Act

Section 20A(a) was added to the Exchange Act as part of the Insider Trading and Securities Fraud Act of 1988 ("ITSFA").  In adopting the ITSFA, Congress' intended Section 20A(a) to be one of "a variety of measures designed to provide greater deterrence, detection and punishment of violations of insider trading."  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 361 (1991) (quoting H.R. Rep. No. 100-310, p.7 (1988)).  Section 20A(a) provides that:

> Any person who violates any provision of this title or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

A claim for insider trading under Section 20A(a) is adequately stated where: (1) a predicate trading violation of the Exchange Act is stated; and (2) the plaintiff alleges that defendants traded contemporaneously with them.  *See In re Bear Stearns Companies, Inc. Sec., Deriv., and ERISA Litig.*, 763 F. Supp. 2d 423, 508 (S.D.N.Y. 2011).

Here, as discussed above, Plaintiff has adequately stated a predicate insider trading

violation pursuant to Sections 10(b) and 14(e) of the Exchange Act.  *See* Points B.1-2, *supra.*

Plaintiff also states that defendant OFC's purchase of Xcelera common stock were

contemporaneous with her sales.  *See* Complaint ¶69.  Accordingly, Plaintiff has adequately

stated a claim for insider trading under Section 20A(a) of the Exchange Act.

## C.    Discovery Concerning the Amount of Damages is Appropriate

"While default judgment constitutes an admission of liability, the quantum of damages

remains to be established unless the amount of damages is liquidated or susceptible of

mathematical computation."  *ALV Events*, 821 F. Supp. 2d at 494 (quoting *Flaks v. Koegel*, 504

F.2d 702, 704 (2d Cir. 1974)).  In order to ascertain the amount of damages with reasonable

certainty the Court may conduct an inquiry.  *Au Bon Pain*, 653 F.2d at 65; *see also* Rule

55(b)(2)(B).  This inquiry "involves two tasks: [1] determining the proper rule for calculating

damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be

determined under this rule."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155

(2d Cir. 1999).

Section 28 of the Exchange Act provides a starting point for the damages analysis

limiting recovery in actions brought under the Exchange Act to "actual damages."  15 U.S.C.

§78bb(a).  Section 28 does not provide for a method to calculate such actual damages, but

otherwise contemplates that district courts will use their discretion to fashion a measure of

damages appropriate for the circumstances.  *See Panos v. Island Gem Enterprises, Ltd.*, 880 F.

Supp. 169, 175 (S.D.N.Y. 1995).  Due to the wide variety of factual predicates for Exchange Act

claims, courts have endorsed several different compensatory damage theories such as

disgorgement, out-of-pocket damages, benefit-of-the-bargain damages, consequential damages

and gross economic loss or recessionary damages. *Id.* at 176 (citing cases). "[T]he out-of-pocket measure of damages constitutes the difference between the price paid for the security and its true value absent the fraud on the date of the transaction." *Id.* Courts have generally found the out-of-pocket method to be the most useful way to compute damages under the Exchange Act. *Id.* at 176-77. Here, the out-of-pocket method is appropriate as Plaintiff would be entitled to receive the difference between what Defendants paid for the Xcelera common stock acquired in the Tender Offer and what the common stock was actually worth on the date of the transaction.

The Court's second task in determining the amount of damages will involve a valuation of Xcelera's common stock. *See Credit Lyonnais*, 183 F.3d at 155. As a result of Defendants' scheme to starve the market of any information concerning the value of Xcelera common stock, Plaintiff does not possess enough information to be able to present an accurate estimate of damages to the Court at this time. Accordingly, Plaintiff respectfully requests an opportunity to engage in reasonable discovery directed at the issue of damages. *Telford v. Ideal Mortgage Bankers, Ltd.*, No. 09 Civ. 5518, 2010 U.S. Dist. LEXIS 110540, at *11 (S.D.N.Y. Aug. 17, 2010) (permitting discovery on the issue of damages); *Telequip Corp. v. Change Exchange*, No. 01 Civ. 1748, 2004 U.S. Dist. LEXIS 14892, at *6 n.4 (N.D.N.Y. Aug. 3, 2004) (same). Following discovery and a submission by Plaintiff concerning damages, the Court may decide to hold a hearing to determine the amount of damages suffered by Plaintiff and the Class.

**D.    Additional Proceedings Concerning Class Certification Are Appropriate**

Although Plaintiff has adequately stated a claim for this matter to proceed as a class action, courts have expressed a reluctance to permit class certification by default. *See Telford*, 2010 U.S. Dist. LEXIS 110540, at *11 (citing *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.

2003)).  Prior to certifying a class a court is required to make a "ruling that each Rule 23 requirement is met . . . ." *In re Pfizer Sec. Litig.*, No. 04 Civ. 9866, 2012 U.S. Dist. LEXIS 44330, at *6 (S.D.N.Y.  Mar. 29, 2012) (internal quotes and citation omitted).  Accordingly, discovery has been permitted subsequent to entry of default judgment in order to explore the issue of class certification.  *See Telford*, 2010 U.S. Dist. LEXIS 110540, at 11.  Plaintiff believes that such discovery and additional briefing on the issue of class certification is appropriate here.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court: (1) grant the motion for default judgment as to defendant OFC's liability; (2) order an inquest and any discovery necessary into an appropriate amount of damages; and (3) allow for proceedings with respect to class certification.

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

    /s/  Philip T. Taylor                      
Jeffrey S. Abraham (*pro hac vice*)
Philip T. Taylor (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655
jabraham@aftlaw.com
ptaylor@aftlaw.com

**SCOTT + SCOTT LLP**
Joseph P. Guglielmo (CT 27481)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537- 432
jguglielmo@scott-scott.com

**Plaintiff's Counsel**

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2012, I caused the PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR DEFAULT JUDGMENT to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing documents or paper to be mailed via United States Postal Service to the non-CM/ECF participants indicated on the manual Notice List.

I hereby certify that I also caused the foregoing documents to be served via United States Postal service upon the following persons:

| | |
|---|---|
| OFC Ltd.<br>c/o Mercury Management Limited<br>13 Curate Fenech Street<br>Birzebbugia, BBG2032<br>Malta | VBI Corporation<br>c/o Britannic Management Ltd.<br>P.O. Box. 25<br>Britannic House<br>Providenciales, Turks & Caicos Islands |
| Hans Eirik Olav<br>Dagaliveien 18 F<br>0776 Oslo<br>Norway | |

I certify under the laws of the United States of America that the foregoing is true and correct.  Executed on June 5, 2012.

/s/   Philip T. Taylor

Philip T. Taylor