# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------x
SEBASTIAN HOLDINGS, INC.,            :   Civil Action No. 3:08 CV 1131 RNC
                                     :
              Plaintiff,             :
                                     :
vs.                                  :
                                     :
MICHAEL J. KUGLER and                :
BARBARA VOGT KUGLER,                 :
                                     :
              Defendants.            :   OCTOBER 28, 2008
---------------------------------------------------x

## **DECLARATION OF ALEXANDER M. VIK**

I, Alexander M. Vik, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Director of Sebastian Holdings, Inc. ("Sebastian Holdings"), a Turks and Caicos investment holding company.

2. I submit this declaration concerning Sebastian Holdings' affairs as of July 29, 2008 in opposition to the Defendants' Motion to Dismiss, and in particular to the affidavit of the principal defendant, Michael J. Kugler ("Kugler") ("Kugler Affidavit").

3. Kugler contends that Sebastian Holdings' principal place of business is located in an office situated in the basement of a home my wife owns in Greenwich, Connecticut (respectively the "Greenwich Office" and the "Ashton Drive Property"). As is more fully discussed below, Kugler's contention is without merit.

4. I am an entrepreneur and have many business investments. Sebastian Holdings, the plaintiff in this action, is one of the companies I control and manage.

5.  I am a Norwegian citizen and I am a resident of the Principality of Monaco. I am not a resident of the state of Connecticut. The principal office for the management of my business affairs, including Sebastian Holdings, is located in the Principality of Monaco at an office suite located at 20 Avenue de Grande Bretagne, MC98000, Monaco and my residence (collectively the "Monaco Office").

6.  I travel extensively in connection with my business and personal affairs. I rarely spend extended periods of time in any specific location and I spend the majority of my time outside of the United States. In light of this, and in addition to my use of the Monaco Office, I utilize the Greenwich Office and other offices I have access to in Oslo, Norway; Punta del Este, Uruguay; Las Palmas, Spain; Punta Cana; Dominican Republic; Santiago, Chile; New York City; and Tewksbury, Massachusetts. I am able to conduct my business affairs, including Sebastian Holdings, from these locations by means of computers, cell phones, the Internet, e-mail, and combinations thereof (e.g., Blackberry phones).

### Sebastian Holdings, Inc.

7.  Sebastian Holdings is an investment holding company. As of July 29, 2008, a significant portion of Sebastian Holdings' assets were in portfolios managed by investment advisors (none of whom were employees of Sebastian Holdings). The bulk of these portfolios were managed in Monaco and Oslo, Norway.

8.  The investment advisors managing portfolios on behalf of Sebastian Holdings included Harald Moræus Hanssen, Hans Erik Olav, Iannis Bokias, Delta Invest and Klaus Said. Mr. Hanssen managed a portfolio of Sebastian Holdings' investments from his office in Oslo, Norway. The value of this investment portfolio was in excess of

one hundred fifty million dollars ($150,000,000.00). This portfolio focused on capital markets, with an emphasis on energy and transportation.

9. Mr. Olav managed a portfolio of Sebastian Holdings' investments from his office in Oslo, Norway. The value of this investment portfolio was in excess of fifty million dollars ($50,000,000.00). This portfolio focused on direct equity and debt investments.

10. Another Sebastian Holdings portfolio was managed in Oslo, Norway by Delta Invest. The value of this portfolio was in excess of forty million dollars ($40,000,000.00). This portfolio focused on Norwegian equities.

11. Mr. Bokias and I manage Sebastian Holdings' most significant portfolio from the Monaco Office. As of July 29, 2008, the value of these investments was in excess of two hundred fifty million dollars ($250,000,000.00) focused on global macro investing.

12. Mr. Said managed a portfolio of Sebastian Holdings' investments from Connecticut (he divided his time between the Greenwich Office and other locations) since the fall of 2006. This investment portfolio, initially valued at thirty-five million dollars ($35,000,000.00), focused on currencies.

13. Kugler, as more fully discussed below, managed an investment portfolio from the Greenwich Office. This investment portfolio was initially valued at thirty million dollars ($30,000,000.00). Kugler and I had agreed (although Kugler subsequently disregarded our agreement) that Kugler's investment portfolio was to be confined to investments in government (G-7) and corporate bond markets. This portfolio

ceased to be a managed portfolio as of March, 2008 when Kugler's misconduct was discovered.

14.     I establish Sebastian Holdings' overall investment strategy and the general investment guidelines, strategic direction and long-term view of the market for each portfolio. When I am in Monaco I manage the daily activities of the Monaco portfolio. When I am not in Monaco, Mr. Bokias assists me with its management. With respect to other portfolios, I leave day to day investing/trading execution to the investment advisors. On an occasional basis, I have directed investment advisors to execute specific trades in the portfolios under their management consistent with their area of expertise.

15.     Sebastian Holdings maintains a registered office in the Turks and Caicos Islands located at Britannic House, Providenciales. Sebastian Holdings' corporate agent, Britannic Management Limited ("Britannic Management") is also located at Britannic House, Providenciales. Britannic Management attends to Sebastian Holdings' corporate needs, including maintaining its corporate books and records and otherwise ensuring that Sebastian Holdings conducts its affairs in compliance with applicable rules and regulations.

16.     Sebastian Holdings neither owns nor maintains any interest in real property (whether ownership, leasehold or otherwise) in Connecticut. It does not have a mail address in Greenwich. It does not have a phone listing in Connecticut. It maintains no bank or brokerage accounts in Connecticut. It has no employees whether in Connecticut, or otherwise, including the investment advisors mentioned above.

## The Monaco Office

17. The Monaco Office is Sebastian Holdings' principal base of operations. I spend more time on the affairs of Sebastian Holdings in the Monaco Office than any other location. It is here that Mr. Bokias works full time and he spends all of his time on Sebastian Holdings' investments. It is here that Mr. Bokias and I analyze financial markets and formulate and implement Sebastian Holdings' macro trading strategies. It is here that Mr. Bokias and I manage Sebastian Holdings' most significant investment portfolio, the value of which exceeded many times over the value of the portfolios managed from the Greenwich Office. Sebastian Holdings' financial records are maintained in the Monaco Office. When I am not in the Monaco Office, I am in frequent contact with Mr. Bokias regarding Sebastian Holdings' affairs, including his financial analysis and views of the markets, and Sebastian Holdings' investments.

18. The Monaco Office has an administrative staff and is equipped with phones, computers, a fax machine and the other resources an office would be expected to have.

19. Kugler was neither informed nor aware of the full scope of Sebastian Holdings' investments, including the details of the portfolios that Hanssen, Olav, Delta Invest and the Monaco Office managed.

### Kugler and the Fortis Account

20. In a few respects the Kugler Affidavit is accurate. Between the fall of 2000 and early 2005, Kugler provided support for Xcelera Inc. ("Xcelera"). Xcelera is controlled by VBI Corporation.

21. Kugler was an employee of Vik Real Estate Management, Inc. (Vik Real Estate) a Connecticut corporation which, *inter alia*, had a management agreement with Xcelera. Vik Real Estate subsequently changed its name to, and is now known as, Ashton Capital Management, Inc ("Ashton Capital"). Sebastian Holdings has never had a management agreement with or any interest in Vik Real Estate/Ashton Capital.

22. By early 2005, there was no longer a need for the services Kugler provided on behalf of Xcelera. At that time, and to reflect his diminished role, Kugler's compensation from Vik Real Estate was reduced and he became a minimum wage employee.

23. In February of 2005, Kugler approached me and proposed that he manage an investment account. We ultimately reached an agreement (the "Investment Management Agreement") which when reduced to writing (a writing that Kugler prepared), provided that Sebastian Holdings would deposit thirty million dollars ($30,000,000.00) into an investment account at Fortis Securities LLC ("Fortis") (the "Fortis Account").

24. I had not previously had a business relationship with or maintained accounts at Fortis, whether in connection with Sebastian Holdings or any other entity I had an interest in. Rather, Kugler selected Fortis.

25. Under the terms of the Investment Management Agreement, the funds in the Fortis Account were "committed for Jack Kugler's investment management." I attach a copy of the Investment Management Agreement hereto as Exhibit A. On or around March 15, 2005, Sebastian Holdings deposited thirty million dollars ($30,000,000.00) into the Fortis Account.

26. Kugler's compensation under the Investment Management Agreement was tied to the performance of the portfolio he managed. Kugler was entitled to an "annual performance fee" provided he exceeded a return of 10%.

27. Kugler's Affidavit suggests that he was a mere trader for the Fortis Account, primarily trading at "my specific instructions." This is false. As the investment manager for the Fortis Account, Kugler managed these funds pursuant to the terms of the Investment Management Agreement. However, on approximately ten occasions I asked Kugler to execute specific trades in the Fortis Account. We both understood that these trades were not his trades, and that the resulting profits and losses would not be considered when calculating his annual performance fee, if any. Kugler did not earn a performance fee during the time he managed the Fortis Account.

28. During the period Kugler managed the Fortis Account (March, 2005 to February, 2008), he continued to do some minor work for Xcelera. These additional tasks were unrelated to Kugler's work as an investment advisor to Sebastian Holdings and he was separately compensated for this work as a minimum wage employee of Vik Real Estate.

29. After the discovery of Kugler's wrongful conduct, Sebastian Holdings terminated the Investment Management Agreement and transferred the cash then

7

remaining out of the Fortis Account. As of the end of March, 2008, the Fortis Account held only the BKN shares that Kugler had wrongfully purchased and it ceased to be an actively managed investment portfolio.

### The Greenwich Office

30. The Greenwich Office has two administrative assistants (each of whom is an employee of Ashton Capital), and is located in the basement of the Ashton Drive Property. The business of Ashton Capital and the purpose of the Greenwich Office are to provide support for (i) my wife and my personal interests; (ii) the management of the Ashton Drive Property; and (iii) to assist me as needed with my business interests when I am in Greenwich, Connecticut.

31. Kugler claims in his affidavit that I "would be in the office at 10 Ashton Drive on an almost daily basis for close to six months each year." This statement, while untrue, misses the point. While over the course of any given year I make many trips to Greenwich, I rarely spend more than a few days at a time in the Greenwich Office. I would estimate that I work approximately 60 to 70 days from the Greenwich Office over the course of a year, however, I spend little time in the Greenwich Office managing the affairs of Sebastian Holdings and when I do, it typically consists of communicating with Mr. Bokias and with Sebastian Holdings' other investment advisors and contacts.

32. Kugler's contention that Greenwich is the location of Sebastian Holdings' "major business operations" is untrue. Rather, Sebastian Holdings has no material business operations in the Greenwich Office. With the exception of Mr. Said, no one working in the Greenwich Office devotes any material amount of time to the business of Sebastian Holdings. Mr. Said did not manage his portfolio exclusively from the

Greenwich Office. Rather he divided his time between the Greenwich Office and other locations. Andrea Vaneerten is an administrative assistant who assists me, and her duties are clerical in nature. Alexis Cook is an administrative assistant who assists my wife, and her duties are also clerical. Ms. Vaneerten and Ms. Cook are the only full time workers at the Greenwich Office. Anders Evers, who does not even work out of the Greenwich Office, does no work for or on behalf of Sebastian Holdings. Rather he works in the New York City office of a company I maintain an interest in. Marc Bradley, who only works in the Greenwich Office a few days a week, primarily works in marketing roles for two businesses that I maintain interests in and has only been associated with Sebastian Holdings by occasionally assisting with the preparation of wire transfer requests for my signature on behalf of Sebastian Holdings. Contrary to Mr. Kugler's statement, neither Per Johansson nor Benoit Jamar trade on behalf of Sebastian Holdings. Mr. Jamar, an investment banker, occasionally works out of the Greenwich Office. His involvement with Sebastian Holdings was limited to advising me on several of its investments. Ms. Vaneerten, Ms. Cook, Mr. Bradley and Mr. Johansson are all employees of Ashton Capital.

33. Kugler managed Sebastian Holdings' smallest investment portfolio from the Greenwich Office. However, his actual location was irrelevant to Sebastian Holdings, which neither required nor requested that he manage the Fortis Account from the Greenwich Office. The only reason Kugler managed an account on Sebastian Holdings' behalf from the Greenwich Office was that at the time I agreed to his investment management proposal he was already working out of the Greenwich Office.

9

34. Kugler states that he placed on a desk I used in the Greenwich Office copies of the electronic confirmations generated by Fortis and Merrill Lynch for every trade he did on behalf of Sebastian Holdings. This is untrue and inconsistent with admissions he has already made.

35. As set forth in the Complaint, between November, 2006 and December, 2007, Kugler purchased on Sebastian Holdings' behalf three million, one hundred fifty-six thousand, twenty-six shares of BKN International AG ("BKN"), a thinly traded German corporation, of which, among other things, he was a director.

36. I was unaware of Kugler's purchases of shares of BKN, and Kugler never provided me with confirmations. Moreover, Kugler has admitted that his purchases of the shares of BKN were (i) without my knowledge, (ii) contrary to my instructions and (iii) beyond the scope of his authority. I attach a copy of Kugler's March 30, 2008 letter to me as Exhibit B. Kugler would not have made these admissions had it been his practice to provide me with copies of his trade confirmations.

37. Kugler also claims that Fortis sent trade confirmations and monthly statements to Sebastian Holdings' corporate address and the Greenwich Office. This is also untrue. Fortis did e-mail Kugler account statements on a daily basis. I did not receive these e-mail account statements nor did Kugler forward them to me for my review.

38. Kugler did apprise me of the accounts' performance through e-mails summarizing its Net Asset Value, however, the representations Kugler made in the e-mails he sent to me concerning the Fortis Account were false.

39.     Sebastian Holdings did have a Merrill Lynch account that was used for cash management. Instead of using this account for its intended purpose, Kugler used it to purchase shares of BKN and make multiple unauthorized transfers between the Merrill Lynch account and the Fortis Account.

40.     Kugler requested that Merrill Lynch send trade confirmations and monthly account statements to Sebastian Holdings' corporate address and a copy of the monthly statements to himself at the Greenwich Office. It was Kugler's practice to review and discard the Merrill Lynch trade confirmations without informing me. It was also Kugler's practice to review the Merrill Lynch monthly statements, after which he would ask an administrative assistant to file them. I have had to request new copies of these statements as pages containing Kugler's unauthorized transfers were missing.

41.     In summary, the Greenwich Office is not Sebastian Holdings' principal place of business. It was, however, the place from which Kugler managed the Fortis Account, much to my regret.

11

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Principality of Monaco, October 28, 2008.

Alexander M. Vik
Director
Sebastian Holdings, Inc.