EXHIBIT D

*C 50063/1*

**REGISTRY OF COMPANIES**
**CASH DATE**
0 1 JUL 2010 *ACP*
.................Chq No......
**Validity subject to Bank Clearance**

*Ed45      Rd19199*

**COMPANIES ACT, 1995**

1- 1 JUL 2010

---

**LIMITED LIABILITY COMPANY**


**MEMORANDUM AND ARTICLES OF ASSOCIATION**


**OF**


**OFC Ltd.**

# MEMORANDUM OF ASSOCIATION

## OF

## OFC Ltd.

## 1.    NAME OF THE COMPANY

The name of the Company is: OFC Ltd.

## 2.    REGISTERED ADDRESS

The Registered Office of the Company shall be situated in Malta at:- 13, Curate Fenech Street, Birzebbugia, Malta, or at any address in Malta as may be determined by the Board of Directors from time to time.

## 3.    OBJECTS

The objects of the Company shall be as follows:-

i.      To carry on business as consultants, administrators, and organizers of any type of business;

ii.     To carry out the marketing of the activity of the Company through affiliates and/or any other manner;

iii.    To prepare and publish e-books, articles, books and any other type of literature;

iv.    To set-up, host and run web-based activities;

v.     To give loans, advances and credit facilities to third parties, solely in connection with the business of the Company;

vi.    To borrow and raise money for the purpose of, or in connection with, the Company's business and to secure the repayment of the money borrowed by hypothecation or other charge upon the whole or part of the movable and immoveable assets or property of the Company present and future, and to draw,

make, accept, endorse, discount, execute and issue promissory notes, bills of exchange and other negotiable or transferable instruments;

vii.    To guarantee the payment of monies or the performance of any contract or obligation in which the Company may be interested, even by the hypothecation of the Company's property, present or future;

viii.    To act as surety for the obligation of any third party even by the hypothecation of the Company's property, present and future;

ix.    To acquire any type of property, including but not limited to, immovable and intangible property, and to sell, lease or otherwise dispose of the whole or any other part of the property, assets or undertaking of the Company;

x.    To promote any other company or companies for the purpose of its or their acquiring all or any property and rights of this Company and to pay all the expenses of and incidental to such promotion.

And it is hereby declared that the objects of the Company as specified in each of the foregoing paragraphs of this Clause (except only if and in so far as otherwise provided in any paragraph) shall be separate and distinct objects of the Company and shall not in any way be limited by reference to any other paragraph or the order in which the same occur or the name of the Company. In the event of any ambiguity, this clause shall be construed in such a way as to widen and not to restrict the powers of the Company.

## 4.    LIMITED LIABILITY

The liability of the shareholders is limited to the amount, if any, unpaid on the shares held in the Company.

## 5.    CAPITAL

The authorised share capital of the Company shall be ONE THOUSAND TWO HUNDRED AND FIFTY EURO (€ 1,250) divided into ONE THOUSAND TWO HUNDRED AND FIFTY (1,250) ORDINARY SHARES OF € 1 each.

The issued share capital of the Company shall be ONE THOUSAND TWO HUNDRED AND FIFTY EURO (€ 1,250) divided into ONE THOUSAND TWO HUNDRED AND FIFTY (1,250) ORDINARY SHARES OF € 1 each, 20% PAID UP as follows:

| Name | Number of Shares Ordinary |
|------|--------------------------:|
| Mercury Management Limited 13, Curate Fenech Street, Birzebbugia - Malta C 28103 | 625 |
| Mercury Management Limited 13, Curate Fenech Street, Birzebbugia - Malta C 28103 | 625 |

## 6.    BOARD OF DIRECTORS

The management and administration of the Company are entrusted to a Board of Directors, unless and until otherwise determined by the Company in General Meeting, composed of one director.

The present director of the Company is:-

Mr Arthur Douglas Turner
13, Curate Fenech Street
Birzebbugia
BBG 2032
Malta
ID No 49665 M

7.    **COMPANY SECRETARY**

The present Company Secretary of the Company is:

Mr Arthur Douglas Turner
13, Curate Fenech Street
Birzebbugia
BBG 2032
Malta
ID No 49665 M

8.    **REPRESENTATION OF THE COMPANY**

The legal and judicial representation of the Company shall be vested in:-

Mr Arthur Douglas Turner
13, Curate Fenech Street
Birzebbugia
BBG 2032
Malta
ID No 49665 M

In addition and without prejudice to the aforesaid, the Board of Directors may, from time to time, appoint any other person or persons to represent the Company in a specific case or cases.

9.    **STATUS**

The Company shall be a private exempt company.

**Mr Arthur Douglas Turner**
ID No. 49665M
Director

**Dr Doreen Turner Bilocca**
ID No. 342069M
Director

Both for and on behalf of
**Mercury Management Ltd.**
**C 28103**

**Mr Arthur Douglas Turner**
ID No. 49665M

Director

# ARTICLES OF ASSOCIATION

## OF

## OFC Ltd.

## 1.    PRELIMINARY

The regulations contained in Part I of the First Schedule (such schedule being hereinafter called the "First Schedule") of the Companies Act, 1995 (hereinafter called the "Act") shall apply to the Company in so far as they are excluded or varied hereby.

## 2.    PRIVATE EXEMPT COMPANY

The Company is established as a Private Exempt Company and accordingly:

i.      it shall be subject to S.211 of the Companies Act, 1995;

ii.     the number of persons holding debentures of the Company shall not be more than fifty;

iii.    subject to S.211 (3), no body corporate, shall hold or have an interest in any shares or debentures of the Company;

iv.     no body corporate shall be a director of the Company, and neither the Company nor any of the directors shall be a party to an arrangement whereby the policy of the Company is capable of being determined by persons other than the directors, the members or debenture holders of the Company;

v.      any invitation to the public to subscribe for any shares or debentures in the Company is prohibited;

vi.     the Company shall not have the power to issue share warrants to bearer;

vii.    the right to transfer the shares of the Company is restricted in the manner hereinafter stipulated;

viii    the number of shareholders is limited to fifty provided that when two or more persons hold one or more shares in the Company jointly, they shall for the purposes of this regulation be treated as a single person.

The regulations contained in Part II of the First Schedule relating to the management of a Private Company shall apply to the Company with the exception of Regulation 1 thereof.

## 3.   SHAREHOLDERS

i.     Each ordinary share shall entitle the holder thereof for one vote.

ii.    Any declaration of payment of dividend shall be made and distributed by the Directors of the Company who shall have the right and authority to declare the amount of dividend payable by the Company and shall decide upon its manner of distribution.

iii.   The holders of all the ordinary shares in the Company, shall be entitled to any dividend which shall be declared and distributed by the Board of Directors.

iv.    Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any share in the Company may be issued with such preferred, deferred or other special rights or restrictions, whether in regard to dividend, voting, return of capital or otherwise as the Company may, from time to time determine by an extraordinary resolution.

v.     The name of the shareholders and the number of shares held by each of them shall be entered in a register to be kept at the office of the Company and a certificate of the shares held by each shareholder shall be issued by the Directors.

vi.    The Company may not acquire any of its own shares except as allowed by S 107 of the Act;

vii.   The Company is prohibited from accepting its own shares by way of pledge or other forms of security;

viii.  Shares in, debentures of or any other securities issued by the Company may not be pledged by the holders in favour of any person as security for any obligation.

## 4.   TRANSFER AND TRANSMISSION OF SHARES

i.     The right to transfer shares in the Company is restricted in the manner and to the extent prescribed in these Articles.

ii.     In particular:

a.     If any shareholder (hereinafter referred to as the transferring member) wishes to transfer his shares or any of them, he shall inform the Directors by notice in writing   (hereinafter referred to as the transfer notice) specifying the number of shares to be transferred, and his estimated valuation of each share. The transferring member shall not be entitled to revoke a transfer notice without the consent in writing of the Directors;

b.     The receipt by the Directors of a transfer notice shall constitute an authority to them to offer for sale the shares specified therein at a fair valuation to be ascertained as follows:

I.     At the shareholder's estimated valuation if considered by the Directors to be a fair one; OR

II.     At a valuation based on the net assets value ascertained by the Company Auditor/s. However, before such valuation is reached, goodwill has to be valued at two times the average profit of the last five years of the business; OR

III.     At a valuation placed on the shares by any other person whom the Directors shall appoint with the consent in writing of the transferring  member if for any reason  the Auditor/s shall not make the said valuation.

Provided that the above options are to be exercised in the order stipulated above.

c.     When a fair value of the shares has been determined in the manner prescribed in clause (ii b), the Directors shall by notice in writing inform the transferring member and shall cause a notice to be sent to every other shareholder of the Company, stating  the number and the fair value of the shares for sale and inviting them to state, in writing within thirty (30) days, what number of shares, if any, they wish to purchase;

d.     On the expiration of the said thirty (30) days the Board of Directors shall allocate the said shares to members willing to purchase.  If the request for shares exceeds the number for sale, the Directors shall apportion the shares in accordance with the purchasing members' existing shareholdings;

e.   The transferring shareholder shall complete and execute transfers of the shares in accordance with the allocation by the Directors and shall surrender to the Company his share certificate;

iii.   Regulations 14,17,18,19 and 21 of Part I of the First Schedule to the Act shall not apply to the Company.

iv.   The Directors may in their absolute discretion and without assigning any reason therefor, decline to register any transfer of any share whether or not it is a fully paid up share. If they refuse to register a transfer of shares they shall, within two months after the date on which the transfer was lodged with the company, send to the transferee notice of refusal together with a copy of the Board resolution declining the approval of the registration of such share transfer. If no such communication is made by the directors to the transferee within the two-month period as aforesaid it shall be deemed that there is no objection to the registration of the share transfer, which shall then become effective.

v.   The names, addresses of members and a statement of the shares held by each of them, the amount paid up, and the date at which each person became and ceased to be a member shall be entered in a register to be kept at the office of the Company and certificates of shares held by each shareholder shall be issued by the Directors.

vi.   Where two or more persons hold one or more shares in the Company jointly, they shall be treated as a single member and the name of only one of such persons shall be entered in the register of members. Such person shall be elected by the joint holders and shall for all intents and purposes be deemed to be the holder of the shares so held.

vii.   The Company shall not register a transfer of shares in the Company unless a proper instrument of transfer or an authentic copy thereof has been delivered to the Company, which instrument shall be in writing in any usual or common form or any other form, which the directors may approve.

viii.   The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

ix.   Shares can be freely transferred "inter vivos"

    a.   in favour of the spouse of the shareholder
    b.   in favour of the direct descendants of the shareholder

x.    Transmission of shares "causa mortis" shall be regulated as follows:

I.    Where a person becomes entitled to shares in consequence of the death of a member he shall, by notice in writing, inform the Board of such entitlement. Such notice shall be deemed, for all intents and purposes, as constituting the Board his agent for the sale at a fair value of the said shares.

II.   The shares shall be offered for sale at the aforesaid value to other members of the Company in proportion to the number of shares of the class of shares being transferred for the time being held by them at the fair value of the shares as established by the Company auditor/s.

III.  The proceeds of the shares acquired by the existing members shall devolve to the person that would have been entitled to the shares in consequence of the death of a member.

IV.   Shares subject to a transfer or transmission shall not have the right to vote until they are registered in the names of other shareholders, or of the beneficiaries, and before they are so registered they shall not be taken into consideration for the purpose of establishing the quorum required under these Articles.

xi.   A person becoming entitled to a share by reason of the death of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership to the meetings of the Company.

xii.  Shares can only be freely transferred causa mortis -

  a.    in favour of any other shareholder
  b.    in favour of the spouse of the deceased shareholder
  c.    in favour of any descendant or ascendant in the direct line of the deceased shareholder; and
  d.    where the deceased is a spouse of a shareholder, and the shares formed part of the Community of Acquests between the spouses, in favour of any descendant in the direct line of the shareholders whose spouse has died.

xiii. The registration of transfers may be suspended at such times and for such periods as the directors may from time to time determine, provided always that such registrations shall not be suspended for more than thirty (30) days in any year.

xiv.   a.   Shares transferred or transmitted in contravention of these Articles of Association shall:

        A.   be deprived of any right to a vote otherwise attaching thereto;

        B.   have no right to any dividend, whether ordinary, preferential, participating or otherwise;

        C.   only be entitled to a return equivalent to the nominal paid up value of the shares on dissolution of the Company; this right shall furthermore only be exercisable after other shares of a similar class or category have received a return equivalent to their nominal paid up value.

## 5.   BOARD OF DIRECTORS

i.   A Director shall be required to hold shares in the capital of the Company to qualify him for office;

ii.   The Directors shall hold office until they resign or until they are removed from office by the shareholders in a General Meeting in terms of Section 140 of the Act;

iii.   The ordinary remuneration of the Directors shall from time to time be determined by the Company in General Meetings;

iv.   Whenever through the death or for any other reason mentioned in the next succeeding clause a vacancy occurs in the Board of Directors, it may be filled by the Board of Directors and the person chosen shall be subject to retirement at the next Annual General Meeting ;

v.   a.   The directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings as they think fit.

        b.   The quorum necessary for the transaction of business at the Board of Directors` meetings shall be one director or such greater number, as may from time to time be fixed by the directors The quorum necessary for the transaction of business at the Board of Directors` meetings shall be one director or such greater number, as may from time to time be fixed by the directors.

        c.   Every Director shall be entitled to one vote and questions arising at any meeting of the Board of Directors shall be decided by a majority of votes.

        d.   A Director may authorise any other person not necessarily being a Director, to act as his proxy and to attend and vote for him in his absence at any Board Meeting.

vi.    A resolution in writing signed by all the Directors shall be as valid and effective as if it has been duly passed at a Board Meeting duly convened and held, and may consist of several documents in the like form each signed by all the Directors;

vii.    The Board of Directors shall have the powers:

      a.    To bind the Company in favour of third parties and third parties in favour of the Company in all matters not expressly reserved for the decisions of a General Meeting;

      b.    To call upon members for the payment of any money unpaid on their shares;

      c.    To convene at any time a General Meeting of the Company;

      d.    To pay from time to time to the shareholders such interim dividends as appear to them to be justified by the profits of the Company according to an estimate formed by them thereof;

      e.    To recommend the payment of dividends;

      f.    To borrow or raise money or secure the payment of money, and, in conjunction with or independently therefrom to charge or hypothecate the property of the Company or any part thereof for any debt, liability or obligation of the Company, and this without any limitation whatsoever;

      g.    In general to negotiate and agree on the terms of any contract on the Company's behalf and to transact all business, and generally exercise all the powers vested in the Company excepting such as are expressly reserved for the decision of the General Meeting;

      h.    To allot shares out of the subscribed Authorised Share Capital among the Shareholders;

viii.    The Directors are empowered to exercise the guaranteeing powers of the Company.

ix.    Regulations 51-54 and Regulations 57-67 of Part 1 of the First Schedule to the Act, shall not apply to the Company.

## 6.   GENERAL MEETING

i.     A resolution in writing signed by all the holders of the Ordinary shares shall be deemed to be as valid and effective as if the same had been passed at a General Meeting of the Company as duly convened and held.

ii.    A general meeting of the company shall be called at least by fourteen days notice in writing.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, the day and the hour of the meeting and in case of special business, the general nature of that business and shall be given, in the manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meeting, to such persons as are, under the regulation of the Company, entitled to receive such notices from the Company.

iii.   Provided that a meeting shall, notwithstanding that it is called by a shorter notice, be deemed to have been duly called if it is so agreed by all the members entitled to attend and vote thereat.

iv.    The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that meeting.

v.     The quorum at any General Meeting shall be two persons.  The members attending the General Meeting of the Company may be present either in person or by proxy.

vi.    An extraordinary resolution shall be carried if consented to by 51% of the voting rights held by holders of all the Ordinary shares in the Company.

vii.   An extraordinary resolution shall be deemed to have been validly carried if:

       a)     it has been taken at a general meeting at which notice specifying the intention to propose such resolution as an extraordinary resolution has been duly given; and

       b)     it has been consented to as held in Article 6(vi) hereof.

viii.  An extraordinary resolution shall be required for the following:-

- alterations and/or amendments to the Memorandum and Articles of Association of the Company;

- dissolution of the Company;

- the acquisition and transfer, under any title whatsoever, of immovable property or of a right thereon;

- wherever so required in the Act or in these Articles.

## 7.   GENERAL

i.      The Board of Directors, before recommending any dividend, may set aside out of the profits of the Company such sums as it deems proper as a reserve or reserves which shall, at the discretion of the Board of Directors, be applicable for any purposes to which the profits of the Company may be properly applied and, pending such application, may be employed or invested in any way the Board of Directors shall deem fit.

ii.     No dividends shall bear interests against the Company.

iii.    Every shareholder shall specify his address in Malta or elsewhere.

iv.     The posting by the Company of a registered letter to that address will be deemed sufficient notice to the addressee for all intents and purposes.

v.      All matters arising out of, or touching or concerning these memorandum and articles of association shall be referred to arbitration by a sole arbitrator to be appointed by the parties.

        Prior to arbitration, the parties shall simultaneously submit in writing to each other a list of three names of arbitrators, from which the sole arbitrator shall be appointed within seven (7) days.

        If the parties fail to reach an agreement on the appointment of the arbitrator, they shall ask the Chairman of the Malta Arbitration Centre at the time, to appoint the sole arbitrator himself.  Such an appointment shall be made within fourteen days and the decision communicated in writing to both parties.

The arbitration proceedings shall take place at the Malta Arbitration Centre in Malta and the procedural rules of the Malta Arbitration Centre shall be applicable.

**Mr Arthur Douglas Turner**
ID No. 49665M
Director

**Dr Doreen Turner Bilocca**
ID No. 342069M
Director

Both for and on behalf of
**Mercury Management Ltd.**
C 28103

**Mr Arthur Douglas Turner**
ID No. 49665M

Director