UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLORIA STEGINSKY, On Behalf Of Herself And All Others Similarly Situated,<br><br>                             Plaintiff,<br>          -against-<br><br>XCELERA, INC., OFC LTD., VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M. VIK, AND HANS ERIK OLAV,<br><br>                             Defendants. | Civil Action No.:<br>3:12-cv-00188-SRU |

REPLY MEMORANDUM IN FURTHER SUPPORT OF
THE MOTION TO DISMISS FILED BY
DEFENDANTS XCELERA, INC., VBI CORPORATION,
ALEXANDER M. VIK, AND GUSTAV M. VIK

Peter J. Macdonald, phv01529
David F. Olsky, phv05365
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

Charles W. Pieterse, Esq., ct01577
WHITMAN BREED ABBOTT
 & MORGAN LLC
500 West Putnam Ave.
Greenwich, Connecticut 06830
Telephone: (203) 862-2332
Facsimile: (203) 869-1951
cpieterse@wbamct.com

*Attorneys for Defendants Xcelera, Inc., VBI Corp., Alexander M. Vik, and Gustav M. Vik*

Oral Argument Requested                         September 14, 2012

Defendants Xcelera Inc., VBI Corp., Alexander M. Vik, and Gustav M. Vik (collectively, the "Xcelera Defendants") submit this reply brief in further support of their Motion to Dismiss the Complaint. Plaintiff's attempt to distinguish the SDNY and Second Circuit's rulings in the *Feiner* cases boils down to one distinction between those cases and the present one: defendant OFC Ltd. ("OFC") solicited Plaintiff's Xcelera shares through a tender offer, whereas Xcelera offered to purchase the *Feiner* plaintiffs' shares when they called the Company. This purported distinction does not address the implausible economic "scheme" that was alleged in every *Feiner* complaint and that is re-alleged here. The SDNY and Second Circuit reviewed largely the same allegations about the same defendants from the same plaintiff's counsel. *Feiner Family Trust v. Xcelera.com, Inc.*, No. 07 Civ. 1914(RPP), 2008 WL 5233605, at *6 (S.D.N.Y. Dec. 15, 2008) (*Feiner II*), *aff'd*, 352 F. App'x. 461 (2d Cir. 2009). Respectfully, under the doctrine of intra-court comity, the Court should dismiss these claims as well. *See United States v. Tracy*, CRIM. No. B-90-57 (WWE), 1991 WL 99150, at *1 (D. Conn. May 21, 1991) ("when a judge is confronted with issues identical to issues previously decided by another judge of coordinate jurisdiction, the prior ruling should be followed" absent extraordinary circumstances).

I.     **Plaintiff Fails To State An Exchange Act Claim Against The Xcelera Defendants**

       A.     **Plaintiff Fails To State A Claim Under Section 10(b) and Rule 10b-5 (Count I)**

              1.     **Plaintiff fails to allege particular facts giving rise to a strong inference that any of the Xcelera Defendants acted with scienter.**

Plaintiff makes six arguments in her Opposition. None have any merit and none suggest that a fraudulent inference is as compelling as an innocent one. *First*, Plaintiff argues that the *Feiner* plaintiffs would have defeated a motion to dismiss had they alleged, as Plaintiff does, a tender offer five years after Xcelera's securities were de-registered. Opp. at 18. The Second Circuit, however, never suggested that a tender offer launched years after the de-registration

- 1 -

would have altered its decision. To the contrary, the Second Circuit affirmed the Southern District's ruling that the *Feiner* plaintiffs, like Plaintiff here, failed to allege any facts suggesting it would have made economic sense *prior* to the de-registration and de-listing of the shares for the Xcelera Defendants to destroy the Company's market value in the hopes of recouping profits later through a minority share buyback. *Feiner II*, 2008 WL 5233605, at *6 ("No allegation . . . provides particularized facts to support Plaintiffs' implicit theory that Defendants had a plan to make up for these losses, and in fact gain benefits, from a future tender offer, sale, or "going private" transaction.") (citation and internal punctuation omitted). Those courts found no plausible inference of scienter because it made no economic sense for the Xcelera Defendants to engage in conduct that would destroy the value of their shares absent a realistic chance of recouping the losses; the same result should follow here.

*Second*, Plaintiff asserts that "the Viks knew they were buying Xcelera stock in the Tender Offer without making the necessary disclosures concerning the Company's finances." Opp. at 19. This argument makes no sense. For one thing, OFC, not the Viks, made an offer for Xcelera shares. Plaintiff's conjecture that OFC is a "shell" for the Viks is based only on one fact: the tender offer lists a business associate of Alex Vik who was once an Xcelera Director, Hans Eirik Olav, as a contact person. Compl. ¶ 43; Opp. at 11. This one fact – that one of the Xcelera Defendants is a business associate of a person with some association with the tender offer – is not nearly enough to provide a basis to disregard OFC's corporate form or to declare that the Xcelera Defendants are "control persons" of OFC. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (complaint failed to allege "specific facts" sufficient to overcome the "presumption of separateness" afforded even to parent and subsidiary companies). The Xcelera Defendants are not alleged to be officers, directors, or owners of OFC, to have

contracted with OFC, or to have been involved with OFC in any identifiable way.  The documents Plaintiff appends to her Opposition *confirm* that no connection exists – *e.g.*, OFC's articles of incorporation list "Mr. Arthur Douglas Turner" as the OFC control person, and do not mention Olav or the Xcelera Defendants.  Abraham Decl. Ex. D at 17.

Further, Section 13(a) of the Exchange Act requires public financial reporting only by issuers of *registered* securities.  *See* 15 U.S.C. § 78(m)(a).  Following the 2006 de-registration, Xcelera had no continuing obligation (and no affirmative duty) to disclose its financial information.  *See Polak v. Cont'l Hosts, Ltd.*, 613 F. Supp. 153, 157 (S.D.N.Y. 1985) (dismissing Section 10b claim as company had no obligation to file financial information following de-registration).  Absent such a duty, the Xcelera Defendants are not liable for its omission.  *See, e.g., Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).

*Third*, Plaintiff asserts that "no other rational person" would launch a tender offer for Xcelera's minority shares.  Opp. at 12.  Plaintiff provides her own rebuttal – a private equity firm that believes the shares are undervalued might do so.  Opp. at 19-20.  By contrast, Plaintiff provides no plausible explanation for why Defendants would attempt an elaborate subterfuge just to purchase additional shares of a company *they already controlled*.

*Fourth*, Plaintiff argues that the Xcelera Defendants' $225 million loss in the market value of their shares is an unrealized "paper" loss.  Opp. at 19.  This argument contradicts the damages theory of virtually every private action ever filed under the securities laws, which allege losses in the market value of a plaintiff's shares.  Indeed, such losses are critical to *Plaintiff's own claim* (i.e., she and other minority shareholders suffered losses when the market value of their shares declined following the de-listing and de-registration).  A company's value might be measured by the assets under its control, but Plaintiff has not alleged how the Xcelera

Defendants received a "concrete and personal benefit . . . resulting from the fraud," as she was required to.  *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001).

*Fifth*, Plaintiff argues that the Xcelera Defendants' "motive" was to undermine the value of their own shares because they could profit from the difference between what they paid to minority shareholders and the "true private market value" of those shares.  Opp. at 20.  But such a plan would be self-defeating: the thrust of the Plaintiff's allegations is that the Xcelera defendants deliberately *destroyed* the market for Xcelera shares, which are no longer publicly traded.  It would make no sense for the Xcelera Defendants to take such drastic action when the end result is that they had no realistic prospect to resell any minority shares they acquired.

*Sixth*, Plaintiff asserts that Defendants had the "opportunity" to commit the alleged scheme because the consequences of failing to make the appropriate filings were "easily foreseen."  Opp. at 22.  Even if de-listing and de-registration were foreseeable consequences, Plaintiff pleads no allegations that the Xcelera Defendants foresaw that the company would be left following these catastrophic events with more than sufficient assets to recoup the immediate $225 million loss or that the minority shareholders would tender shares back to them.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1984) ("Opportunity" in this context refers to "the means and likely prospect of achieving concrete benefits by the means alleged.").  To the contrary, Plaintiff alleges that at the time of the de-listing and de-registration the assets held by the company were a fraction of the Xcelera Defendants' loss.  Mem. at 18.

>    **2.   Plaintiff fails to allege that the Xcelera Defendants made a material misstatement or omission.**

Plaintiff concedes that she does not plead a specific misstatement or omission as a basis for her claim, and instead sets forth a series of speculative assertions and *ad hominem* attacks.  Opp. at 11.  Fairly read, Plaintiff asserts that the "omission" was Xcelera's failure to continue

- 4 -

filing financial information *after* it was de-registered.  But that was no "omission:" Xcelera had no ongoing duty to disclose its financial information after it de-registered.  *See* Part I.A.1 *supra*.

Plaintiff also alludes to allegedly inappropriate "insider trading."  Opp. at 10-11.  The only transactions she alleges were purchases pursuant to a tender offer, which are exempt from rules relating to trading on insider information.  *See* 17 C.F.R. § 240.14e-3(c).  More fundamentally, the Complaint fails to specify what material information should have been disclosed, but was not.  Xcelera's failure to file an annual report, the consequent regulatory proceedings, Xcelera's delisting, Xcelera's de-registration, and the OFC tender offer were all publicly known (and form the basis for Plaintiff's complaint).  *See* Compl. ¶¶ 23-25, 27-28, 30, 42; *Stromfeld v. Great Atl. & Pac. Tea Co.*, 496 F. Supp. 1084, 1087 (S.D.N.Y. 1980) (failure to allege "specific description of the alleged inside information or when it was obtained is grounds in itself for dismissing this cause of action"), *aff'd*, 646 F.2d 563 (2d Cir. 1980).

Plaintiff's "catchall" theory of market manipulation (Opp. at 14-15) also fails because it requires at a minimum a market to be manipulated and a deceptive act by the defendant that contributed to the manipulation of that market such as a false pricing signal or a rigged bid.  *See* Mem. at 20; *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 130 (2d Cir. 2011) ("[T]he gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators.").  Plaintiff alleges there is no market for Xcelera stock, much less an efficient one.  Compl. ¶ 31 (conceding that Xcelera securities are "not tradable in the United States").  She argues that the de-listing and de-registering was itself "market manipulation," but that proves too much as it would improperly read fraud into every de-registration of a public company, which was rejected by the Second Circuit.  *Feiner,* 352 F. App'x at 463-64.

Plaintiff not only fails to identify any deceit related to the pricing of her securities, she knew the key facts in the alleged "scheme" – the failure to file an annual report, consequent regulatory proceedings, delisting, de-registration, and the OFC tender offer (with Olav listed as a contact), *see* Compl. ¶¶ 23-25, 27-28, 30, 42 – and therefore cannot use them as the basis for a market manipulation claim. *See Wilson*, 671 F.3d at 130 ("In order for market activity to be manipulative, that conduct must involve misrepresentation or nondisclosure" ).[1]

### 3. Plaintiff fails to allege reliance on a material misstatement or omission by the Xcelera Defendants.

Plaintiff does not dispute her failure to allege reliance on any misstatement, and instead cites to *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152-53 (1972), which she misinterprets to hold that "Plaintiff's individual reliance is irrelevant" to omission and manipulation claims under Rule 10b-5 (a) and (c). Opp. at 24-25. *Affiliated Ute*, however, only applies when the defendant had an underlying duty to disclose the information at issue. *See In re Smith Barney Transfer Agent Litig.*, -- F. Supp. 2d ---, 2012 WL 3339098, at *8 (S.D.N.Y. Aug. 15, 2012) (citing cases). The Xcelera Defendants had no such duty. *See* Part I.A.1 *supra*. Further, *Affiliated Ute* only affords a presumption of reliance in certain circumstances. *See Lewis v. McGraw*, 619 F.2d 192, 195 (2d Cir. 1980). *Affiliated Ute* does not apply when, as here, all of the facts that were allegedly omitted were publicly known. *See, e.g.*, *Wardrop v. Amway Asia Pac. Ltd.*, No. 99 Civ. 12093 (DC), 2001 WL 274067, at *5 (S.D.N.Y. Mar. 20,

---

[1] Plaintiff asserts that deception need not be part of a manipulation claim, citing *Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540, 546 (2d Cir. 1967), *Davis v. Davis*, 526 F.2d 1286, 1289 (5th Cir. 1976), and *Atchley v. Qonaar Corp.*, 704 F.2d 355, 358 (7th Cir. 1983). Opp. at 16. Those cases have been overruled. *See Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 7-8 (1985) (Section 10(b) claim requires "misrepresentation"); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476, (1977) ("breach of fiduciary duty by majority stockholders, without any deception, misrepresentation, or nondisclosure" does not violate Section 10(b)).

2001) (J. Chin) (tender offer not misleading for failing to include publicly available information), *aff'd* 26 F. App'x 89 (2d Cir. 2002).

### B. Plaintiff Fails To State A Claim Under Section 14(e) of the Exchange Act and Rule 14e-3 (Count II)

Plaintiff's arguments in her Opposition with respect to her Section 14(e) and Rule 14e-3 claims largely resemble her arguments regarding her Section 10(b) and Rule 10b-5 claims, and are deficient for the same reasons. *See* Part I.A *supra*. Plaintiff also argues that the Court may infer that the de-listing and de-registration of Xcelera, which occurred in 2004 and 2006, were "in connection with" a Tender Offer by another party in late 2010 because the Xcelera Defendants still had not made available financial information at that time. Opp. at 28. Plaintiff ignores that Section 14(e) and Rule 14e-3's prohibitions extend only to "misstatements, omissions, or nondisclosures which occur *in close proximity to the tender offer*" – under no conceivable theory could conduct in 2004 and 2006 be considered "in close proximity" to a 2010 tender offer. *Frankel v. Slotkin*, 705 F. Supp. 105, 109, (E.D.N.Y. 1989) (rejecting 14(e) claims given three-month lag between alleged conduct and tender offer), *aff'd*, 984 F.2d 1328 (2d Cir. 1993) (emphasis added); *see also* Mem. at 24-25.

### C. Plaintiff Fails To State A Claim Against The Xcelera Defendants Under Section 20(a) of the Exchange Act (Count IV)

Plaintiff argues that she alleged control person violations as to the Xcelera Defendants' control over OFC. Opp. at 30. She has not. *See* Part I.A.1 *supra*. Further, contrary to Plaintiff's assertion, the Xcelera Defendants do not "concede" OFC's liability – they did not reply specifically as to the charges against OFC because those allegations pertained to another party to the litigation. Opp. at 30. Plaintiff has failed to state a claim against *any* party, including OFC. *See ALV Events Int'l v. Johnson*, 821 F. Supp. 2d 489, 493 (D. Conn. 2010) (denying default judgment for insufficiently plead claims). Plaintiff also argues that control status is subject to the

- 7 -

standards of FRCP 8(a).  Opp. at 31-32.  Rule 8(a) still requires pleaded facts, not mere conclusions, and courts have repeatedly held that "[c]onclusory allegations of control are insufficient as a matter of law."  *In re Global Crossing Ltd. Sec. Litig.*, No. 02 Civ. 910(GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.) (collecting cases).

Plaintiff also argues that she need not plead the Xcelera Defendant's culpable participation in the alleged primary violation.  Opp. at 33-34.  The Second Circuit ruled that plaintiffs must plead "that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud" as part of any Section 20(a) plaintiff's prima facie case.  *ATSI Commc'ns, Inc. v. Shaar Fund, Inc.*, 493 F.3d 87, 108 (2d Cir. 2007).  Most courts that have considered the issue have presumed the Second Circuit meant what it said.[2]  Plaintiff failed to plead such allegations and her Section 20(a) claim should be dismissed.  *See* Part I.A.1 *supra.*

### D.  The Complaint Fails To Plead Claims Against Each Defendant

Citing *ATSI* and *SEC v. Alexander*, 160 F. Supp. 2d 642 (S.D.N.Y. 2001), Plaintiff asserts that she need not particularize the role of each Xcelera Defendant in the alleged conduct.  Opp. at 35.  Neither case supports Plaintiff's argument, and indeed, both rule squarely against it.  *See ATSI*, 493 F.3d at 102 ("[A] manipulation complaint must plead with particularity . . . *the roles of the defendants*") (emphasis added); *Alexander*, 160 F. Supp. 2d at 649 (requiring "factual allegations that provide substantiation and make [plaintiff's claim] plausible").  Plaintiff was thus required to plead with specificity what each defendant did.  Mem. at 29-31.  Plaintiff summarizes her allegations as to all of the Defendants in a few sentences; the brevity serves to underline the Complaint's deficiencies.  Opp. at 36.  She does not explain Xcelera's role in

---

[2] *See Brodzinsky v. FrontPoint Partner LLC*, No. 3:11-cv-10(WWE), 2012 WL 1468507, at *5 (D. Conn. Apr 26, 2012) (requiring "particularized facts of the controlling person's conscious misbehavior or recklessness"); *Poptech, L.P. v. Stewardship Credit Arbitrage Fund,* 792 F. Supp. 2d 328, 336 (D. Conn. 2011) (requiring allegations of "culpable participation").

formulating a tender offer for its own shares or any other misrepresentation or omission it made (Mem. at 29); makes only the insufficient allegation against VBI that it "acted with [the Viks] to accomplish the scheme to defraud Xcelera's minority shareholders" (Opp. at 36); makes no allegations from which to infer that Alexander Vik acted with scienter; and says nothing about Gustav Vik except to refer to him as one of the "Viks" (*e.g.*, Opp. at 36). She failed to carry her pleading burden.

### E.   Plaintiff Fails To Identify Her Transactions In Xcelera Stock Within The Alleged Class Period

Plaintiff asserts that her certification, which only identified the Xcelera shares that she sold in 2011, was sufficient because she envisions no "predefined 'class period.'" Opp. at 37. Her proposed class, however, consists of any person or entity who has ever sold shares to the Xcelera Defendant from the beginning of time to today. She was thus required to report *all* of the transactions she executed in those shares. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv).[3] She failed to do so and this is an independent ground to dismiss her claim.

## II.   Plaintiff Fails To State A Breach of Fiduciary Duty Claim Against The Xcelera Defendants (Count V)

Plaintiff argues that OFC's tender offer, by itself, gave rise simultaneously under Cayman Islands law both to the existence of a "special factual relationship" between herself and the Viks and to their breach of fiduciary obligations arising therefrom. Opp. at 37-38. Plaintiff is wrong. "Special factual relationships" under Cayman Islands law are those in which directors voluntarily assume a duty of loyalty and honesty on a shareholder's behalf, such as an agency relationship that "involve duties of trust, confidence and loyalty" and requires at a minimum "direct and close

---

[3] Plaintiff cites *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001), which held that a certification that satisfied the PSRLA requirements when the initial complaint was filed, but was not subsequently amended when the class expanded, was sufficient. It does not suggest that Plaintiff can shirk the certification requirement *at the outset of the case*.

- 9 -

contact" with the director defendant. *Peskin v. Anderson*, [2001] 1 B.C.L.C. 372 ¶ [34]. Plaintiff comes nowhere near alleging such "special circumstances" existed between herself and the Viks. To the contrary, Plaintiff alleges that the Viks deliberately disguised their identities through OFC.[4] She alleges nothing more than a shareholder/director relationship and as the SDNY ruled in *Feiner*, that is insufficient to establish a fiduciary duty as a matter of law. Mem. at 33-34.[5]

### III. Plaintiff's Claims Are Time-Barred

Although the key events occurred nearly six years before the Complaint was filed, Plaintiff asserts her claims did not accrue until the OFC tender offer in 2010 because she purportedly was unable to adequately plead her claims until then. Opp. at 39-40. The scienter and breach of fiduciary duty allegations here are identical in substance to the ones set forth in the *Feiner* complaints and thus could have been brought earlier. *See Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir.1993) (complaint is time-barred when prior lawsuits with similar allegations were filed prior to limitations period expiration). Further, the 2010 tender offer was made by OFC, not the Xcelera Defendants. *See* Section I.A.1 *supra*. Her complaint is untimely.

### IV. Conclusion

For the reasons set forth herein and in the Xcelera Defendants' opening memorandum, the Complaint should be dismissed with prejudice.

---

[4] Plaintiff cites an inapplicable state court decision, *Hayat v. Al Mazeedi*, Civ. No. 081004(TPB), 2011 Mass. Super. LEXIS 73, at *6-*11 (Super. Ct. Mass. Jan. 11, 2011), in which the shareholder and director together formed a company. No similar relationship is alleged here.

[5] Plaintiff asserts *Feiner* holds "that a claim for breach of fiduciary duty under Cayman Islands law would be stated where 'Plaintiff was solicited or sold any of its own shares to Xcelera or to any other Defendant." Opp. at 38 (quoting, out of context, *Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914(RPP), 2007 WL 2615448, at *8 (S.D.N.Y. Sept. 11, 2007)). In fact, *Feiner* held that *even though* the plaintiff alleged that the Xcelera Defendants solicited and purchased shares from minority shareholders, the Complaint failed to allege any direct or close contact between the directors and the plaintiff. *Id.* As here, "**no facts were pled that indicate any relationship between the Director Defendants and Plaintiff aside from the fact that the Director Defendants are directors of Xcelera, and Plaintiff owns shares in Xcelera.**" *Id.* (emphasis added).

- 10 -

Dated: September 14, 2012

/s/ Peter J. Macdonald

Peter J. Macdonald, phv01529
David F. Olsky, phv05365
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

Charles W. Pieterse, Esq., ct01577
WHITMAN BREED ABBOTT
& MORGAN LLC
500 West Putnam Ave.
Greenwich, Connecticut 06830
Telephone: (203) 862-2332
Facsimile: (203) 869-1951
cpieterse@wbamct.com

*Attorneys for Defendants Xcelera, Inc., VBI Corp., Alexander M. Vik, and Gustav M. Vik*

- 11 -

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14th, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: /s/ David F. Olsky
David F. Olsky (admitted pro hac vice)