## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GLORIA STEGINSKY, Individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

    vs.

XCELERA INC., OFC LTD., VBI CORPORATION,
ALEXANDER M. VIK, GUSTAV M. VIK, and HANS
EIRIK OLAV,

        Defendants.

Case No. 3:12-cv-00188-SRU

## THE XCELERA DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR RENEWED MOTION TO DISMISS THE COMPLAINT

**ORAL ARGUMENT REQUESTED**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ..........................................................................................4

I.     FACTUAL BACKGROUND...................................................................4

     A.     The Alleged Manipulative Scheme.................................................5

     B.     The Alleged Insider Trading Violation............................................7

     C.     Causes of Action Asserted .........................................................8

II.    PROCEDURAL HISTORY...................................................................9

     A.     This Court Dismisses Plaintiff's Claims in Their Entirety .......................9

     B.     The Second Circuit Vacates Dismissal as to One Claim ..........................11

     C.     Remand Proceedings.................................................................13

ARGUMENT ............................................................................................14

III.   PLAINTIFF HAS NOT VALIDLY PLED ANY INSIDER TRADING CLAIMS BASED ON TRANSACTIONS OTHER THAN OFC'S TENDER OFFER. .......16

IV.   PLAINTIFF'S SECTION 20A CLAIM SHOULD BE DISMISSED IN ITS ENTIRETY.............................................................................................22

V.    PLAINTIFF'S NON-FEDERAL CLAIM LACKS MERIT. ...............................24

CONCLUSION..........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.,*
    256 F.R.D. 49 (D. Conn. 2008)................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007).....................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................15

*Blum v. Yaretsky,*
    457 U.S. 991 (1982)................................................................................21

*Caiola v. Citibank, N.A.,*
    295 F.3d 312 (2d Cir. 2002)...................................................................15

*Combs v. Case,*
    Civil No. 05-00741, 2007 U.S. Dist. LEXIS 95604 (D. Haw. Sept. 20, 2007).......................24

*Copland v. Grumet,*
    88 F. Supp. 2d 326 (D.N.J. 1999)..........................................................20

*Feiner Family Trust v. VBI Corp.,*
    No. 07 Cir. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007)...................2, 7, 21, 5

*Feiner Family Trust v. VBI Corp.,*
    352 F. App'x 461 (2d Cir. 2009) ............................................... *passim*

*Feiner Family Trust v. VBI Corp.,*
    No. 10-cv-3431 (RPP), 2010 WL 3184482 (S.D.N.Y. Aug. 9, 2010)................7, 25

*Feiner Family Trust v. Xcelera.com, Inc.,*
    No. 07 Cir. 1914 (RPP), 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008) .............2, 7, 25

*Fujisawa Pharm. Co. v. Kapoor,*
    115 F.3d 1332 (7th Cir. 1997)................................................................23, 24

*Fujisawa Pharm. Co. v. Kapoor,*
    932 F. Supp. 208 (N.D. Ill. 1996), *aff'd*, 115 F.3d 1332 (7th Cir. 1997) ...............24

*In re Cypress Semiconductors Sec. Litig.,*
    No. C-92-20048 RPA, 1994 WL 669856 (N.D. Cal. Nov. 29, 1994) ....................20

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    610 F. Supp. 2d 600 (S.D. Tex. 2009) ..............................................................20

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) .............................................................19

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ..............................................................23

*In re Take-Two Interactive Sec. Lit.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) .............................................................18

*Isanaka v. Spectrum Techs. USA, Inc.*,
    131 F. Supp. 2d 353 (N.D.N.Y. 2001) ............................................................15

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ...........................................................................24

*Lewis v. Casey*,
    518 U.S. 343 (1996) .........................................................................................21

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 435 (S.D.N.Y. 2001) .............................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .........................................................................................21

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007) ...........................................................5, 15

*NatTel, LLC v. SAC Capital Advisors LLC*,
    370 F. App'x 132 (2d Cir. 2006) .....................................................................25

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ...............................................................................20

*Salinger v. Projectavision, Inc.*,
    972 F. Supp. 222 (S.D.N.Y. 1997) ..................................................................19

*Sawant v. Ramsey*,
    570 F. Supp. 2d 336 (D. Conn. 2008) .............................................................21

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
    296 F.R.D. 241 (S.D.N.Y. 2013) .....................................................................18

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014) .................................................................... *passim*

*Steginsky v. Xcelera Inc.*,
    No. 3:12-cv-188, 2013 WL 1087635 (D. Conn. Mar. 14, 2013), *aff'd in part*, 741
    F.3d 365 (2d Cir. 2014).................................................................................... *passim*

*Warth v. Seldin*,
    422 U.S. 490 (1975)............................................................................................21

*Wilson v. Comtech Telecomm. Corp.*,
    648 F.2d 88 (2d Cir. 1981)............................................................................20, 21

**CODES, STATUTES & REGULATIONS**

15 U.S.C. § 78n(e)..................................................................................................11

15 U.S.C. § 78j(b)................................................................................................1, 9

15 U.S.C. § 78t(a)....................................................................................................9

15 U.S.C. § 78t-1 ...........................................................................................1, 9, 23

15 U.S.C. § 78u-4..................................................................................................15

15 U.S.C. § 78u-4(b)(1)........................................................................................16

17 C.F.R. § 240.10b-5................................................................................... *passim*

17 C.F.R. § 240.14e-3............................................................................................11

**RULES**

Fed. R. Civ. P. 8....................................................................................................14

Fed. R. Civ. P. 9(b)...............................................................................................15

**OTHER AUTHORITIES**

H.R. 5133, *Explanation of Bloc of Amendments by the House Energy and Commerce
    Committee*, 100th Cong. (Aug. 9, 1988)...........................................................23

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendants Xcelera, Inc., VBI Corporation, Alexander M. Vik and Gustav M. Vik (together, the "Xcelera Defendants") submit this Memorandum in support of their renewed motion to dismiss.

For the reasons described below, Plaintiff has failed to plead an insider trading violation under Section 10(b) (15 U.S.C. § 78j(b)) of and Rule 10b-5 (17 C.F.R. § 240.10b-5) under the Securities Exchange Act of 1934 ("Exchange Act") as to transactions other than the tender offer into which she sold her shares.[1]  Additionally, she has failed to plead entirely her claims asserted under Exchange Act Section 20A (15 U.S.C. § 78t-1) and her non-federal claims for breach of fiduciary duty.

## PRELIMINARY STATEMENT

This is the latest salvo in a continuing series of lawsuits against Xcelera Inc. ("Xcelera" or the "Company"), its controlling shareholder, and certain of its officers and directors, arising out of the 2004 de-listing and 2006 de-registration of the Company's common stock.  Here, as in the related prior actions filed in the Southern District of New York, a minority shareholder Plaintiff contends that these Defendants deliberately orchestrated the stock's de-listing and de-registration so that they could increase their 76% control position by buying additional shares cheaply, in violation of certain anti-fraud provisions of the Securities Exchange Act of 1934 (the "Exchange Act") and in violation of their common law fiduciary obligations to minority shareholders.

---

[1]     The Xcelera Defendants respectfully submit that the Plaintiff has not pled a viable claim with respect to any aspect of the Complaint, including for reasons raised in their initial motion but not addressed by this Court or reviewed by the Second Circuit. *See, e.g.*, Dkt. Nos. 44, 62. For purposes of this renewed motion, however, the Xcelera Defendants acknowledge that the Second Circuit's decision provides, at least at this stage of litigation, that Plaintiff may proceed to discovery on—and only on—its theory that OFC's tender offer constitutes a violation of federal insider trading prohibitions under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. *See Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014).

This Court dismissed Plaintiff's Complaint in its entirety, *Steginsky v. Xcelera Inc.*, No. 3:12-cv-188, 2013 WL 1087635 (D. Conn. Mar. 14, 2013), *aff'd in part*, 741 F.3d 365 (2d Cir. 2014), observing that the substance of Plaintiff's allegations and theories were functionally identical to those asserted in prior, related claims held deficient as a matter of law by both the Southern District of New York and the Second Circuit. *See id.* at *3 (citing *Feiner Family Trust v. VBI Corp.*, 352 F. Appx. 461 (2d Cir. 2009); *Feiner Family Trust v. Xcelera.com, Inc.*, No. 07 Cir. 1914 (RPP), 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008); and *Feiner Family Trust v. VBI Corp.*, No. 07 Cir. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007)) (collectively the "*Feiner* actions").

The only distinction between the Complaint here and those dismissed in the various *Feiner* actions is an allegation that in December 2010, a Maltese corporation called OFC Limited ("OFC")—which Plaintiff conclusorily asserts was a "shell" through which the Xcelera Defendants acted—initiated a tender offer seeking to purchase up to 10 million shares from Xcelera investors at a price of $0.25 per share. This Court found that distinction immaterial because those allegations did not render Plaintiff's claims any more plausible than those found lacking in the *Feiner* actions. *Steginsky*, 2013 WL 1087635, at *4. Nor did OFC's tender offer constitute illegal insider trading because OFC was not subject to an independent duty to disclose under either federal reporting statutes or state common law. *Id.* at *5. Because Plaintiff failed to state any federal cause of action, this Court declined to exercise pendent jurisdiction over plaintiff's state law claims, notwithstanding its observation that "plaintiff's nonfederal claims lack merit." *Id.* at *6.

On January 27, 2014, the Second Circuit affirmed, in part, and vacated and remanded, in part, this Court's initial dismissal order. *Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014).

The Second Circuit vacated this Court's holding in only one, narrow respect: it found that the additional allegations as to OFC's tender offer might meaningfully differentiate this Complaint from its previous, related iterations. It held that if OFC was, in fact, acting as a surrogate for Company insiders, federal common law could supply the independent duty to disclose that this Court found lacking in Plaintiff's insider trading theory. *Id.* at 369. Because the allegations as to OFC's tender offer might plausibly be construed to state a claim for insider trading, the Second Circuit remanded the claim back to this Court for further proceedings. *Id.* In so doing, the Second Circuit made clear that it was addressing transactions related to the OFC "tender offer" only. *Id.* at 369-70 ("Plaintiff's insider trading claims are based on the alleged purchase of Xcelera securities by Xcelera insiders *through the tender offer* without disclosing to potential sellers any information about Xcelera's financial state.") (emphasis added); *id.* at 370 ("These insiders are alleged to have traded in Xcelera securities through their control of OFC, *when the Vik defendants caused OFC to purchase plaintiff's Xcelera stock through the tender offer*.") (emphasis added).

Plaintiff now seeks to disregard those limitations and bootstrap the Second Circuit's decision into an expansive series of claims never contemplated, much less condoned, by that opinion, all to broaden the scope of the putative class and inflate the value of class claims. Plaintiff contends that the Second Circuit allowed—and her Complaint validly pleads—insider trading claims under Exchange Act Rule 10b-5 and Section 20A based not just on the so-called 2010 "tender offer," but based on any purchase by any Defendant of Xcelera stock from any person at any time within five years of the filing of Plaintiff's Complaint. With a basis for pendent jurisdiction now reinstated, Plaintiff also asks this Court to revive the non-federal claims

against the Xcelera Defendants for breach of fiduciary duty that this Court has already determined to be baseless.

These claims should be dismissed. *First*, although discovery will ultimately refute the merits of Plaintiff's tender offer-based insider trading claims, Plaintiff's ancillary insider trading claims unrelated to the tender offer should not get even to that point. These purported claims, based on unidentified trades by unnamed parties at unspecified times, are outside the scope of what the Second Circuit remanded, are inadequately pled, and are not claims that Plaintiff has standing to bring. *See infra* Section III. *Second*, Steginsky is not a proper plaintiff to assert a claim under Section 20A at all, whether based on the tender offer or otherwise, and she has not asserted it against the Xcelera Defendants in any event. *See infra* Section IV. *Third*, the Xcelera Defendants neither owed nor breached any fiduciary duty to Plaintiff under governing Cayman Islands law. *See infra* Section V.

For these reasons, set out more fully below, this Court should dismiss Plaintiff's insider trading claims under Section 10(b) and Rule 10b-5 thereunder to the extent they are based on transactions other than the tender offer into which Plaintiff sold her shares, and dismiss entirely Plaintiff's claims for violations of Section 20A and for common law breach of fiduciary duty.

## BACKGROUND

## I.   FACTUAL BACKGROUND

The factual background has been addressed in the prior opinion of this Court. *See Steginsky*, 2013 WL 1087635, at *2-3. For the Court's convenience, the Xcelera Defendants set forth here only those allegations and recent developments relevant to their renewed motion.

Xcelera, an internet holding company, was the beneficiary of the internet bubble, rising from under a dollar per share in April 1999 to over $110.00 per share by March 2000. *See* Complaint (Dkt. No. 1) ("Compl.") ¶ 23. Like many internet stocks, Xcelera's fortunes

foundered when the internet bubble burst.  In Xcelera's last-filed annual report, Defendants Alexander M. Vik, Gustav M. Vik, and VBI Corporation collectively owned over 96 million (76%) of the approximately 125 million Xcelera common shares outstanding.

### A.      The Alleged Manipulative Scheme

Faced with dwindling prospects, Xcelera became delinquent in its reporting obligations when it failed to file its annual report for fiscal year ending January 31, 2004 and later failed to file subsequent reports with the Securities and Exchange Commission ("SEC").  Compl. ¶¶ 24-28.  As a consequence, in late 2004, the American Stock Exchange ("AMEX") initiated an administrative action to de-list Xcelera's securities from that Exchange, and, in November 2006, the Securities and Exchange Commission revoked the registration of Xcelera securities.  *See id*. By September 2004, when the Company first reported its potential de-listing by AMEX, the Company had lost over 99% of its market capitalization from its peak; on November 5, 2004, when AMEX announced it would, in fact, de-list the Company's stock, the listed price was $0.25 per share.  *See* Compl. ¶ 27; *see also* Dkt. No. 45-1 (chart listing historical trading prices of Xcelera stock).[2]  On November 3, 2006, when the SEC revoked Xcelera's registration, the stock traded over-the-counter at $0.10 per share.  *See* Dkt. No. 45-1.

Plaintiff alleges that the Xcelera Defendants deliberately orchestrated the Company's de-listing and de-registration for illicit purposes.  Compl. ¶¶ 1, 29.  The true reason for Xcelera's non-compliance with reporting obligations was to drive down Xcelera's stock price (including the 96 million shares they owned) so that the Xcelera Defendants could "buy out minority shareholders at a discounted price at an opportune time."  *Id.* ¶ 1.

---

[2]      A district court "may take judicial notice of well-publicized stock prices without converting [a] motion to dismiss into a motion for summary judgment."  *Malin v. XL Capital Ltd.,* 499 F. Supp. 2d 117, 134 (D. Conn. 2007).

According to the Complaint, once freed from federal reporting requirements, the Xcelera Defendants were able to conceal from shareholders the Company's burgeoning financial health which, Plaintiff contends, had improved secretly and considerably following Xcelera's 2004 delisting.  Compl. ¶¶ 34-39.[3]  And absent any publicly traded market, minority shareholders would have no available venue through which to sell their shares to anybody else.  *Id.* ¶ 31.

Under Plaintiff's theory, by eliminating the market for Xcelera shares and the availability of Xcelera's financial information, the Xcelera Defendants could then marginally increase their ownership stake in Xcelera above their existing 76% stake by buying shares at deflated values. Compl. ¶¶ 29-33.  To effect this scheme, the Plaintiff posits that the Xcelera Defendants intentionally *lost* over $200 million in market value and eliminated the liquidity for the nearly 100 million Xcelera shares they already held.  *Steginsky*, 2013 WL 1087635, at *2.

The Xcelera Defendants allegedly sought to accomplish their ultimate end in the first instance through a strategy of inaction.  They supposedly waited by the phone for minority shareholders to call and ask about selling their now unregistered Company shares, at which time the Xcelera Defendants would allegedly offer to buy the shares at the last listed price:  $0.25 per share.  Compl. ¶ 31.  In other words, the Xcelera Defendants' purported scheme depended upon minority shareholders' taking the initiative to contact them.

Although Plaintiff claims that "[t]his tactic enabled the Viks to buy Xcelera Common Stock for $0.25 per share from disgruntled investors," the Complaint provides no detail about this alleged activity.  *See* Compl. ¶ 33.  Plaintiff neither alleges nor identifies a single instance of (a) any investor initiating contact with any of the Xcelera Defendants; or (b) any Xcelera shares

---

[3]     The reasons why, and ways in which the, Company's performance improved are not stated with any specificity.  Plaintiff assumes Xcelera's success based upon past SEC filings, a press release, a trade publication, corporate websites, and other public sources.  *See* Compl. ¶¶ 34-41.

actually being sold as a result of that outreach. Wherever, whenever, and with whomever these transactions occurred is left unsaid. What is clear about these supposed shareholder-initiated transactions is that Ms. Steginsky did not participate in them. *See* Compl. Ex. A (sworn statement by Ms. Steginsky certifying that her sale to OFC in April 2011 was her only transaction in Xcelera stock during the class period).

Plaintiff's counsel has previously—and on numerous occasions—sued the Xcelera Defendants on behalf of minority shareholders for engaging in this supposed "manipulative scheme." The Complaints in these related actions (the "*Feiner* actions") alleged virtually identical facts and articulated virtually identical theories as those pled in the instant Complaint.[4] Those efforts generated four published opinions (three in the Southern District of New York and one in the Second Circuit), each of which found that the Complaints failed to state a plausible entitlement to relief. *See, e.g., Feiner Family Trust v. VBI Corp.*, 352 F. App'x 461 (2d Cir. 2009) ("*Feiner IV*"); *Feiner Family Trust v. VBI Corp.*, No. 10-cv-3431 (RPP), 2010 WL 3184482 (S.D.N.Y. Aug. 9, 2010) ("*Feiner III*"); *Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008) ("*Feiner II*"); *Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ("*Feiner I*").

## B.    The Alleged Insider Trading Violation

The latest version of the allegations presents a different version of the theory hinging on a "tender offer" in 2011. According to the current allegations, four years after the Company's deregistration (and following the serial lawsuits arising from it), the Xcelera Defendants allegedly grew impatient and commenced an alleged "tender offer" in December 2010 to acquire

---

[4]    The Xcelera Defendants chronicled in detail the substance and chronology of the myriad, previous iterations of these allegations in the *Feiner* actions in their initial motion to dismiss. *See* Dkt. No. 44 at 4-9.

10 million shares of Xcelera stock for $0.25 per share. *Id.* This tender offer was initiated by a Maltese Company called OFC Ltd. ("OFC"). Compl. ¶¶ 42-46. Plaintiff alleges that OFC sent a letter to Plaintiff and other minority shareholders seeking to purchase up to 10,000,000 shares at a price of $0.25 per share, while reserving the right to change the number of shares, the terms of the offer, and to transfer shares to unnamed "affiliates." *Id.* ¶ 42. Plaintiff's Complaint neither attaches any tender offer materials, nor provides any indication that she relied upon or even read them. *See id.* ¶ 46. Plaintiff claims that she nonetheless sold 100,001 shares of Xcelera Stock to OFC in the tender offer for $0.25. *Id.* ¶ 8 & Ex. A.

Plaintiff asserts that the Xcelera Defendants should be liable for OFC's conduct because, based upon information and belief, OFC is nothing but a "shell" and the "true actors" seeking the tender of the minority shares are the Xcelera Defendants. Compl. ¶ 43. These allegations, however, are all belief and no information. Plaintiff insists that OFC must be a surrogate for the Xcelera Defendants because "it is the Vik Defendants' modus operandi to use Maltese companies to hide their identity, and they have used such Maltese entities in the past." *Id.* Her Complaint, however, offers no examples or instances of any Xcelera Defendant ever once operating through any company in Malta. The only other pleaded fact pertaining to the identity of OFC's owners or shareholders observes that the email address of Hans Eirik Olav ("Olav"), a separately-named Defendant, appears on the OFC tender offer materials and that Olav (a) at one time was a Director of Xcelera; and (b) at another time had an unrelated business relationship with Defendant Alexander M. Vik. *Id.*

### C.   Causes of Action Asserted

Plaintiff broadly asserts three claims against the Xcelera Defendants:

*The Alleged Manipulative Scheme:*  First, Plaintiff claims that the Xcelera Defendants' plot to depress the market value of Xcelera's stock through deregistering its shares and then buying shares back at a discount constitutes a fraudulent, manipulative "scheme" in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5).  Compl. ¶¶ 47-55 (Count I).  Plaintiff also contends that the Xcelera Defendants should be secondarily liable for this conduct as control persons under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)).

*Insider Trading:*  Second, Plaintiff claims that by purchasing Xcelera shares through OFC, the Xcelera Defendants violated Section 10(b) and Rule 10b-5's insider trading prohibitions by trading on the basis of material, non-public information concerning the Company's financial well-being.  Compl. ¶¶ 51-55 (Count I).  Although Count III of the Complaint also alleges that OFC violated the insider trading prohibitions set forth in Section 20A(a) of the Exchange Act (15 U.S.C. § 78t-1), that Count is not asserted against any of the Xcelera Defendants.  *See* Compl. ¶¶ 66-71.

*Non-Federal Claims:*  Third, Plaintiff claims that by undertaking the activities described above, the Xcelera Defendants breached fiduciary duties they owed to minority shareholders under Cayman Islands law.  *Id.* ¶¶ 82-87 (Count V).

## II.    PROCEDURAL HISTORY

### A.    This Court Dismisses Plaintiff's Claims in Their Entirety

On March 14, 2013, this Court issued an order dismissing Plaintiff's claims in their entirety.  *Steginsky v. Xcelera, Inc.*, No. 12:CV-188, 2013 WL 1087635, at *6 (D. Conn. Mar. 14, 2013).

***The Alleged Manipulative Scheme:***  As to Plaintiff's market manipulation theory under Section 10(b), this Court held that the Complaint failed to give rise to a plausible inference of scienter, much less the strong scienter inference required by the PSLRA.  *Id.* at *2-4.  The critical flaw in Plaintiff's scheme theory—as it was in the *Feiner* actions—was that it "defie[d] economic reason."  *Id.* at *4.  Plaintiff asked this Court to infer that, beginning in 2004, the Xcelera Defendants deliberately baited regulators into de-listing and then de-registering Xcelera's stock—costing them a quarter billion dollars in personal wealth in the process—in hopes that the Company might rebound at some unspecified point in the future, at which time they might be able to offset their losses by repurchasing stock at depressed prices.  Such a speculative theory relied upon inferences too numerous and elaborate to sustain Plaintiff's basic pleading burden of facial plausibility; the "much more plausible explanation" for the decision to cease filing annual reports was that "defendants decided that the costs of regulatory compliance were too high for a company experiencing languishing share price and trading volume."  *Id.*

***Insider Trading:***  As to Plaintiff's insider trading claim under Section 10(b), this Court held that even assuming that the Xcelera Defendants were behind OFC, the Complaint still failed to allege that the Xcelera Defendants bore any duty to disclose material financial information before trading.  *Steginsky,* 2013 WL 1087635, at *5.  The Court noted that the de-registration of Xcelera's common stock eliminated any statutory obligation to disclose or report current company financial information.  *Id.*  It also held that the Xcelera Defendants neither owed nor breached any fiduciary duties to minority Xcelera investors under governing state law (Cayman Islands law).  *Id.*  Because liability for insider trading requires the existence of a duty to disclose, and because none existed at law, the insider trading claims necessarily failed.  The Court found additionally that the failure of Plaintiff to identify with specificity the nature or substance of the

inside information that was purportedly withheld was an independent ground for dismissing the insider trading cause of action. *Id.*

**Non-Federal Claims:** Although this Court declined to exercise supplemental jurisdiction over Plaintiff's non-federal claims, the finding that the Xcelera Defendants did not owe any fiduciary duties to Plaintiff under governing Cayman Islands law was an essential predicate to the Court's dismissal of Plaintiff's insider trading claims. *See Steginsky*, 2013 WL 1087635, at *5-6. Under Cayman Islands law, fiduciary duties from directors to shareholders arise only where a "special factual relationship" exists between them. *Id.* at *5. Such a relationship is a rare circumstance requiring "direct and close contact" of a type not remotely alleged by Plaintiff's Complaint. *Id.* Accordingly, even though this Court dismissed Plaintiff's fiduciary duty claims without prejudice to their refiling in state court, it nonetheless noted their "obvious weakness," and observed frankly that plaintiff's "nonfederal claims lack merit." *Id.* at *5-6.

**B.      The Second Circuit Vacates Dismissal as to One Claim**

Plaintiff appealed this Court's decision to the Second Circuit, which largely affirmed the dismissal.

**The Alleged Manipulative Scheme:** The Second Circuit agreed that Plaintiff's manipulation theory was inadequately pled, finding it not merely implausible but also untimely. *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 369 (2d Cir. 2014).[5]

**Insider Trading:** The Second Circuit, however, vacated this Court's dismissal as to Plaintiff's insider trading theory, finding that a duty to disclose had been plausibly pled as to the Xcelera Defendants. *Id.* at 370. The Court of Appeals announced, for the first time, that the

---

[5]     The Second Circuit also affirmed dismissal of Plaintiff's claims under Exchange Act Section 14(e) (15 U.S.C. § 78n(e)) and Rule 14e-3 thereunder (17 C.F.R. § 240.14e-3), noting that those tender offer provisions were not intended to cover misconduct of the sort alleged in Plaintiff's Complaint. *Steginsky*, 741 F.3d at 372.

source of an insider's duty to disclose material information or abstain from trading in a company's securities stems neither from federal reporting statutes nor from state law. Rather, "federal common law" supplies the applicable duty, which applies to registered and unregistered companies alike, whether or not subject to the federal statutory reporting requirements under the Exchange Act. *Id.* at 371. The Second Circuit accordingly vacated dismissal of the insider trading claim and remanded that claim back to this Court for further consideration. *Id.* at 372.

In so doing, the Second Circuit framed Plaintiff's insider trading allegations as follows: "Plaintiff's insider trading claims are based on the alleged purchase of Xcelera securities by Xcelera insiders *through the tender offer* without disclosing to potential sellers any information about Xcelera's financial state." *Steginsky*, 741 F.3d at 369-70 (emphasis added). *See also id.* at 370 ("These insiders are alleged to have traded in Xcelera securities through their control of OFC, *when the Vik defendants caused OFC to purchase plaintiff's Xcelera stock through the tender offer.*") (emphasis added). Thus, the Second Circuit addressed only investor sales occurring through the OFC tender offer and subject to the OFC tender offer materials. In reviewing Plaintiff's insider trading theory, it never purported to consider, much less addressed, any transactions with any other Defendants occurring outside of the context of the tender offer. *See id.* Nor did the Second Circuit meaningfully review alternative grounds for dismissing Plaintiff's insider trading claims raised by the Xcelera Defendants in their original motion, but not addressed by this Court in its initial dismissal order.[6]

---

[6]    Among the defenses raised by the Xcelera Defendants, but not addressed by this Court or the Second Circuit, were: (1) Plaintiff's failure to allege any facts connecting the Xcelera Defendants to OFC; (2) Plaintiff's failure to plead either actual reliance or entitlement to a presumption of reliance; and (3) Plaintiff's improper reliance on group pleading. *See, e.g.*, Dkt. Nos. 44 & 62.

The Second Circuit additionally remanded Plaintiff's claims under Section 20A(a) of the Exchange Act for further review, noting that this Court had not considered Plaintiff's claims under Section 20A in its decision dismissing Plaintiff's Complaint. *Steginsky*, 741 F.3d at 372. Plaintiff never asserted this claim against the Xcelera Defendants, however (Compl. ¶¶ 66-71) and it was therefore not before this Court in the Xcelera Defendants' initial motion.[7]

**Non-Federal Claims:** Finally, by vacating dismissal of Plaintiff's federal claim for insider trading, the Second Circuit reinstated the basis for this Court's pendent jurisdiction over Plaintiff's non-federal claim. It accordingly remanded Plaintiff's breach of fiduciary duty claim under state law to this Court for further consideration, without discussing the substance of that claim or otherwise disturbing this Court's earlier observation that the claim is meritless.

### C.      Remand Proceedings

Following the issuance of the mandate on February 21, 2014, Plaintiff and the Xcelera Defendants promptly conferred under Fed. R. Civ. P. 26(f) and jointly filed the parties' Report of Planning Conference. *See* Dkt. No. 83 ("26(f) Report"). In the course of these conferrals, Plaintiff outlined its views as to the breadth of its surviving claims.

Plaintiff takes the position that the Second Circuit's decision "contains no holdings that otherwise limit the scope of Plaintiff's claims," which, she claims, are asserted on behalf of "all those who sold Xcelera Common Stock to any of the Defendants." *See* 26(f) Report at 6. According to Plaintiff, this encompasses causes of action arising out of any sales of Xcelera stock to Defendants, whether through the OFC tender offer or otherwise. Plaintiff contends that she has pled, and should be permitted to pursue, independent insider trading violations and

---

[7]      *See* Dkt. No. 44 (Xcelera Defendants' Memorandum in Support of Their Motion To Dismiss) at 3 n.3 (noting that the 20A claim was not brought against the Xcelera Defendants and therefore not addressed in their brief).

common law breach of fiduciary duty claims arising out of each and any investor sales of Xcelera stock to any Defendant at any time, subject only to the limitations period imposed by governing statutes of limitations. *See id*; *see also* Zetlin-Jones Decl. Ex. A (letter from Plaintiff's counsel dated April 14, 2014).[8] She intends to learn through discovery what the scope or extent of those claims might be. *See* 26(f) Report at 15 (stating Plaintiff's intent to obtain through discovery information concerning "the scope of the class and Defendants' purchases of Xcelera stock whether in the context of the Tender Offer or otherwise").

On March 31, 2014, this Court held a Status Conference under Fed. R. Civ. P. 16(a) and set deadlines for further proceedings. The Court granted Plaintiff leave to amend its Complaint to supplement its factual allegations and/or clarify the claims it intended to pursue. *See* Dkt. No. 94 (Conference Memorandum and Order). Plaintiff declined the invitation, electing instead to stand on her initial Complaint.

This motion to dismiss is therefore directed toward Plaintiff's initial complaint and addresses the remanded claims in light of the Second Circuit's decision. For the reasons stated below, Plaintiff's federal insider trading claims should be dismissed to the extent they are premised on transactions other than sales through the OFC tender offer. Plaintiff's non-federal claims and claims under Section 20A should be dismissed in their entirety.

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must as an initial matter satisfy the plausibility requirements for Fed. R. Civ. P. 8—that is, it must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[8]     Citations to "Zetlin-Jones Decl." refer to the accompanying Declaration of David Zetlin-Jones.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims for securities fraud under Section 10(b) and Rule 10b-5 thereunder, like those brought here, require a plaintiff to plead plausibly "that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's conduct caused plaintiff injury." *Caiola v. Citibank, N.A.*, 295 F.3d 312, 321 (2d Cir. 2002) (internal quotation marks omitted).

Securities fraud claims must also satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA, 15 U.S.C. § 78u-4. *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 135 (D. Conn. 2007). Plaintiff's claims for breach of fiduciary duty must likewise satisfy the strictures of Fed. R. Civ. P. 9(b) because they sound in fraud. *See Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49, 52 (D. Conn. 2008) ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary."); *see also Isanaka v. Spectrum Techs. USA, Inc.*, 131 F. Supp. 2d 353, 362 (N.D.N.Y. 2001) ("When a claim for breach of fiduciary duty is based primarily upon alleged fraudulent conduct, the heightened pleading requirements of [9(b)] apply.").

Rule 9(b) requires plaintiffs to plead a particularized factual basis for their fraud claims, including by specifying each alleged fraudulent statement, *who* made them, *where* and *when* they were made, and explain *why* each statement was fraudulent. *See Malin*, 499 F. Supp. 2d at 135. The PSLRA also requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the

statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Failure to satisfy these heightened pleading standards mandates dismissal.

## III.   PLAINTIFF HAS NOT VALIDLY PLED ANY INSIDER TRADING CLAIMS BASED ON TRANSACTIONS OTHER THAN OFC'S TENDER OFFER.

As detailed above, Plaintiff is now seeking to pursue insider trading claims against the Xcelera Defendants under Section 10(b)'s and Rule 10b-5's implied cause of action (and against OFC under Section 20A's express cause of action) on the basis of transactions in Xcelera stock other than the OFC tender offer into which Plaintiff sold.  The rationale for Plaintiff's posture is apparent:  sweeping unrelated, additional trades into the scope of her Complaint would broaden the class and inflate the amount of her claims.  Its basis, however, is lacking.  Plaintiff's attempted assertion of insider trading violations based on transactions apart from and pre-dating the OFC tender offer is defective for at least three reasons.

*First*, extending Plaintiff's insider trading allegations to encompass private sales by other individual shareholders to the Xcelera Defendants at earlier points in time would exceed the scope of the claims the Second Circuit actually remanded.  The Second Circuit's holding that Plaintiff's insider trading claim might be plausibly pled was based on, and limited to, the alleged OFC tender offer.  That limitation was express and unequivocal.  *See Steginsky*, 741 F.3d at 369-70 ("Plaintiff's insider trading claims are based on the alleged purchase of Xcelera securities by Xcelera insiders *through the tender offer* without disclosing to potential sellers any information about Xcelera's financial state.") (emphasis added); *id.* at 370 ("These insiders are alleged to have traded in Xcelera securities through their control of OFC, *when the Vik defendants caused OFC to purchase plaintiff's Xcelera stock through the tender offer*.") (emphasis added).[9]  The

---

[9]    Plaintiff's insider trading claims were so understood by this Court as well in its initial

Second Circuit never considered, much less sanctioned, independent claims for insider trading violations based on other shareholder-initiated sales occurring at some point prior; Plaintiff's reading of the Second Circuit's decision to the contrary is incompatible with the opinion's plain text.

Plaintiff's attempted extension of her claims to cover trades outside of the tender offer is at odds even with her own prior arguments. Before both this Court and the Second Circuit, Plaintiff touted repeatedly and emphatically her allegations of the OFC tender offer as the critical and distinctive fact that materially differentiated the instant Complaint from the prior, failed complaints in *Feiner*. *See* Dkt. No. 49 (Plaintiff's Opposition to Xcelera Defendants' Mot. To Dismiss), at 3 ("the Tender Offer represents a material factual distinction between this case and *Feiner*"); Zetlin-Jones Decl. Ex. B (Brief of Plaintiff-Appellant) at 42 ("Here, the Complaint closes that missing pleading gap in *Feiner* by alleging the existence of the Tender Offer"). This Court and the Second Circuit apparently took Plaintiff at her word; each addressed the insider trading claim solely on the basis of the alleged OFC "tender offer." *See Steginsky*, 741 F.3d at 369-70; *Steginsky*, 2013 WL 1087635, at *5 ("Plaintiff also contends that the Viks and Olav traded on insider information when they made a tender offer...."). Having represented the Tender Offer as the principal, critical distinguishing fact in this case (successfully before the Second Circuit), Plaintiff should not now be permitted to turn around and argue that the tender offer serves merely as an atmospheric to resuscitate broader, unrelated class claims based on earlier, private shareholder transactions.

---

assessment of the Complaint's sufficiency. *See Steginsky*, 2013 WL 1087635, at *5 ("Plaintiff ... contends that the Viks and Olav traded on insider information *when they made a tender offer*....") (emphasis added).

To the contrary, the private, passive transactions preceding the tender offer were part and parcel of the manipulation claims whose deficiency as a matter of law was affirmed on appeal both in this case (*see Steginsky*, 741 F.3d at 369) and in the *Feiner* actions. *See Feiner*, 352 F. App'x at 464; *Steginsky* 2013 WL 1087635, at *4 n.2 ("both Judge Patterson and the Second Circuit have already held that Xcelera's passive offers to buy complaining customers' stock did not constitute a market manipulation.... [A]ll of the conduct up to the tender offer was perfectly legal..."). These other alleged insider trading violations are thus not merely beyond the scope of what the Second Circuit remanded, but squarely within the scope of the claims it has affirmatively dismissed.

*Second*, even if the Second Circuit's opinion somehow vacated dismissal of and/or remanded these additional insider trading claims, Plaintiff still has not adequately pled them. Plaintiff's insider trading theory is merely a species of fraud under Section 10(b) and Rule 10b-5, and, like all such claims, must be pled with the specificity required by Rule 9(b) and the PSLRA. *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (PSLRA applies to insider trading claims); *see also SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 247 (S.D.N.Y. 2013) (Fed. R. Civ. P. 9(b) applicable to insider trading claims); *In re Take-Two Interactive Sec. Lit.*, 551 F. Supp. 2d 247, 311 n.50 (S.D.N.Y. 2008).

As to non-tender offer transactions, the Complaint offers none of the particulars these heightened pleading rules require. Plaintiff provides nothing more than speculation that some Defendants purchased from some unidentified shareholders at some unspecified time. These generic accusations, standing alone, are defective with respect to each and every element of a

proper claim under Section 10(b) and Rule 10b-5.[10]  *See Salinger v. Projectavision, Inc.*, 972 F.

Supp. 222, 233 (S.D.N.Y. 1997) (dismissing securities fraud claim as inadequately pled where

Complaint failed to include "any factual allegations regarding the date of any sale, the seller for

any particular sale, the number of shares sold, or the price for those shares").

Plaintiff's apparent parry—that the scope or extent of these purported violations can be

learned through discovery—is no answer.  In fact, the PSLRA was enacted to eliminate precisely

this pleading tactic.  That statute serves to "prevent plaintiffs from filing securities fraud lawsuits

as a vehicle in order to conduct discovery in the hopes of finding a sustainable claim not alleged

in the complaint."  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 423

(S.D.N.Y. 2001) ("Manifest in the 1995 Reform Act is the mandate that courts assess the legal

sufficiency of plaintiffs' securities fraud allegations according to what plaintiffs know at the time

the complaint is filed, rather than what they wish to learn through discovery and recover from

defendants merely by reason of commencing an action charging fraud.").  If Ms. Steginsky

wished to claim that Xcelera stock trades other than the OFC tender offer ran afoul of applicable

insider trading prohibitions, she should have pled the circumstances of those trades in her

Complaint with the specificity the governing pleading standards require.  She may not discover

her way into a sustainable claim.

*Third*, even if these additional insider trading claims were remanded by the Second

Circuit (and they were not), and even if the elements of these claims were properly pled (and

---

[10]     For instance, Plaintiff's allegations provide Defendants no notice of, and this Court no ability to assess, at least: (i) who the selling shareholders were in these transactions; (ii) who, among the Xcelera Defendants, the purchaser was; (iii) when the transaction occurred; (iv) what information was disclosed (or omitted); (v) what non-public information was in Defendants' possession at the time; (vi) why that information was material; (vii) when Defendants came into possession of whatever material non-public information; (viii) whether and how these unnamed purchasers relied on any omission of material non-public information; and (ix) how that reliance inured to the seller's detriment.

they are not), Plaintiff lacks standing to bring them.  Whether under Section 20A's express cause

of action or Rule 10b-5's implied cause of action, standing to assert an insider trading claim

requires that a named plaintiff have traded "contemporaneously" with the insider defendant.  *See,*

*e.g.*, *Wilson v. Comtech Telecomm. Corp.*, 648 F.2d 88, 94 (2d Cir. 1981) (plaintiff pleading

insider trading under Rule 10b-5 must plead that she traded contemporaneously with the insider);

*Copland v. Grumet*, 88 F. Supp. 2d 326, 338 (D.N.J. 1999) (plaintiff pleading insider trading

under Section 20A must "plead that he or she bought stock on the same dates on which the

defendant's sales took place"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp.

2d 600, 650-51 (S.D. Tex. 2009) ("To have standing to sue for insider trading under an implied

cause of action under § 10(b) (or an express cause of action under § 20A), investors must show

that they traded contemporaneously with these Defendants.").  "[W]hen no class representative

has standing to bring an insider trading claim, the claim must be dismissed."  *In re Cypress*

*Semiconductors Sec. Litig.*, No. C-92-20048, 1994 WL 669856, at *2 (N.D. Cal. Nov. 29, 1994).

To establish her standing to bring her insider trading claims, then, Plaintiff was required

to allege that she traded "contemporaneously" with the subject insider trades.  She did not.

Indeed, the Complaint's failure to identify when the Xcelera Defendants' supposed non-tender

offer trades occurred renders assessment of her status as a contemporaneous trader impossible.

Because Plaintiff bears the burden of pleading contemporaneity with specificity, that failure is

grounds itself for dismissal.  *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993)

("[C]ontemporaneous trading must be pleaded with particularity under Rule 9(b)").

Moreover, the negligible information Plaintiff supplies in her Complaint confirms the

absence of contemporaneity here.  By her own sworn admission, Plaintiff transacted in Xcelera

stock only once during the relevant period: on April 18, 2011, when she sold her shares directly

into OFC's tender offer.  Compl. Ex. A.  That solitary trade plainly was not "contemporaneous"

with any of the Xcelera Defendants' hypothetical prior, private transactions, alleged to have

occurred months or even years prior.  *See Wilson*, 648 F.2d at 94-95 (trades one month apart are

not contemporaneous); *Sawant v. Ramsey*, 570 F. Supp. 2d 336, 347 (D. Conn. 2008) ("trades are

contemporaneous if they occur within a reasonable period of time, *usually limited to a few days,*

*of one another*") (internal quotation marks omitted) (emphasis added).[11]  She therefore has no

standing to assert insider trading claims on the basis of these prior,  private transactions in which

she took no part.[12]

---

[11]      Had she possessed any relevant information, the Plaintiff could have amended her
Complaint to particularize her allegations as to the Xcelera Defendants' alleged prior
transactions and/or to add named plaintiffs who traded contemporaneously with them.  Invited to
do so, she demurred.  *See supra* Section II.C.

[12]      Beyond the statutory standing impediments to the assertion of these claims, Plaintiff's
non-involvement in the Xcelera Defendants' supposed prior transactions also defeats her
constitutional standing under Article III, which requires allegations of an actual and concrete
injury-in-fact.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  That Plaintiff may
have alleged harm in connection with her trade into the OFC tender offer does not provide her
standing to pursue claims on the basis of unrelated prior transactions.  "[S]tanding is not
dispensed in gross" regardless of whether other causes of action are superficially similar or
related.  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Blum v. Yaretsky*, 457 U.S. 991,
999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess
by virtue of that injury the necessary stake in litigating conduct of another kind, although similar,
to which he has not been subject.").  Having failed to participate in whatever hypothetical prior
transactions she now seeks to inject into this litigation, Plaintiff cannot credibly claim to have
been harmed by their consummation in any way.  To the contrary, to the extent that other
shareholders sold their shares back to the Company itself (*see* Compl. ¶ 32), the result would be
a reduction in the number of shares outstanding and an increase in the Company's share value,
inuring to the *benefit* of non-selling shareholders like Ms. Steginsky.  *See Feiner*, 2007 WL
2615448, at *6.  Ms. Steginsky accordingly has no non-conjectural, personal stake in the
outcome of any litigation of alleged insider trading violations based on earlier offers or sales in
which she did not participate.  *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (standing
requirement assures that a plaintiff "has alleged such a personal stake in the outcome of the
controversy as to warrant his invocation of federal-court jurisdiction…").

In short, Plaintiff's purported insider trading claims based on sales other than the tender

offer (i) exceed the scope of the Second Circuit's remand instructions, (ii) are defectively pled,

and (iii) are not Ms. Steginsky's to bring.  They should be dismissed again.

## IV.   PLAINTIFF'S SECTION 20A CLAIM SHOULD BE DISMISSED IN ITS ENTIRETY.

Count III of Plaintiff's Complaint asserts a claim against OFC for violating Section

20A's insider trading prohibitions.  Plaintiff invokes this statute principally to avail herself of its

longer, five-year limitations period in hopes that she might sweep insider transactions dating

back to 2007 within the scope of her class claims.  *See* Zetlin-Jones Decl. Ex. A.  As described

above, that belief is mistaken; Plaintiff has pled no valid insider trading claims for any

transactions other than OFC's tender offer.  *See supra* Section III.  Plaintiff's Section 20A claim

is, moreover, defective even as to Plaintiff's tender offer transaction itself.

As an initial matter, Plaintiff has not asserted her section 20A claim against any of the

Xcelera Defendants.  *See* Compl. ¶¶ 66-71.  That claim is brought against OFC exclusively.

Because that count was not brought against the Xcelera Defendants, it was not briefed in the

Xcelera Defendants' initial motion to dismiss.  *See* Dkt. No. 44 at 3 n.3 (observing that Plaintiff

did not assert its Section 20A claims against the Xcelera Defendants); 26(f) Report at 9 (same).

In turn, because that alleged violation was never before this Court, it was not reviewed or

addressed in this Court's initial dismissal order.[13]  And because Plaintiff has declined to amend

her Complaint to add the Xcelera Defendants as a party to that claim, the Xcelera Defendants

should not now have to answer it.

---

[13]     The Second Circuit's observation that "the District Court did not address these claims" is certainly accurate, but omits this essential context.  *Steginsky*, 741 F.3d at 372.

- 22 -

Any such amendment would be futile in any event. Plaintiff traded directly under contract with an alleged insider (OFC) in a face-to-face transaction. Section 20A has no application in circumstances, like here, where contractual privity between the plaintiff and the insider exists.

Section 20A was enacted in 1988 to provide a private right of action for those who trade contemporaneously with an inside trader. 15 U.S.C. § 78t-1. Congress's primary impetus was a concern particular to securities transactions conducted over anonymous, open markets. In such circumstances, establishing contractual privity with the inside trader—once a required predicate to standing and/or reliance in insider trading claims—was impractical, if not impossible. Congress enacted 20A's contemporaneous standard "as a more feasible avenue by which to sue insiders." *See In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 662 (E.D. Va. 2000); *see also* H.R. 5133, *Explanation of Bloc of Amendments by the House Energy and Commerce Committee*, 100th Cong. (Aug. 9, 1988) (the purpose of Section 20A was to "reverse [insider trading] cases that have precluded [recovery] … where plaintiffs neither dealt with the defendants nor were influenced in their trading decision by the defendants' trading").

Thus, the primary purpose of Section 20A was "to give standing to *additional* victims of insider trading." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir. 1997) (emphasis added). Those who traded directly with an insider allegedly engaged in illicit insider trading already possessed an implied right of action under Rule 10b-5, and nothing in Section 20A or its legislative history suggests Congress's intent to supplant or disturb that remedy. As the district court in *Fujisawa* explained, "at the time § 20A was passed, parties … who had bought their stock in a face-to-face transaction already had a cause of action against the seller under Rule 10b-5. Therefore Congress had to mean something different when it passed Section

20A." *Fujisawa Pharm. Co. v. Kapoor*, 932 F. Supp. 208, 209 (N.D. Ill. 1996), *aff'd*, 115 F.3d at 1337.

Following this rationale, both courts that have squarely considered the question of whether a plaintiff who trades directly and in privity with an insider may bring a claim under Section 20A have concluded that he may not. *See Fujisawa*, 115 F.3d at 1337 (affirming dismissal of Section 20A claim because "the purpose of Section 20A was to extend the protections of the *existing* insider-trading prohibition [under Rule 10b-5] to persons *not in privity with the insider*, which [plaintiff] very much was"); *see also Combs v. Case*, Civil No. 05-00741, 2007 U.S. Dist. LEXIS 95604, at *32 (D. Haw. Sept. 20, 2007) ("persons in privity with the insider in an insider trading case lack[] standing to sue under § 20A"). That reasoning applies equally here. Any insider trading remedy for Plaintiff's trades in a face-to-face transaction with OFC lies under Rule 10b-5, not Section 20A.[14]

## V.    PLAINTIFF'S NON-FEDERAL CLAIM LACKS MERIT.

Plaintiff's fifth count, a common law claim for breach of fiduciary duty asserted against the Xcelera Defendants, can be dispensed with quickly. This Court already held when reviewing the operative Complaint last year that "plaintiff's nonfederal claims lack merit." *Steginsky*, 2013 WL 1087635, at *6. They still do.

---

[14]    Although the Second Circuit indicated that "[t]he availability of section 20A in a case such as this appears unsettled" (*Steginsky*, 741 F.3d at 372 n.7), it cited no case purporting to unsettle this established precedent. The only suggested contrary authority the Second Circuit identified is the Ninth Circuit's decision in *Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007). But *Johnson* addressed an insider trading claim based on insider sales of Chrysler common stock— precisely the type of anonymous, public market transactions to which Section 20A was directed. *See id.* at 779. The *Johnson* Court was not forced to, and did not, address the question of whether a plaintiff who negotiated her transaction directly with an insider has standing to bring a Section 20A claim, and therefore does not undercut or contradict the holdings of *Fujisawa* or *Combs* in any way.

Under Connecticut's "internal affairs" choice of law principle, the law of Xcelera's state of incorporation—the Cayman Islands—applies to Plaintiff's breach of fiduciary duty claim. *See NatTel, LLC v. SAC Capital Advisors LLC*, 370 F. App'x 132 (2d Cir. 2006). Under Cayman Islands law, corporate directors owe no fiduciary obligations to their shareholders except where there exists a "'special factual relationship,' a rare circumstance that requires 'direct and close contact' between the director and the shareholder." *Steginsky*, 2013 WL 1087635, at *5. As this Court observed previously, Plaintiff's allegations come nowhere near establishing this narrow exception:

> Plaintiff has not alleged that either the Viks, Olav, or OFC ever communicated directly with the plaintiff, other than through mass dispatches like letters to stockholders. Without an allegation of even the most incidental personal contact, plaintiff cannot establish any 'direct and close contact' between the defendants and shareholders.

*Steginsky*, 2013 WL 1087635, at *5. Plaintiff's breach of fiduciary duty allegations fare no better now than they did then, or than they did in substantially identical form when asserted by Plaintiff's counsel in various related *Feiner* actions. *See Feiner I*, 2007 WL 2615448, at *8 (the Complaint "pleads no facts to establish the special circumstances necessary under Cayman Islands law to create a fiduciary duty between the Xcelera directors and Plaintiff as a minority shareholder"); *Feiner II*, 2008 WL 5233605, at *7 (the Complaint "still fails to describe any contact between Plaintiffs and Defendants that could give rise to a fiduciary relationship"); *Feiner III*, 2010 WL 3184482, at *6 ("the breach of fiduciary duty cause of action was substantially identical throughout the many complaints filed in this case … this claim is barred from relitigation by the doctrine of claim preclusion"). The basis for exercising pendent jurisdiction over this claim having been reinstated, this Court should dismiss it with prejudice.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's insider trading claims under Section 10(b) and Rule 10b-5 thereunder should be dismissed with prejudice to the extent they are based on transactions other than the tender offer into which Plaintiff sold her shares.  Plaintiff's claims for violations of Section 20A and for common law breach of fiduciary duty should be dismissed in their entirety and with prejudice.

Dated: May 21, 2014

Respectfully submitted,

/s/ Peter J. Macdonald
Peter J. Macdonald, phv01529
David Zetlin-Jones, phv06627
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
peter.macdonald@wilmerhale.com
david.zetlin-jones@wilmerhale.com

Charles W. Pieterse, Esq., ct01577
**WHITMAN BREED ABBOTT**
   **& MORGAN LLC**
500 West Putnam Ave.
Greenwich, Connecticut 06830
Telephone: (203) 862-2332
Facsimile: (203) 869-1951
cpieterse@wbamct.com

*Attorneys for Defendants Xcelera, Inc., VBI Corp.,*
*Alexander M. Vik, and Gustav M. Vik*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21st, 2014, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic

filing system or by mail to the parties listed below who were unable to accept electronic filing as

indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's

CM/ECF System.

| | |
|---|---|
| Hans Eirik Olav<br>Dagaliveien 18 F<br>0776 Oslo<br>Norway | OFC Ltd.<br>c/o Mercury Management Limited<br>13 Curate Fenech Street<br>Birzebbugia, BBG2032<br>Malta |

By: /s/ Peter J. Macdonald
Peter J. Macdonald, phv01529