IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GLORIA STEGINSKY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>XCELERA INC., OFC LTD., VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M. VIK, and HANS EIRIK OLAV,<br><br>Defendants. | Case No. 3:12-cv-00188-SRU |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
XCELERA DEFENDANTS' RENEWED MOTION TO DISMISS THE COMPLAINT**

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham (*pro hac vice*)
Mark S. Hamill (*pro hac vice*)
Philip T. Taylor (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel. (212) 279-5050
jabraham@aftlaw.com
mhamill@aftlaw.com
ptaylor@aftlaw.com

**SCOTT + SCOTT
ATTORNEYS AT LAW, LLP**
Erin Green Comite (CT 24886)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel. (860) 537-5537
ecomite@scott-scott.com

**Plaintiff's Counsel**
[Additional counsel on signature page.]

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ......................................................................................................................1

ARGUMENT................................................................................................................................1

A. Plaintiff Has Properly Alleged Claims for Breach of Fiduciary Duty.................................1

B. Plaintiff Has Standing to Assert Section 20A(a) Claims Against Defendant OFC With Respect to Which Defendants Have Control Person Liability....................................3

C. The Second Circuit Has Already Found That Plaintiff Stated Tender Offer Insider Trading Claims; In Her Motion For Class Certification, Plaintiff Will Show That She Is A Proper Lead Plaintiff For Non-Tender Offer Insider Trading Claims ..................8

CONCLUSION..........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                             **Page(s)**

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972)..................................................................................................................6

*Belleville Shoe Mfg. Co.*,
    908 F.2d 1385 (7th Cir. 1990) ....................................................................................................5

*Bustamante v. Napolitano*,
    582 F.3d 403 (2d Cir. 2009)........................................................................................................4

*Ceres Partners v. GEL Assoc.*,
    918 F.2d 349 (2d Cir. 1990)........................................................................................................6

*Christensen v. Kiewit-Murdock Inv. Corp.*,
    815 F.2d 206 (2d Cir. 1987)........................................................................................................9

*Dobrova v. Holder*,
    607 F.3d 297 (2d Cir. 2010)........................................................................................................4

*Feiner Family Trust v. VBI Corp.*,
    No. 07 Civ. 1914 (RPP), 2007 U.S. Dist. LEXIS 66916 (S.D.N.Y. Sept. 11, 2007) ..........2

*Feiner Family Trust v. VBI Corp.*,
    No. 10 Civ. 3431 (RPP), 2010 U.S. Dist. LEXIS 81041 (S.D.N.Y. Aug. 9, 2010).............2

*Fujisawa Pharm. Co. v. Kapoor*,
    115 F.3d 1332 (7th Cir. 1997) ....................................................................................................5

*Goodwin v. Agassiz*,
    283 Mass. 358 (Mass. 1933)......................................................................................................2

*Herman & Maclean v. Huddleston*,
    459 U.S. 375 (1983)....................................................................................................................7

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................................5

*In re Data Access Sec. Litig.*,
    843 F.2d 1537 (3d Cir. 1988)......................................................................................................5

*In re Fed. Nat'l Mortgage Ass'n Sec., Deriv, and ERISA Litig.*,
    503 F. Supp. 2d 25 (D.D.C. 2007)..............................................................................................5

*In re MicroStrategy Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ..................................................................................5

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)................................................................................11

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994)...................................................................................................6

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
    501 U.S. 350 (1991)..............................................................................................................6

*Log on Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 435 (S.D.N.Y. 2001)................................................................................11

*Oliver v. Oliver*,
    118 Ga. 362, 45 S.E. 232 (Ga. 1903)...................................................................................2

*One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
    296 F.R.D. 241 (S.D.N.Y. 2013) .......................................................................................11

*Peskin v. Anderson*,
    [2001] 1 B.C.L.C. 372 ..........................................................................................................2

*Sallinger v. Projectavision, Inc.*,
    972 F. Supp. 222 (S.D.N.Y. 1997) ....................................................................................10

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    495 F.2d 228 (2d Cir. 1974).................................................................................................7

*Steginsky v. Xcelera, Inc.*,
    No. 12 Civ. 188 (SRU), 2013 U.S. Dist. LEXIS 35169 (D. Conn. Mar. 14, 2013) ........ 1-2

*Steginsky v. Xcelera, Inc.*,
    741 F.3d 365 (2d Cir. 2014)...................................................................................... *passim*

*Stewart v. Harris*,
    69 Kan. 498, 77 P. 277 (Kan. 1904) ....................................................................................2

*Strong v. Repide*,
    213 U.S. 419 (1909)......................................................................................................... 2-3

*U.S. v. Maynard*,
    743 F.3d 374 (2d Cir. 2014)............................................................................................4, 8

-iv-

*Wilson v. Comtech Telecommunications Corp.*,
    648 F.2d 88 (2d Cir. 1981)..........................................................................................7

**Statutes and Rules**

15 U.S.C. §78i(a) .............................................................................................................7

15 U.S.C. §78t-1(a) .........................................................................................................3

15 U.S.C. §78t-1(b)(4) ....................................................................................................7

15 U.S.C. §78u-4(b).......................................................................................................10

28 U.S.C. §1658(b) .........................................................................................................6

17 C.F.R. §240.10b5-1 ....................................................................................................6

Fed. R. Civ. P. 23 ............................................................................................................9

**Other Materials**

*Franklin A. Balotti*, Corporation Law (2000) ................................................................3

Plaintiff Gloria Steginsky ("Plaintiff"), by her undersigned attorneys, respectfully submits this memorandum of law in opposition to the Xcelera Defendants' Renewed Motion to Dismiss the Complaint ("Defs. Memo.").

## INTRODUCTION

Defendants' four-page "Preliminary Statement" and ten-page "Background" purport to "chronicle" events from the "*Feiner* actions" and this case from inception to date. *See* Defs. Memo. at 1-14. Defendants' self-serving "chronicle," however, is no match for the most recent decision in this matter from the Second Circuit in which Judge Walker provided a balanced background. *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 367-68 (2d Cir. 2014). In addition, the Second Circuit's holdings were clear (and do not require any polishing from Defendants): (i) Plaintiff's market manipulation claims as alleged are time-barred; (ii) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 claims may arise from violation of the duty to disclose or abstain, which is based on federal common law and applies to unregistered as well as registered securities; (iii) Plaintiff's Section 20A claims and nonfederal claims for breach of fiduciary duty were not ripe for review because they had not been addressed or decided in the Order of Dismissal; and (iv) Plaintiff failed to state a claim under Section 14(e) of the Exchange Act. *See Id.* at 368-72.

## ARGUMENT

### A. Plaintiff Has Properly Alleged Claims for Breach of Fiduciary Duty

Defendants assert that Plaintiff lacks standing to pursue a claim for breach of fiduciary duty because there were no direct communications between OFC and Defendants, on the one hand, and Plaintiff, on the other hand. *See* Defs. Memo. at 25 (quoting *Steginsky v. Xcelera, Inc.*,

No. 12 Civ. 188 (SRU), 2013 U.S. Dist. LEXIS 35169 at *5 (D. Conn. Mar. 14, 2013)). Defendants are in error.

*Peskin v. Anderson*, [2001] 1 B.C.L.C. 372, an English law decision, governs the availability of direct claims for breach of fiduciary duty which Cayman Islands law follows. *See*, *e.g.*, *Steginsky*, 2013 U.S. Dist. LEXIS 35169 at *16. Nonetheless, Defendants fail to cite *Peskin* in their brief, and instead rely on Judge Patterson's prior decisions in formulating their argument. *See* Defs. Memo. at 25 (citing *Feiner Family Trust v. VBI Corp*, No. 07 Civ. 1914 (RPP), 2007 U.S. Dist. LEXIS 66916 (S.D.N.Y. Sept. 11, 2007) ("*Feiner I*")). However, as Judge Patterson made clear, his entire analysis of the scope of Defendants' fiduciary duties was based upon an analysis of *Peskin*. *Feiner I* at *16. *See also Feiner Family Trust v. VBI Corp*., No. 10 Civ. 3431 (RPP), 2010 U.S. Dist. LEXIS 81041 at *816 (S.D.N.Y. Aug. 9, 2010) (citing *Feiner I*).

*Peskin* holds that if direct contact takes place, then a direct claim for breach of fiduciary duty would exist. Specifically "special circumstances" exist where there are "dealings, negotiations, communications ***or other contact directly between the directors and the [shareholders]*** . . . ." *Peskin*, 1 B.C.L.C. ¶59 (emphasis added).[1] This rule of decision in *Peskin* is functionally the same as the "special facts" doctrine utilized by a majority of U.S. common law jurisdictions prior to the passage of the Exchange Act. *See*, *e.g.*, *Strong v. Repide*, 213 U.S. 419, 430 (1909) (citing *Stewart v. Harris*, 69 Kan. 498, 77 P. 277 (Kan. 1904); *Oliver v. Oliver*, 118 Ga. 362, 45 S.E. 232 (Ga. 1903)). That rule provided that, although no fiduciary duty existed with respect to transactions occurring in the stock market, "where a director personally seeks a stockholder for the purpose of buying his shares without making disclosure of material facts within his peculiar knowledge and not within the reach of the stockholder, the transaction

---

[1] In *Peskin,* the plaintiffs lacked standing to pursue direct claims for breach of fiduciary duty because the defendants had not solicited any action on their part. *Peskin*, 1 B.C.L.C. ¶59.

-2-

will be closely scrutinized and relief may be granted in appropriate circumstances." *Goodwin v. Agassiz*, 283 Mass. 358, 363 (Mass. 1933) (citing cases).

Here, Plaintiff was solicited to sell her shares of Xcelera common stock through OFC's tender offer (the "Tender Offer") for Xcelera common stock. See Complaint ¶42. The Tender Offer, by its very nature, involved communication initiated by Defendants with Xcelera minority shareholders and a solicitation on the part of Defendants for those shareholders to sell their Xcelera stock. *Accord* Black's Law Dictionary at 1508 (Eighth Ed. 2004) (a tender offer involves "a direct solicitation of a corporation's stockholders to sell their shares . . . .") (quoting Franklin A. Balotti, *Corporation Law* §73 at 673 (2000)). Therefore, Defendants breached their fiduciary duties under Cayman Islands law in purchasing company stock without first disclosing the relevant material facts relating to its value.

It makes no difference that Defendants' accomplished their scheme using OFC as an intermediary. *Strong v. Repide*, *supra*, is on point. There, as here, the defendant employed a subterfuge in an effort to conceal his identity in purchasing the plaintiff's stock in a private transaction. Nonetheless, notwithstanding the fact that technically no direct contact had taken place, the Supreme Court held that the defendant was accountable for breaching his fiduciary duties in purchasing the plaintiff's stock without making proper disclosure of relevant material facts. 213 U.S. at 430, 433.

**B.**     **Plaintiff Has Standing to Assert Section 20A(a) Claims Against Defendant OFC With Respect to Which Defendants Have Control Person Liability**

Section 20A(a) provides an express private right of action against "person[s] [1] who *violate* any provision of this chapter or the rules or regulations promulgated thereunder [2] by purchasing or selling a security [3] while in possession of material, nonpublic information . . . [4] to any person who, contemporaneously with the purchase or sale of securities that is the subject

of such violation." 15 U.S.C. §78t-1(a) (2013) (emphasis added). *See also Steginsky v. Xcelera, Inc.*, 741 F.3d 365, 372 (2d Cir. 2014) (Section 20A(a) "provides an express private right of action for those who trade contemporaneously with an inside trader.")

Defendants seek dismissal of the Section 20A(a) claim asserted against defendant OFC Ltd. ("OFC") arguing that the contemporaneous trading element of a Section 20A claim (element [4]) is not satisfied where, as here, there exists contractual privity between Plaintiff as the seller and OFC as the purchaser of Xcelera stock. *See* Defs. Memo. at 23. Defendants are in error.[2]

Statutory interpretation "necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." *U.S. v. Maynard*, 743 F.3d 374, 380 (2d Cir. 2014) (quoting *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010); *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009)). In the absence of a statutory definition, Courts look to the ordinary or natural meaning of the words chosen by Congress. *Maynard, supra* (quoting cases). The ordinary and natural meaning is found in a dictionary definition of the term at issue. *Id*.

The term "contemporaneously" is the adverb form of "contemporaneous" which, in turn, means "existing or happening during the same time period."[3] Here, Plaintiff's sale of stock happened during the same period as OFC's purchase making it a contemporaneous transaction. Indeed, Defendants do not argue otherwise.

Instead, Defendants assert that contemporaneous transactions in which there is privity between a purchaser and seller are outside Congress' intent in adopting Section 20A which is limited to preserving a cause of action for those persons who traded contemporaneously, but not

---

[2]   As Defendants correctly observe, they are not named as primary violators of Section 20A, a claim which is limited to defendant OFC. Complaint ¶¶ 66-71. They are, however, named as control persons under Section 20(a) of the Exchange Act with respect to OFC's primary violation. Complaint ¶ 73.

[3]   http://www.merriam-webster.com/dictionary/contemporaneously

in privity.  However, no such statement exists in the legislative history evidencing an intent to exclude persons in privity from the right to sue under Section 20A.

To the contrary, it is well understood that the purpose of the contemporaneous trading requirement of Section 20A is to restrict the availability of the cause of action to those who potentially traded with the insider defendant.  *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000), which Defendants cite, recognizes that the purpose of the contemporaneous trading requirement is to identify a "purchaser [that] traded with the insider . . . ." *Id*. at 663.  Thus, "Section 20A is designed to force an insider to recompense the trader on the transaction's other end." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1204 (C.D. Cal. 2008) (citing *In re Fed. Nat'l Mortgage Ass'n Sec., Deriv, and ERISA Litig.*, 503 F. Supp. 2d 25, 46-48 (D.D.C. 2007)).

*Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir. 1997), upon which Defendants primarily rely, held that Section 20A(a)'s remedy did not extend to those in privity with the alleged insider trader.  *Fujisawa*'s rationale was that doing so would improperly extend the statute of limitations for Section 10(b) claims which at that time was one year from the date of discovery of the fraud to the five year statute of limitations provided for Section 20A(a) claims.

*Fujisawa*, however, ignores that at the time Section 20A was adopted by Congress in 1988 a uniform one year from the date of discovery statute of limitations for Section 10(b) claims did not yet exist.  Instead, almost all courts borrowed the statute of limitations from the forum state's most analogous private right of action.  *See generally In re Data Access Sec. Litig.*, 843 F.2d 1537, 1539-41 (3d Cir. 1988).  Indeed, at the time Section 20A was adopted, only the Third Circuit had adopted the uniform statute of limitations to which *Fujisawa* referred.  *Data*

*Access,* 843 F.2d at 1541.  The Seventh Circuit followed suit in 1990 (*Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1388 (7th Cir. 1990)), with the Supreme Court adopting the uniform one year from the date of discovery statute of limitations in 1991.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991).

Therefore, Congress had no way of knowing that the Supreme Court would, subsequent to the adoption of Section 20A in 1988, decide *Lampf* in 1991 thereby restricting the statute of limitations for Section 10(b) claims to one year from the date of discovery of the fraud.[4]  Instead, the statutory purpose of Section 20A(a) was to bolster the Exchange Act with additional measures "to provide greater deterrence, detection and punishment of violations of insider trading."  *See Ceres Partners v. GEL Assoc.*, 918 F.2d 349, 363 (2d Cir. 1990) (citing H. Rep. No. 100-910, 100th Cong., 2d Sess. 1988 ("House Report"), at 7, reprinted in 1988 U.S. Code Cong. & Admin. News 6043, at 6044).  "These measures were needed because of the difficulties of ferreting out evidence sufficient to prosecute insider trading cases."  *Id*. (citing House Report at 15, reprinted in 1988 U.S. Code Cong. & Admin. News at 6052).

Thus, for example, in order to assert a claim under Section 20A(a), a plaintiff need not allege or prove reliance.  *Cf. Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703-04 (2d Cir. 1994) (courts should follow the plain language of Section 20A, which does not state a requirement of reliance).[5]  In addition, Section 20A ensures that investors can bring insider trading claims regardless of whether the claims are brought under the classic or misappropriation theory.  *See* House Report at 26-27, reprinted in 1988 U.S. Code Cong. &

---

[4] *Lampf* was subsequently statutorily overruled by Congress which extended the statute of limitations to the earlier of two years from the date of discovery or five years from the date of the wrongdoing.  *See* 28 U.S.C. § 1658(b) (2014).

[5] In this case, reliance has been properly alleged.  *Steginsky*, 741 F.3d at 370.  In addition, under SEC Rule 10b5-1, 17 C.F.R. §240.10b5-1, it is no longer necessary to prove reliance for insider trading claims.  *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

Admin. News 6043, at 6063-64 (precluding investors from recovery "is inconsistent with the remedial purposes of the Exchange Act."). Finally, Section 20A adopted a uniform statute of limitations of "5 years after the date of the last transaction that is the subject of the violation" (15 U.S.C. §78t-1(b)(4)) which was considerably longer than most of the statutes of limitation being borrowed from most state laws at that time as well as the uniform statute of limitations adopted by the Third Circuit in *Data Access*.

*Fujisawa* also does not confront that contemporaneous traders have and, at the time Section 20A was adopted, had a right to maintain a claim under Section 10(b). *See, e.g.*, *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94 (2d Cir. 1981); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 237 (2d Cir. 1974). Nor does *Fujisawa* confront the well-settled principle that rights under the federal securities laws are cumulative and often duplicative. *See, e.g., Herman & Maclean v. Huddleston*, 459 U.S. 375, 385-86 (1983).

In addition, the problem *Fujisawa* flagged with extending the limitations period for insider trading claims in which the parties are in privity applies equally to contemporaneous traders. Indeed, *Fujisawa* fails to confront the oddity of a situation in which ordinary contemporaneous traders having more rights than contemporaneous traders in privity when the whole purpose of the contemporaneous trading requirement is to attempt to identify the person on the other side of the transaction.[6]

The Second Circuit in *Steginsky* called *Fujisawa* into question by inviting a comparison with the Ninth Circuit's decision in *Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007). *See*

---

[6]   Any argument Defendants may attempt to advance that Section 20A is limited to transactions on a securities exchange would also lack merit. Congress knew how to limit claims to trading taking place on an exchange. *See* 15 U.S.C. §78i(a). Section 10(b), the predicate violation in this case, is not so limited (*Steginsky*, 741 F.3d at 371), nor is there such a limitation in the statutory language of Section 20A(a).

*Steginsky*, 741 F.3d at 372 at n.7. *Aljian*, however, did not directly address the issue of whether a person in privity with an insider trader has standing to assert a Section 20A claim. Instead, *Alijian* held that a person lacking standing to sue for a Section 10(b) violation because those claims were not timely brought nonetheless had standing to assert those claims under Section 20A. 490 F.3d at 782-83.

The relevant point of contrast between *Aljian* and *Fujisawa* is that *Aljian* adhered to the plain statutory text of Section 20A while *Fujisawa* based its decision on divinations of Congressional intent (as opposed to actual statements in the legislative record) and the perceived absurdity of allowing a Section 20A claim to proceed where the underlying Section 10(b) claim was time-barred. As discussed above, adhering to the plain meaning of Section 20A is the correct way of interpreting the statute. *See*, *e.g.*, *Maynard, supra*. Therefore, consistent with the plain meaning of Section 20A, Plaintiff has standing to assert claims under that statute.

**C.     The Second Circuit Has Already Found That Plaintiff Stated Tender Offer Insider Trading Claims; In Her Motion For Class Certification, Plaintiff Will Show That She Is A Proper Lead Plaintiff For Non-Tender Offer Insider Trading Claims**

Defendants concede that the "Second Circuit's decision" allows Plaintiff to proceed "at least at this stage of the litigation" on her Section 10(b) and Rule 10b-5 claims based on the Tender Offer. *See* Defs. Memo. at 1 n. 1. Plaintiff, therefore, has Article III standing against all Defendants for those claims.

Defendants' argument that Plaintiff has no standing to bring claims outside of her individual claims or for other former Xcelera shareholders who sold their stock in the Tender Offer is in substance an argument that Plaintiff cannot represent a class which includes persons who sold Xcelera stock to the Defendants outside the narrow confines of the Tender Offer (the "non-tender offer sellers"). That argument, however, is premature and inappropriate in the

-8-

context of a motion to dismiss. The inquiry into whether Plaintiff's individual claim is sufficiently typical of class claims and shares common questions of law and fact with the claims of the proposed class is a question for class certification. *See* Fed. R. Civ. P. 23. In the April 2, 2014 Conference Memorandum and Order, the Court scheduled "class certification and related briefing" for 14 days *after* the Court's "ruling on any motion to dismiss." (Dkt. No. 94). It is well within the discretion of a district court to establish that sequence of events. *See*, *e.g.*, *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir. 1987). Defendants' preemptive strike against class certification is out of order.

In any event, Defendants' assertion that insider trading claims by the non-tender offer sellers are barred by the Second Circuit's prior decision in *Feiner* and this Court's prior decision, lacks merit. Instead, the Second Circuit's decision in this action only held that the Section 10(b) market manipulation claims asserted by Plaintiff were untimely, *i.e.*, the statute of limitation lapsed. *Steginsky*, 741 F.3d at 369.

However, neither the Second Circuit's decision in *Steginsky* nor this Court's prior decision addressed themselves to the viability of Section 10(b) insider trading claims of the non-tender offer sellers. Indeed, there would be no reason to do so since the issue had not been raised in any of the briefing. Instead, as one would expect, the motion practice focused on the availability of a federal securities law remedy for Plaintiff who had sold her Xcelera shares in the Tender Offer rather than the non-tender offer sellers in other transactions with Defendants.

Nonetheless, the same rationale and analysis of the law which supports the availability of an insider trading claim arising under Section 10(b) of the Exchange Act for Plaintiff supports the availability of the claim for the non-tender offer sellers. The federal securities laws do not recognize any distinction between purchases made based upon a solicitation in the context of a

tender offer, on the one hand, and an ordinary purchase, on the other hand. Defendants in both sets of transactions purchased Xcelera stock while in possession of inside information which they knew had not been publicly disclosed, facts sufficient to state a claim under Section 10(b). *Steginsky*, 741 F.3d at 369-70 and 372 n.7.

Defendants assert that both Rule 9(b) and the pleading requirements of Section 21D(b) of the Exchange Act [15 U.S.C. §78u-4(b)] contained in the Private Securities Litigation Reform Act ("PSLRA"), preclude the non-tender offer claims because "plaintiff provides nothing more than speculation that some Defendants purchased from some unidentified shareholders at some unspecified time." Defs. Memo. at 18. Here, however, the Complaint clearly alleges that Defendants engaged in a pattern of buying Xcelera stock from disaffected shareholders. Complaint ¶32. That allegation, in turn, is based upon an affidavit submitted by one of Defendants' senior employees in the *Fiener* litigation. Complaint Exhibit B.[7]

*Sallinger v. Projectavision, Inc.*, 972 F. Supp. 222, 233 (S.D.N.Y. 1997), upon which Defendants rely, is not on point. In *Sallinger*, the plaintiffs sought to rely on purported sales of stock as supporting a strong inference of scienter in a case based upon the making of materially false or misleading statements. As the portion of *Sallinger* quoted by Defendants demonstrate, the plaintiff failed in that pleading effort because no specific sales were alleged. Here, in contrast, Plaintiff has specifically alleged her sales of Xcelera stock, has alleged both the existence of other similar transactions outside the context of the Tender Offer and has alleged a

---

[7] In the *Feiner* action, one of the named plaintiffs was alleged to have sold stock to Defendants. This Court may take judicial notice of his sale, the details of which were made in a certification, a copy of which is attached as Exhibit A to the Declaration of Philip T. Taylor.

claim which, as the Second Circuit has already held, properly alleged the necessary strong inference of scienter.  *Steginsky*, 741 F.3d at 372 n.7.[8]

## CONCLUSION

Therefore, for all the reasons stated above, Plaintiff respectfully requests that the Court deny the Xcelera Defendants' Renewed Motion to Dismiss the Complaint.

Dated: June 20, 2014

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

　　　　/s/ Jeffrey S. Abraham　　　　
Jeffrey S. Abraham (*pro hac vice*)
Philip T. Taylor (*pro hac vice*)
Mark S. Hamill (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655
jabraham@aftlaw.com
ptaylor@aftlaw.com
mhamill@aftlaw.com

---

[8]　　*Log on Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435 (S.D.N.Y. 2001), upon which Defendants rely, is not to the contrary.  In *Log On*, the plaintiff "failed to provide adequate specifics regarding the circumstances surrounding [the] [d]efendants' possession of non-public information: *e.g.,* among other things, what non-public information [the] [p]laintiff gave [the] [d]efendants, when the information was given, etc." *Id*. at 347.  Here, Defendants possessed inside information by virtue of their positions as directors, and controlling stockholders of Xcelera and did not disclose any of that information to Plaintiff and other selling shareholders. *Steginsky*, 741 F.3d at 719-20.  The other cases cited by Defendants are similarly inapposite to the case at Bar.  *SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241 (S.D.N.Y. 2013) (the complaint failed to adequately allege suspicious activity with respect to subject trades);  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) (the plaintiffs failed to allege a strong inference that the defendants knew of the undisclosed information).

Deborah Clark Weintraub (*pro hac vice*)
**SCOTT+SCOTT,
 ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 233-6444
Facsimile: (212) 233-6334
dweintraub@scott-scott.com

Erin Green Comite (CT 24886)
**SCOTT+SCOTT,
 ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537- 4432
ecomite@scott-scott.com

**Plaintiff's Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2014, I caused PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE XCELERA DEFENDANTS' RENEWED MOTION TO DISMISS THE COMPLAINT to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing documents or paper to be mailed via United States Postal Service to the non-CM/ECF participants indicated on the manual Notice List.

I hereby certify that I also caused the foregoing documents to be served via United States Postal service upon the following persons:

OFC Ltd.
c/o Mercury Management Limited
13 Curate Fenech Street
Birzebbugia, BBG2032
Malta

Hans Eirik Olav
Dagaliveien 18 F
0776 Oslo
Norway

I certify under the laws of the United States of America that the foregoing is true and correct. Executed on June 20, 2014.

_____
Philip T. Taylor