**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

GLORIA STEGINSKY, Individually and On Behalf of All Others Similarly Situated,

        Plaintiff,

vs.

XCELERA INC., OFC LTD., VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M. VIK, and HANS EIRIK OLAV,

        Defendants.

Case No. 3:12-cv-00188-SRU

**THE XCELERA DEFENDANTS' REPLY IN SUPPORT OF
THEIR RENEWED MOTION TO DISMISS THE COMPLAINT**

# **TABLE OF CONTENTS**

I.     Plaintiff's Insider Trading Claims Based on Transactions Other Than OFC's Tender Offer Should Be Dismissed. ........................................................................................1

II.    Plaintiff Lacks Standing to Assert An Insider Trading Claim Under Section 20A. .......4

III.   Plaintiff's Non-Federal Claims Are Meritless ................................................................6

CONCLUSION ..........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................................... 2

*Christensen v. Kiewit-Murdock Investment Corp.*,
  815 F.2d 206 (2d Cir. 1987) .................................................................................................. 2

*Combs v. Case*,
  Civ. No. 05-00741, 2007 U.S. Dist. LEXIS 95604 (D. Haw. Sept. 20, 2007) ................. 4, 6

*Feiner Family Trust v. Xcelera Inc.*,
  No. 10-cv-3431, 2010 WL 3184482 (S.D.N.Y. Aug. 9, 2010) ........................................ 3, 7

*Fujisawa Pharmaceutical Co. v. Kapoor*,
  115 F.3d 1332 (7th Cir. 1997) ........................................................................................... 4, 6

*Fujisawa Pharmaceutical Co. v. Kapoor*,
  932 F. Supp. 208 (N.D. Ill. 1996), *aff'd*, 115 F.3d 1332 (7th Cir. 1997) ............................ 4

*In re Countrywide Financial Corp. Securities Litigation*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................................. 5

*In re Federal National Mortgage Ass'n Securities, Derivative & ERISA Litigation*,
  503 F. Supp. 2d 25 (D. D.C. 2007) ....................................................................................... 5

*In re Wayport, Inc. Litigation*,
  76 A.3d 296, 320 (Del. Ch. 2013) ......................................................................................... 8

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ............................................................................................................... 3

*O'Connor & Associates v. Dean Witter Reynolds, Inc.*,
  559 F. Supp. 800 (S.D.N.Y. 1983) ........................................................................................ 5

*Peskin v. Anderson*,
  [2001] 1 B.C.L.C. 372 ................................................................................................. 7, 8, 9

*Podany v. Robertson Stephens, Inc.*,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004) ................................................................................... 2

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ............................................................................................................... 5

*Shapiro v. Merrill, Lynch Pierce, Fenner & Smith, Inc.*,
  495 F.2d 228 (2d Cir. 1974) .................................................................................................. 5

*Steginsky v. Xcelera, Inc.*,
  No. 3:12-cv-188, 2013 WL 1087635 (D. Conn. Mar. 4, 2013) ......................................... 6, 7, 9

*Strong v. Reptide*,
  213 U.S. 419 (1909) .............................................................................................................. 7, 8

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*,
  484 U.S. 365 (1988) .................................................................................................................. 5

*Wilson v. Comtech Telecommunications Corp.*,
  648 F.2d 88 (2d Cir. 1981) ....................................................................................................... 5

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) ..................................................................................................... 3

**STATUTES & CODES**

15 U.S.C. § 78j(b) .............................................................................................................................1

15 U.S.C. § 78t-1 ..............................................................................................................................1

28 U.S.C. § 1658(b) .........................................................................................................................3

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 .....................................................................................................................1

H.R. REP. 100-910 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6043 ................................................5

Defendants Xcelera, Inc., VBI Corporation, Alexander M. Vik and Gustav M. Vik (together, the "Xcelera Defendants") submit this Reply Memorandum in further support of their renewed motion to dismiss. Plaintiff's Opposition (Dkt. No. 108) ("Opp.") fails meaningfully to address the pleading deficiencies identified in the Xcelera Defendants' Opening Brief (Dkt. No. 104) ("Mem."). As described below, Plaintiff (1) has failed to plead and lacks standing to assert an insider trading violation under Section 10(b) (15 U.S.C. § 78j(b)) of and Rule 10b-5 (17 C.F.R. § 240.10b-5) under the Securities Exchange Act of 1934 ("Exchange Act") as to transactions other than the tender offer into which she sold her shares; (2) lacks standing to assert any claims under Exchange Act Section 20A (15 U.S.C. § 78t-1); and (3) failed to plead the existence of a fiduciary duty under Cayman Islands law sufficient to sustain her non-federal cause of action.

## I. PLAINTIFF'S INSIDER TRADING CLAIMS BASED ON TRANSACTIONS OTHER THAN OFC'S TENDER OFFER SHOULD BE DISMISSED.

As explained in the Xcelera Defendants' opening brief, Plaintiff has not asserted a viable insider trading violation based on transactions preceding the OFC tender offer because, among other things, (1) those claims were part and parcel of the manipulation claims whose dismissal by this Court was affirmed by the Second Circuit; (2) Plaintiff has not pled any of the requisite elements of an insider trading claim as to these trades with sufficient specificity; and (3) Plaintiff lacks constitutional and statutory standing to pursue claims based on prior, private transactions in which she did not participate. *See* Mem. at 16-21. Plaintiff does not seriously dispute her failure to plead adequately any insider trading claims based on transactions other than OFC's tender offer. Instead, she asks this Court to defer dismissal, claiming that the Xcelera Defendants' arguments are "in substance" arguments as to Ms. Steginsky's typicality and adequacy more appropriately resolved at the class certification stage. Opp. at 8-9.

That Ms. Steginsky would also be an inadequate and atypical class representative to pursue these claims does not inoculate her from the consequences of her failure to plead them. It is well within this Court's discretion to dismiss inadequately pled claims before certification, as evidenced by the very case that Plaintiff relies on for the contrary proposition. *See Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 214 (2d Cir. 1987) ("In light of the breadth of the class appellants sought to certify … we hold that the court did not abuse its discretion in reserving decision on the motion to certify pending the outcome of the motions to dismiss"); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 174-75 (S.D.N.Y. 2009) (rejecting argument that "standing is better assessed at the class certification stage" and dismissing claims under 12(b)(6) for securities fraud based on transactions in which plaintiffs did not participate).

The only substantive defense Plaintiff mounts as to her non-tender offer claims is that her Complaint contains a conclusory allegation "that Defendants engaged in a pattern of buying Xcelera stock from disaffected shareholders." Opp. at 10 (citing Compl. ¶ 32). This vague and generalized allegation as to Defendants' supposed past practices is plainly insufficient under the PSLRA and Rule 9(b), which require that "each separate instance of fraud be pled with particularity." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 157-58 (S.D.N.Y. 2004) (rejecting attempt to premise liability on a supposed and unspecified pattern of past misconduct: "otherwise one successfully-alleged misstatement of opinion against a given defendant would permit plaintiffs to allege claims for all similar opinions uttered by that defendant, based on allegations that would otherwise be insufficient as to those particular opinions themselves.").

Furthermore, notwithstanding Plaintiff's assertion that Defendants engaged in a "pattern" of past, private purchases of Xcelera stock from minority shareholders, Plaintiff identifies only one such transaction—Ron Krissel's sale of his Xcelera shares to the Company in February 2007.  *See* Opp. Ex. A.  Plaintiff's invocation of this transaction only underscores the infirmities of her claims as to trades outside the context of the OFC tender offer.

*First*, Plaintiff did not identify this transaction as the basis for her insider trading violation in her Complaint, and may not amend her pleading through an opposition brief.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).  *Second*, Mr. Krissel has already sued the Xcelera Defendants numerous times on the basis of this sale; those claims have been dismissed with prejudice and Mr. Krissel has been barred from re-litigating them under principles of *res judicata*.  *See Feiner Family Trust v. Xcelera Inc.*, No. 10-cv-3431, 2010 WL 3184482, at *2 (S.D.N.Y. Aug. 9, 2010).  *Third*, even if doctrines of estoppel did not preclude Mr. Krissel from seeking relief on the basis of this transaction, the applicable statute of limitations surely would.  Mr. Krissel sold his shares directly to Xcelera in February 2007 with full knowledge that its financial statements were not publicly available.  He thus possessed all the essential facts necessary to understand the basis of his claim as soon as the transaction consummated.  The statute of limitations would have lapsed two years from that date—almost three years before Plaintiff filed the instant action.  *See* 28 U.S.C. § 1658(b) (imposing a statute of limitations of two years from "discovery of the facts constituting the violation"); *cf. Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).[1]   *Finally*, Ms. Steginsky took no part in Mr.

---

[1] Indeed, Plaintiff's current reliance on Mr. Krissel's 2007 sale contradicts her counsel's express representation that sellers whose transactions pre-date 2009 are specifically *excluded* from its class definition and not part of the claims she intends to pursue.  *See* Dkt. No. 105-1 (letter from plaintiff's counsel confirming that Plaintiff intends to bring claims for any person selling on or after February 7, 2009).

Krissel's transaction and did not sell her Xcelera shares until four years later.  She was not a "contemporaneous" seller and was not damaged by Mr. Krissel's sale in any way.  Accordingly, she lacks both statutory and Constitutional standing to assert a claim on Mr. Krissel's behalf.  *See* Mem. at 19-21 & n.12.

Plaintiff has neither validly alleged nor has standing to bring insider trading claims based on sales other than the tender offer.  There is no reason to delay their dismissal.

## II. PLAINTIFF LACKS STANDING TO ASSERT AN INSIDER TRADING CLAIM UNDER SECTION 20A.

Plaintiff's ability to assert an insider trading claim under Section 20A rests on a very basic question:  does a seller who traded in privity with an insider have standing to assert a claim as a "contemporaneous" trader under Section 20A?  Every court to have considered this question has answered it in the negative.  *See Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir. 1997); *Combs v. Case*, Civ. No. 05-00741, 2007 U.S. Dist. LEXIS 95604, at *32 (D. Haw. Sept. 20, 2007).  The rationale behind these cases is straightforward:  when Congress created an express right of action for "contemporaneous" traders, it was concerned with the particular context of open market, anonymous trading.  Parties who traded privately in face-to-face transactions with insiders already had a cause of action for insider trading under Rule 10b-5.  "Therefore, Congress had to mean something different when it passed Section 20A."  *Fujisawa Pharm. Co. v. Kapoor*, 932 F. Supp. 208, 209 (N.D. Ill. 1996), *aff'd*, 115 F.3d 1332 (7th Cir. 1997).  Specifically, the impetus for Section 20A's passage was "to give standing to *additional* victims of insider trading") (emphasis added).  *Fujisawa*, 115 F.3d at 1337.  To hold otherwise would be to read Congress' action as mere redundancy, designed to create two virtually identical causes of action for the same violation.  *See id.*

Plaintiff cites no authority to the contrary.[2]  Instead, she argues that these cases are wrongly decided because reading "contemporaneous" traders to exclude *actual* parties to a trade would be contrary to the plain and ordinary meaning of "contemporaneous."  Opp. at 4-5.  But statutory interpretation "is a holistic endeavor."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).  Courts look to both the language of the statute "and the broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Plaintiff's argument ignores that Congress did not use the term "contemporaneous" in a vacuum.  Rather, it borrowed the term from case law and expressly left to the Courts the role of shaping its parameters.  H.R. REP. 100-910, at 27 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6043, 6064 ("House Report") ("The bill does not define the term 'contemporaneous,' which has developed through case law.").  And the case law from which it derived the "contemporaneous" standard, in turn, addressed the limited issue of when those *other than* private parties to an insider transaction might have standing to pursue insider trading claims.  *See Wilson v. Comtech Telecomm. Corp.*, 648 F.2d 88 (2d Cir. 1981); *Shapiro v. Merrill, Lynch Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974); *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800 (S.D.N.Y. 1983) (cited in House Report at n.22) (each addressing when a plaintiff *other than* those in privity with an insider may bring an insider trading claim).  In enacting an express cause of action under Section 20A, Congress assured that a new class of plaintiffs—those trading at or near the same time as an insider trader on an anonymous open market—could

---

[2]  Indeed, every case Plaintiff cites involves precisely the sort of anonymous, public market transactions that Section 20A intended to regulate.  *See e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1204 (C.D. Cal. 2008) (trades of publicly-traded instruments over exchanges); *In re Fed. Nat'l Mortgage Ass'n Sec., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 25, 46-48 (D. D.C. 2007) (same).

assert claims for insider trading.  It did not enlarge or replace existing protections already enjoyed by those who trade directly under contract with an insider.

In short, both the statute itself and its legislative history confirm that "the purpose of Section 20A was to extend the protections of the existing insider-trading prohibition [under Rule 10b-5] to persons *not in privity with the insider*." *Fujisawa*, 115 F.3d at 1337 (emphasis added).  Accordingly, "persons in privity with an insider in an insider trading case lack[] standing to sue under § 20A." *Combs*, 2007 U.S. Dist. LEXIS 95604, at *32.  Because Ms. Steginsky is not within the class of persons that Section 20A was designed to protect, she has no standing to assert a claim under it.

In any event, the availability of a Section 20A remedy would have no practical impact on this case—whether Plaintiff has standing to assert a Section 20A violation against OFC is wholly academic.  The only conceivable benefit a Section 20A claim would offer Plaintiff is that statute's longer, five-year limitations period, which might allow Plaintiff to attempt to sweep alleged insider transactions preceding the tender offer within the scope of her class definition.  However, Plaintiff has asserted her Section 20A claim against OFC only.  Compl. ¶¶ 66-71.  And Plaintiff has conceded that her claims against OFC are limited to those related solely to the 2010 tender offer.  *See Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188, 2013 WL 1087635, at *4 n.4 (D. Conn. Mar. 4, 2013).  Indeed, Plaintiff has acknowledged that OFC is not even alleged to have existed before the tender offer.  *See id.*  Accordingly, Plaintiff's Section 20A claim against OFC is entirely redundant.  It adds nothing of any substance to her existing claims against any other Defendant for insider trading under Rule 10b-5.

### III.   PLAINTIFF'S NON-FEDERAL CLAIMS ARE MERITLESS

Plaintiff's argument in support of her non-federal claims fails even to acknowledge, much less address, this Court's prior dismissal order.  Plaintiff contends that its breach of

- 6 -

fiduciary claim is valid under the controlling Cayman Islands authority of *Peskin v. Anderson*, [2001] 1 B.C.L.C. 372, and faults the Xcelera Defendants for "fail[ing] to cite to *Peskin* … and instead rely[ing] on Judge Patterson's prior decisions [in the *Feiner* actions]." Opp. at 2.

The problem with Plaintiff's argument is that the Xcelera Defendants neither ignored *Peskin* nor relied exclusively on the *Feiner* actions in formulating their arguments for dismissal. The Xcelera Defendants relied upon the ruling of *this* Court, which observed the "obvious weakness of plaintiff's nonfederal claims" and held squarely that those claims "lack merit." Mem. at 24-25; *Steginsky*, 2013 WL 1087635, at *5. This Court rendered that judgment after full briefing and argument on the application of *Peskin* to the exact same allegations in the exact same Complaint. *See Steginsky*, 2013 WL 1087635, at *5. Plaintiff's Opposition offers no reason why applying the same law to the same facts should compel a different result now.

The only "new" wrinkle Plaintiff advances to support her non-federal claim is a citation to a more than hundred year-old case applying U.S. common law before the enactment of the federal securities laws. Opp. at 2 (citing *Strong v. Reptide*, 213 U.S. 419 (1909)). Relying extensively on *Strong v. Reptide*, 213 U.S. 419 (1909), Plaintiff claims that Cayman Islands law is "functionally the same as the 'special facts' doctrine utilized by a majority of U.S. common law jurisdictions prior to the passage of the Exchange Act." Opp. at 2-3.

Plaintiff provides no authority for her urged analogy, which is strained on its face. The "special facts" doctrine applicable in certain U.S. jurisdictions looks to the nature of the facts within an insider's peculiar knowledge. The relevant question under that doctrine is whether the

specific facts allegedly known but withheld by the insider are of sufficient magnitude to mandate their disclosure.  *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 320 (Del. Ch. 2013).[3]

By contrast, the "special factual relationship" envisioned by *Peskin* under Cayman Islands law depends upon the nature of the relationship between the shareholder and the director. The relevant question under *Peskin* is not merely whether an insider has access to "special" company-specific facts, but whether that insider has engaged with a shareholder in a manner capable of inducing a shareholder to repose her trust or confidence in him.  *See Peskin*, 1 B.C.L.C. 372 ¶ [34].  "Special factual relationships" capable of giving rise to a fiduciary obligation owed from a corporate director and its shareholders under Cayman Islands law are those in which directors voluntarily assume a duty of loyalty and honesty on a shareholder's behalf.  *See id.*  When English or Cayman Islands courts speak of these "special circumstances," they refer to relationships "such as agency," or where the director "undertakes . . . responsibility to act on behalf of, or for the benefit of [the shareholder]."  *Id*.  For any such "special factual relationship" to exist, it must "involve duties of trust, confidence and loyalty."  *Id*.  At a bare

---

[3] Notably, even if Cayman Islands common law endorsed the "special facts" doctrine—which it does not—Plaintiff's allegations would still be deficient.  "Special facts" capable of triggering that doctrine's invocation do not encompass any or all material information within an insider's general knowledge of the company.  Rather, "[t]o satisfy the 'special facts' requirement, a plaintiff generally must point to knowledge of a substantial transaction, such as an offer for the whole company."  *In re Wayport, Inc. Litig.*, 76 A.3 at 320 (collecting cases). Plaintiff has not identified any specific or "special" developments or transactions that the Xcelera Defendants failed to disclose to any minority shareholders.  Her allegations complain merely that the Xcelera Defendants omitted to disclose Xcelera's overall financial condition. That is not a "special fact" that would give rise to a duty to disclose under the doctrine.  *See id.*; *cf. Strong*, 213 U.S. at 431 (accepting that "the ordinary relations between directors and shareholders in a business corporation are not of such a fiduciary nature as to make it the duty of a director to disclose to a shareholder the general knowledge which he may possess regarding the value of the shares of the company before he purchases any from a shareholder…").

minimum, to establish a fiduciary relationship with a director, a shareholder must allege "direct and close contact" with that director. *Id.* at ¶ [33].

Plaintiff's Complaint comes nowhere near alleging such "special circumstances." Indeed, all Plaintiff has alleged is that she received materials from OFC on which Hans Olav's email address appeared. Compl. ¶ 43. Nowhere in her Complaint or her Opposition does Plaintiff offer any valid factual basis or plausible legal theory as to why her receipt of these materials would have induced Ms. Steginsky to repose any trust or confidence in Alexander or Gustav Vik. Her bare receipt of mail is simply not the "direct or close contact" envisioned under Cayman Islands law that is capable of establishing a "special factual relationship" under which a fiduciary obligation can be imposed. *See Steginsky*, 2013 WL 1087635, at *5 ("Without an allegation of even the most incidental personal contact, plaintiff cannot establish any 'direct and close contact' between the defendants and shareholders").

**CONCLUSION**

For the reasons stated herein and in the Xcelera Defendants' opening brief, Plaintiff's insider trading claims under Section 10(b) and Rule 10b-5 thereunder should be dismissed with prejudice to the extent they are based on transactions other than the tender offer into which Plaintiff sold her shares. Plaintiff's claims for violations of Section 20A and for common law breach of fiduciary duty should be dismissed in their entirety and with prejudice.

Dated: July 11, 2014

        Respectfully submitted,

        /s/ Peter J. Macdonald
        Peter J. Macdonald, phv01529
        J. David Zetlin-Jones, phv06627
        **WILMER CUTLER PICKERING
          HALE AND DORR LLP**
        7 World Trade Center
        250 Greenwich Street
        New York, New York 10007
        Tel: (212) 230-8800
        Fax: (212) 230-8888
        peter.macdonald@wilmerhale.com
        david.zetlin-jones@wilmerhale.com

        Charles W. Pieterse, Esq., ct01577
        **WHITMAN BREEN ABBOTT
          & MORGAN LLC**
        500 West Putnam Ave.
        Greenwich, Connecticut 06830
        Telephone: (203) 862-2332
        Facsimile: (203) 869-1951
        cpieterse@wbamct.com

        *Attorneys for Defendants Xcelera, Inc., VBI Corp., Alexander M. Vik, and Gustav M. Vik*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2014, a copy of the foregoing was served by first class mail to the following:

| | |
|---|---|
| Jeffrey S. Abraham<br>Abraham Fruchter and Twersky, LLP<br>One Penn Plaza, Suite 2805<br>New York, NY 10119<br><br>*Counsel for Plaintiff, Gloria Steginsky* | OFC Ltd.<br>c/o Mercury Management Limited<br>13 Curate Fenech Street<br>Birzebbugia, BBG2032<br>Malta |
| Hans Eirik Olav<br>Dagaliveien 18 F<br>0776 Oslo<br>Norway | |

                                                /s/  David Zetlin-Jones
                                                David Zetlin-Jones