**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

_____

|  |  |  |
|---|---|---|
| GLORIA STEGINSKY, Individually and On Behalf of All Others Similarly Situated, | : | Case No. 3:12-cv-00188-SRU |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| XCELERA INC., OFC LTD., VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M. VIK, and HANS EIRIK OLAV, | : | Dated: October 29, 2014 |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

_____

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham (*pro hac vice*)
Mark S. Hamill (*pro hac vice*)
Philip T. Taylor (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel. (212) 279-5050
jabraham@aftlaw.com
mhamill@aftlaw.com
ptaylor@aftlaw.com

**SCOTT + SCOTT
ATTORNEYS AT LAW, LLP**
Erin Green Comite (CT 24886)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel. (860) 537-5537
ecomite@scott-scott.com

**Plaintiff's Counsel**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION ...............................................................................................................1

SUMMARY OF FACTS .....................................................................................................2

    Xcelera .........................................................................................................................2

    The Viks .......................................................................................................................3

    OFC ..............................................................................................................................4

    Hans Eirik Olav............................................................................................................4

    The Viks Refuse to Disclose Any Information
    Concerning the Company's Operations ........................................................................4

    Xcelera Stock is Delisted .............................................................................................5

    The Viks Buy Xcelera Stock at Bargain Basement Prices ..........................................6

    The Tender Offer .........................................................................................................6

ARGUMENT .......................................................................................................................8

A.     THE PROPOSED CLASS SATISFIES RULE 23(a).................................................9

    1.     The Class is So Numerous That Joinder of All Members is Impracticable............9

    2.     Questions of Law or Fact Are Common to the Class ...........................................10

    3.     Plaintiff's Claims Are Typical of the Class .........................................................12

    4.     Plaintiff Will Fairly and Adequately Protect the Class' Interests.........................12

B.     THE PROPOSED CLASS SATISFIES RULE 23(b)(3)..................................................14

    1.     Common Questions of Law or Fact Predominate..................................................14

    2.     A Class Action is Superior to Other Available Methods of Adjudication.............16

C.      PLAINTIFF RESPECTFULLY SUBMITS THE CLASS SHOULD INCLUDE
        SALES TO DEFENDANTS OUTSIDE OF THE TENDER OFFER ..............................18

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Affiliated Ute Citizens of Utah v. U.S.*,
    406 U.S. 128 (1972)......................................................................................15

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)............................................................................... 13-15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    __ U.S. __, 133 S. Ct. 1184 (2013)..................................................8, 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..........................................................................12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)......................................................................................15

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ...............................................................17

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ......................................................................17

*Cent. States Southeast & Southwest Areas Health & Welfare Fund v.
Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)..........................................................................9

*Consolidated Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).............................................................................9

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    296 F.R.D. 261 (S.D.N.Y. 2014) ...............................................8-11, 15-16

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ....................................................................14

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968) ........................................................................9

*Garfinkel v. Memory Metals, Inc.*,
    695 F. Supp. 1397 (D. Conn. 1988)............................................................17

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)...........................................................................8

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)...............................................................................9

*Haddock v. Nationwide Financial Services, Inc.*,
    293 F.R.D. 272 (D. Conn. 2013).....................................................................8, 14

*Haddock v. Nationwide Financial Services, Inc.*,
    262 F.R.D. 97 (D. Conn. 2009)................................................................... 9, 11-12

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ....................................................................11

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .......................................................................8

*In re Host Am. Corp. Sec. Litig.*,
    No. 05 Civ. 1250 (VLB), 2007 U.S. Dist. LEXIS 77418 (D. Conn. Oct. 18, 2007) ...15, 17

*In re Livent, Inc. Noteholders Sec. Litig.*,
    210 F.R.D. 512 (S.D.N.Y. 2002) ....................................................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................10

*In re PE Corp. Secs. Litig.*,
    228 F.R.D. 102 (D. Conn. 2005)..................................................................8-10, 17

*In re Sumitomo Copper Litig.*,
    194 F.R.D. 480 (S.D.N.Y. 2000) ....................................................................10

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..........................................................................13

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................15

*Kelleher v. ADVO, Inc.*,
    No. 06 Civ. 1422 (AVC), 2009 U.S. Dist. LEXIS 68914 (D. Conn. Mar. 27, 2009).. 16-17

*Mahon v. Chicago Title Ins. Co.*,
    296 F.R.D. 63 (D. Conn. 2013)........................................................................8

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)........................................................................10, 12

*McGuire v. Dendreon Corp.*,
    267 F.R.D. 690 (W.D. Wash. 2010) .............................................................18

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002).......................................................................15

*Nationwide Life Ins. Co. v. Haddock*,
    460 Fed. Appx. 26 (2d Cir. 2012)..................................................................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)................................................................. 18-19

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011)........12

*Public Emples. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................10

*Richards v. Fleetboston Fin. Corp.*,
    238 F.R.D. 345 (D. Conn. 2006).....................................................................8

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
    659 F.3d 234 (2d Cir. 2011)...........................................................................8

*Shelter Realty Corp. v. Allied Maintenance Corp.*,
    574 F.2d 656 (2d Cir. 1978)...........................................................................8

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014)............................................................. 13, 15-16

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)....................................................................................15

*Sykes v. Mel Harris & Assocs. LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) ..................................................................13

*Tiro v. Public House Investments, LLC*,
    288 F.R.D. 272 (S.D.N.Y. 2012) ..................................................................14

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) ..................................................................14

*U.S. v. O'Hagan*,
    521 U.S. 642, 117 S. Ct. 2199, 138 L. Ed. 2d 724 (1997)................................15

*U.S. v. Rajaratnam,*
    719 F.3d 139 (2d Cir. 2013)...................................................................................................15

## Statutes and Rules

15 U.S.C. §78j.............................................................................................................................1

15 U.S.C. §78t(a) .......................................................................................................................1

15 U.S.C. §78t-1 .........................................................................................................................1

Fed. R. Civ. P. 23(a) ..................................................................................................................9

Fed. R. Civ. P. 23(b)(3)......................................................................................................14, 16

Fed. R. Civ. P. 54(b)................................................................................................................20

Lead Plaintiff Gloria Steginsky ("Plaintiff"), through her undersigned attorneys, respectfully submits this memorandum of law in support of her motion for class certification pursuant to Fed. R. Civ. P. 23.

## INTRODUCTION

Plaintiff seeks to certify a class action on behalf of shareholders of Xcelera Inc. ("Xcelera" or the "Company")[1] who sold Xcelera stock into a tender offer (the "Tender Offer") commenced on or about December 17, 2010 (the "Class").[2]  This action is particularly well suited for class action treatment as the predominate question is whether Defendants are liable for insider trading in violation of Sections 10(b), 20(a) and 20A of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j, 78t(a) and 78t-1, and for breach of fiduciary duty under Cayman Islands law.  Proof of liability will be common to all class members making proceeding as a class action far superior to the impracticable alternative of proceeding by way of individual actions.

Plaintiff has met the numerosity, commonality, typicality and adequacy requirements of Fed. R. Civ. P. ("Rule") 23(a): (1) the proposed Class is at the very least composed of 50 or more Xcelera shareholders who sold in the Tender Offer (the "Class Members") and more likely includes hundreds of Class Members; (2) there exists common issues of law or facts among all

---

[1]     Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which the Defendants have or had a controlling interest. *See* Amended Class Action Complaint ("Amended Complaint") ¶16.

[2]     The limited scope of the Class is based on the Court's September 4, 2014 ruling that Plaintiff did not have standing to assert individual or class action claims with respect to sales of Xcelera stock to Defendants outside of the Tender Offer.  *See* Sept. 4, 2014 Transcript ("Sept. 4th Tr.") (ECF No. 125) at 12:7-10 and 19-22.  However, as discussed in further detail in Section C, *infra.*, Plaintiff respectfully submits the Class should include all Xcelera shareholders who sold Xcelera stock to Defendants on or after February 6, 2007 (which is five years prior to commencement of  this action), including any sales outside of the Tender Offer.

Class Members, including whether Defendants failed to comply with their duty to disclose material facts prior to purchasing Xcelera stock in the Tender Offer; (3) Plaintiff's and the Class Members' claims all arise from Defendants' purchase of Xcelera stock in the Tender Offer making Plaintiff's claims typical of the Class'; and (4) Plaintiff is an adequate representative as she has no conflicts with the Class and has hired competent and experienced counsel to represent her own interests as well as those of the Class.

Plaintiff has also met the predominance and superiority requirements of Rule 23(b)(3). The question of Defendants' liability for insider trading will predominate over all other issues. Moreover, the complex nature of an insider trading case involving foreign defendants and expert damages calculations and the resources each Class Member would have to devote to bring cases individually make preceding as a class action here the superior course.  Accordingly, Plaintiff respectfully submits that all the requirements for certifying the Class have been met and that the Court should: (i) grant Plaintiff's motion for class certification; and (ii) appoint Plaintiff as the class representative.

## SUMMARY OF FACTS

### Xcelera

Xcelera is a holding company with operating subsidiaries providing internet related services.  The most prominent of these subsidiaries is Mirror Image, which for the past four years has been ranked as a top Content Delivery Network provider by *Internet Retailer*.  ¶35.[3]

Protegrity Corporation ("Protegrity"), another company owned by Xcelera, is a leader in enterprise data security management that provides solutions to protect sensitive information. Protegrity has a rapidly growing customer base, which includes several States, Amtrak and 25

---

[3]     Cites to "¶__" refer to paragraphs in the Amended Complaint.

percent of the 20 largest U.S. retailers.  Protegrity has invented core encryption technologies and owns key patents in its field of expertise, which detect intrusions into databases and provide for data encryption and has commenced multiple lawsuits in Connecticut federal court in order to protect its proprietary technologies.  ¶36.

Xcelera also has material interests in several software companies.  ¶40.  These interests extend to companies which have been sold for a substantial amount of cash and other valuable consideration.  ¶41.  At the same time, the Company may possess a significant amount of cash. According to Xcelera's last skeletal filing with the SEC on August 2, 2005, the Company had $39 million in cash and no debt, with approximately 126 million shares outstanding, amounting to $0.31 per share in cash alone.  ¶34.  The amount of cash which Xcelera currently has as well as its level of profitability is unknown because of the lack of any publicly available information concerning the Company's financial condition or results of operation but is believed to have materially improved since August 2, 2005.  ¶¶36-37, 39 and 41.

On September 4, 2014, the Court ruled that merits discovery could commence in the action, pursuant to which Plaintiff intends to seek discovery concerning Xcelera's operations and financial condition beyond the limited information produced in this action with respect to certain Xcelera subsidiaries.

### The Viks

Alexander Vik is Xcelera's Chairman and Chief Executive Officer.  ¶12.  Gustav Vik is a director, Executive Vice President, Treasurer and Secretary of Xcelera.  ¶13.  VBI Corporation, which owns 61.2% of Xcelera, is owned by Erik Vik, the father of Alexander and Gustav Vik. ¶11.  The Viks (beneficially) collectively own at least 76.3% of Xcelera outstanding stock and exercise control of all aspects of the Company's affairs.  ¶14.

**OFC**

Defendant OFC is a limited liability company incorporated under the laws of Malta and was created as a vehicle for completing the Tender Offer.  OFC filed its Memorandum and Articles of Association with the Malta Financial Services Authority on or about July 1, 2010, just a few months before the Tender Offer materials were sent to Xcelera's minority shareholders in December 2010.  ¶¶10 and 42.

**Hans Eirik Olav**

Defendant Olav is an Xcelera director and long-time business associate of defendant Alexander Vik.  ¶15.  Olav is listed with the Tender Offer's transfer agent, American Stock Transfer & Trust Company, LLC ("AST"), as the contact person with respect to the Tender Offer.  ¶43; *see also* AST website (Declaration of Philip T. Taylor ("Taylor Decl.")  Ex. A).  In addition to being the contact person Olav was, in fact, a director of OFC and signed the Depositary Agreement entered into with AST on December 12, 2010.  *See* Taylor Decl. Exs. B and C.

**The Viks Refuse to Disclose Any Information**
**Concerning the Company's Operations**

In 2004, the Viks began refusing to make the filings with the SEC required by Section 13(a) of the Exchange Act.  ¶24.  The last SEC filing made by Xcelera occurred on August 2, 2005 and consisted of a skeletal Form 20-F disclosing in summary fashion that the Company's annual reports for the 2004 and 2005 fiscal years would not be filed on time as result of comments received from the SEC concerning its 2003 annual report.  Those 2004 and 2005 reports were, in fact, never filed with the SEC.  ¶30.

On November 3, 2006, the SEC revoked the registration of Xcelera securities based upon the Company's willful and continued failure to make the public filings required by the Exchange Act. ¶28.  Defendants made no effort to prevent de-registration and, instead, through their attorney stated that they did not oppose any such action by the SEC.  *Id.*  Since de-registration, Defendants have not disclosed any information concerning Xcelera's financial condition or results of operations.  ¶4.  Instead, in early 2005, the Viks caused Michael J. Kugler, an employee who had previously been engaged in investment relations, to stop providing any information concerning the Company or its operations to investors.  ¶32.

### Xcelera Stock is Delisted

Xcelera originally listed its common stock on the American Stock Exchange ("AMEX"). ¶23.  On September 22, 2004, Xcelera issued a press release stating that as a result of the Company being delinquent with its SEC reporting requirements and that it had received a notice from AMEX that the Company was subject to being delisted.  ¶25.  In reaction to this news, Xcelera's stock declined in price by more than 25% from its previous trading price of $1.03 per share to close at $0.76 per share.  ¶26.  *see also* Xcelera stock price history (ECF No. 45-1) at 30. On November 6, 2004, AMEX delisted Xcelera's common stock because of the Company's non-compliance with its SEC filing requirements.  ¶25.  In reaction to this announcement, Xcelera's stock plummeted by more than 60% from its prior closing price of $0.69 per share to close the next trading day of November 8, 2004 to $0.25 per share on heavy volume.  ¶27; *see also* Xcelera stock price history (ECF No. 45-1) at 31.  After November 3, 2006, Xcelera's stock stopped trading in the U.S.  ¶28.

**The Viks Buy Xcelera Stock at Bargain Basement Prices**

Xcelera's public shareholders in the United States were holding a security which did not trade and for which there were no SEC filings or comparable disclosures of the Company's financial operations or condition being made.  Defendants seized this opportunity to buy shares of Xcelera stock owned by public stockholders at a discounted price.  ¶¶29 and 31.  The Viks were well placed to engage in this conduct because of their vast wealth which amounts to several hundred million dollars.  *See* Alexander M. Vik declaration filed in *Sebastian Holdings, Inc. v. Kugler*, No. 3:08 CV 1131 RNC (D. Conn.) (Taylor Decl. Ex. D), ¶¶8-13.

Xcelera shareholders contacting the Company seeking information were told by Kugler that they "can either contact their accountants about the proprietary [sic] of writing off their investment as a tax loss, or they may, if they so wish, sell their shares back to Xcelera at the price at which Xcelera last publicly traded."  ¶32; Declaration of Michael J. Kugler filed in *Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP) (S.D.N.Y.) (Taylor Decl. E), ¶4.  This tactic enabled the Viks to buy Xcelera stock for $0.25 per share from many investors.  The pace of those sales, however, was not fast enough to satisfy the Viks.  ¶33.

**The Tender Offer**

On or about December 17, 2010, Defendants commenced the Tender Offer at $0.25 per share.  ¶42.  The Tender Offer was made by OFC and listed defendant Olav as the contact person. ¶43.  Defendants Olav, in fact, served as an OFC director and a representative for the Tender Offer.  Taylor Decl. Exs. B and C.   The Tender Offer materials do not contain any information concerning Xcelera's financial condition, results of operation or future business prospects.  *See* Taylor Decl. Ex. F.  The Tender Offer was for 10,000,000 shares of Xcelera

common stock and although initially scheduled to expire on January 31, 2011, the expiration date was extended until March 31, 2011.  ¶42; Taylor Decl. Ex. G.

In an effort to aid in her decision as to whether to sell her shares into the Tender Offer, Plaintiff set out to gather any information concerning the value of Xcelera stock.  On January 14, 2011, Plaintiff sent an email to defendant Olav asking what the ramifications would be if she did not tender her stock and inquiring as to the purpose of the Tender Offer, among other information.  Taylor Decl. Ex. H (GS-019).  Plaintiff requested that she be provided answers before tendering her shares.  *Id.*  On January 24, 2011, Plaintiff emailed Edwin Busch of Mirror Image because she had failed to receive a response from defendant Olav.  Plaintiff requested information concerning the Tender Offer and also stated "[i]t would help in making my decision to know if [Xcelera] still own[s] a substantial part of mirror-image."  Taylor Decl. Ex. I (GS-018).  Plaintiff also made other attempts to contact Xcelera affiliates including its counsel Steven Greenberg and director Per Johanson.  *See* Plaintiff's Deposition Transcript ("Depo Tr.") at 117:22-119:5 (Taylor Decl. Ex. J).  Plaintiff did not receive any responses to her inquires and was unable to discover any useful information concerning the Tender Offer or the value of her shares.  Depo. Tr. 71:19-20 ("I believe I should have been informed of the true value of the stock.")

On February 8, 2011, Plaintiff tendered 96,010 shares of Xcelera stock.  Taylor Decl. Ex. K (GS-010).  On February 11, 2011, Plaintiff tendered her remaining 4,000 shares of Xcelera stock.  *Id.*  On April 18, 2011, Plaintiff received notice from her broker that her 100,010 shares of Xcelera common stock had been purchased by OFC in the Tender Offer.  ¶46; Taylor Decl. Ex. L.  The Tender Offer ultimately resulted in the purchase of 3,181,401 shares of Xcelera common stock from dozens or hundreds of Class Members.  *See* Taylor Decl. Ex. G.

-7-

## ARGUMENT

In ruling on a motion for class certification, the court "accepts the factual allegations of the Complaint as true." *Richards v. Fleetboston Fin. Corp.*, 238 F.R.D. 345, 348 (D. Conn. 2006) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 616 n.15 (2d Cir. 1978)).  The court should also consider any "affidavits, documents, or testimony" presented in support of class certification.  *Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (citation omitted).  Although the court must make a determination that each of the Rule 23 requirements have been met, the certification process should not turn into protracted mini-trials and courts should not consider aspects of the merits unrelated to a Rule 23 requirement.  *See Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 71 (D. Conn. 2013) (citation omitted); *Haddock v. Nationwide Financial Services, Inc.*, 293 F.R.D. 272, 281 (D. Conn. 2013) ("*Haddock V*") ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1194-95 (2013)).

"Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999).  Accordingly, "[t]he Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and . . . to maximize the benefits to the public provided by class actions." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *In re PE Corp. Secs. Litig.*, 228 F.R.D. 102, 106 (D. Conn. 2005) ("In light of the importance of the class action device in securities fraud suits, these [Rule 23] factors are to be construed liberally.") (quoting *Gary Plastic Packaging Corp. v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990)).  "'[I]f there is to be

an error made, let it be in favor and not against the maintenance of the class action, for it is

always subject to modification should later developments during the course of the trial so

require.'"  *Dodona*, 296 F.R.D. at 266 (quoting *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir.

1968) (quoting *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968))); *In re PE Corp.*, 228 F.R.D. at

107 (citing cases).

## A.      THE PROPOSED CLASS SATISFIES RULE 23(a)

Rule 23(a) requires that a proposed class action satisfies the following four requirements

set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defense of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, the Class meets each of these requirements.

### 1.      The Class is So Numerous That Joinder of All Members is Impracticable

To meet the requirements of Rule 23(a)(1), "the class must be so large that joinder of all

members would be impracticable."  *Dodona*, 296 F.R.D. at 266 (citation omitted).  Impracticable

does not mean impossible, but only that the difficulty of joining all class members makes use of

the class action appropriate.  *See Cent. States Southeast & Southwest Areas Health & Welfare

Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).  "Generally

having at least 40 class members is considered sufficient to satisfy the numerosity requirement."

*Haddock v. Nationwide Financial Services, Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009) ("*Haddock

IV*") (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)), *vacated

on different grounds sub nom.*, *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26 (2d Cir.

2012).  Precise quantification of the class members is not necessary because the court may

"make common sense assumptions to support a finding of numerosity" and plaintiffs are entitled

to "rely on reasonable inferences drawn from the available facts in order to estimate the size of

the class."  *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 509 (S.D.N.Y. 1996)

(quotes and citations omitted); *In Re PE Corp*, 228 F.R.D. at 107 ("plaintiffs need not prove the

exact number of proposed class members as long as they can reasonably estimate the size of the

class.").

 Here, the records produced by AST, the Tender Offer transfer agent, reflect a total of

3,181,401 shares of Xcelera stock having been tendered.  *See* Taylor Decl. Ex. G.  Of that total,

698,083 shares of stock were tendered by over 45 different individuals or investment vehicles.

*Id.*  Those investors alone are enough to satisfy the presumption of numerosity in the Second

Circuit.  In addition, 2,483,318 shares of Xcelera stock held for investors in street name were

tendered through Cede & Co. in approximately 140 separate tender transactions.  *Id.*  Although

the number of investors represented by those shares has not yet been determined, a reasonable

inference can be drawn that many more investors (*i.e.*, 140 additional investors or more)

participated in the Tender Offer for a total of at least 185 class members.  Accordingly, the

numerosity element of Rule 23(a) has been met.

  **2.**  **Questions of Law or Fact Are Common to the Class**

 Rule 23(a)(2) requires plaintiffs to demonstrate that common issues of law or fact affect

all class members.  That showing is a "low hurdle."  *Dodona*, 296 F.R.D. at 267 (citing *In re

Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000)).  A single common question of

law or fact may suffice to satisfy the commonality requirement.  *See Marisol A. by Forbes v.

Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Public Emples. Ret. Sys. of Miss. v. Merrill Lynch &

*Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011).  "Commonality is established so long as the plaintiffs

can identify some unifying thread among the members' claims."  *Haddock IV*, 262 F.R.D. at 116

(quotes and citation omitted).

The Amended Complaint identifies common issues of law or fact, all of which are

amenable to class-wide proof, including:

> (a)  whether Defendants violated Section 10(b) of the Exchange Act and Rule
>      10b-5 promulgated thereunder by the SEC;
>
> (b)  whether OFC purchased shares of Common Stock while in possession of
>      material information concerning Xcelera in violation of Section 20A of the
>      Exchange Act;
>
> (c)  whether Xcelera, VBI, the Viks, and Olav are control persons of Xcelera
>      and OFC within the meaning of Section 20(a) of the Exchange Act;
>
> (d)  whether Defendants have breached their fiduciary duties to the sellers; and
>
> (e)  whether members of the Class have sustained damages and the proper
>      measures of damages.

*See* Amended Complaint ¶ 20.

In a securities fraud class action, the "critical issues" for establishing liability are

common to all members of the Class.  *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 281 (S.D.N.Y.

2008).  The commonality requirement in this case has been met because the Class Members have

all been injured by Defendants' breach of their duty to disclose material information or abstain

from trading.  *Accord Dodona*, 296 F.R.D. at 267 ("Where plaintiffs allege that class members

have been injured by similar material misrepresentations and omissions, the Commonality

Requirement is satisfied.").

### 3.    Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3) is satisfied when each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. *See Haddock IV*, 262 F.R.D. at 117 (citing *Marisol A.*, 126 F.3d at 367). The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). *See Marisol A.*, 126 F.3d at 376. Like the commonality test, "the typicality requirement is not demanding." *Ret. Sys. of Miss.*, 277 F.R.D. at 107 (citation omitted). "The focus of the typicality requirement is not on the plaintiff['s] behavior, but rather on defendant[s'] actions." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) (quotes and citation omitted). Typicality does not require that the situation of the named representative and the class members be identical. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citation omitted).

Here, Defendants failed to disclose material information concerning Xcelera's financial results and operations while purchasing stock in the Tender Offer. Each Class Member was, therefore, harmed in the same way as Plaintiff and the same evidence will be used to prove their claims. Accordingly, the typicality requirement has been met.

### 4.    Plaintiff Will Fairly and Adequately Protect the Class' Interests

Rule 23(a)(4) requires that the class representative will "fairly and adequately protect the interests of the class." To meet this requirement: (i) the plaintiff must not have any interests antagonistic to those of the class; and (ii) the plaintiff's counsel must be "qualified experienced, and able to conduct the proposed litigation." *Haddock IV*, 262 F.R.D. at 117 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

-12-

Plaintiff has demonstrated her commitment to representing the Class by being knowledgeable about the nature of her claims and her duties as a class representative as well as being actively involved in the litigation as demonstrated by her recent deposition.  *See*, *e.g.*, Depo. Tr. at 75:24-77-17 and 97 ("A.  I think that my duties and obligations are to represent all of the people who have taken the kinds of losses that I have, I feel, been lied to.").  Plaintiff also "possess[es] the same interest and suffer[ed] the same injury as the Class Members."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quotes and citation omitted).  Plaintiff has and will continue to adequately represent the Class, and suffers from no conflicts.  Any conflict that could prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite "must be fundamental, and speculative conflict should be disregarded at the class certification stage."  *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001)).

Plaintiff has also retained counsel experienced in securities fraud and class action litigation.  Plaintiff's attorneys have vigorously pursued these claims to date, as evidenced by the filings and records of this case, including the successful appeal of the Xcelera Defendants' motion to dismiss the complaint.  *See Steginsky v. Xcelera Inc.*, 741 F.3d 365 (2d Cir. 2014).  Additionally, Lead Counsel, Abraham, Fruchter & Twersky, LLP ("AF&T"), has adequately represented classes in many other complex class actions, including securities fraud class actions throughout the country.  *See* Taylor Decl. Ex. M.  Accordingly, the adequacy requirement has been met.

**B.      THE PROPOSED CLASS SATISFIES RULE 23(b)(3)**

The party seeking class certification, in addition to satisfying the requirements of Rule

23(a), must also satisfy one of the categories set forth in Rule 23(b).  Here, certification is sought

pursuant to Rule 23(b)(3), which requires that:

> the court finds that [1] the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and [2] that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

**1.      Common Questions of Law or Fact Predominate**

Under Rule 23(b)(3), the proposed Class should be "sufficiently cohesive to warrant

adjudication by representation."  *Amchem*, 521 U.S. at 623.  At the class certification stage, Rule

23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff

seeking class certification is not required to prove the answers to such questions.  *Accord Amgen*,

133 S. Ct. at 1191 ("the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case;

rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and

efficiently.'").

"When determining whether common issues predominate, courts focus on the liability

issue . . . and if the liability issue is common to the class, common questions predominate over

individual ones."  *Haddock V*, 293 F.R.D. at 282 (quoting *Tiro v. Public House Investments,*

*LLC*, 288 F.R.D. 272, 280 (S.D.N.Y. 2012); *Tsereteli v. Residential Asset Securitization Trust*

*2006-A8*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012).  Predominance does not require a plaintiff to

show a complete absence of individual issues.  *See Dura-Bilt Corp. v. Chase Manhattan Corp.*,

89 F.R.D. 87, 95 (S.D.N.Y. 1981).  Rather, the requirement is satisfied if the "resolution of some

of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these[] particular issues are more substantial than the issues subject only to individualized proof." *Dodona*, 296 F.R.D. at 269 (quoting *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) (citing *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002))).  The predominance requirement is "readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625; *In re Host Am. Corp. Sec. Litig.*, No. 05 Civ. 1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *12-13 (D. Conn. Oct. 18, 2007) (same).

Plaintiff's and the Class' insider trading claims pursuant to the Exchange Act and Cayman Islands law are based upon Defendants' breach of their duty to disclose material information to Xcelera shareholder prior to purchasing their stock in the Tender Offer.  "Under the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *Steginsky*, 741 F.3d at 370 (quoting *U.S. v. O'Hagan*, 521 U.S. 642, 651-52, 117 S. Ct. 2199, 138 L. Ed. 2d 724 (1997)).  "To establish an insider trading claim, it is not necessary to show that corporate insiders *used* the nonpublic information; it is sufficient to prove that they traded their corporation's securities 'while knowingly in possession of the material nonpublic information.'" *Id.* (quoting *U.S. v. Rajaratnam*, 719 F.3d 139, 159 (2d Cir. 2013)).  Moreover, the Supreme Court has "dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988); citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008)); *see also Affiliated Ute*

-15-

*Citizens of Utah v. U.S.*, 406 U.S. 128, 154 (1972) (in cases involving "primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

The Second Circuit has determined in this case that Defendants were corporate insiders who owed a duty to disclose material information to Plaintiff and the Class prior to trading with them. *See Steginsky*, 741 F.3d at 370-71. Thus, the critical issue for establishing liability in this action will be whether Defendants purchased shares in the Tender Offer while in possession of material non-public information concerning Xcelera, and that question will predominate over all other questions. Accordingly, the predominance requirement has been met. *See*, *e.g.*, *Kelleher v. ADVO, Inc.*, No. 06 Civ. 1422 (AVC), 2009 U.S. Dist. LEXIS 68914, *20-21 (D. Conn. Mar. 27, 2009) (predominance requirement met where claims were based upon material omissions).

### 2.    A Class Action is Superior to Other Available Methods of Adjudication

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods to individual actions. *Dodona*, 296 F.R.D. at 271. Rule 23(b)(3) identifies several factors to consider in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

In this case, a balancing of these factors demonstrates that a class action is the superior method of litigating insider trading claims against Defendants.

"The second circuit has repeatedly affirmed that class actions are particularly appropriate for resolving securities fraud actions such as the instant case." *Kelleher*, 2009 U.S. Dist. LEXIS 68914, at *17; *In re PE Corp.*, 228 F.R.D. at 111 ("Given the complexities of a securities litigation case, the interest of individual stockholders in controlling the prosecution of separate actions is low."). The costs of pursuing individual actions when compared with the potential of any individual recovery here make a class action superior. *See Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1405 (D. Conn. 1988); *In re Host Am.*, 2007 U.S. Dist. LEXIS 77418, at *15 ("the possibility of small recoveries, typically associated with securities fraud cases, means that recovery is more likely through a class action").

Plaintiff is unaware of any other pending litigation against defendants based upon their insider trading in the Tender Offer. Moreover, this Court has presided over this action for over two years and is already familiar with the facts of the case having issued two separate decisions on Defendants' motions to dismiss. Re-litigating these same issues elsewhere would result in a "significant waste of judicial resources." *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 164 (S.D.N.Y. 2012).

A class action "has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004). Whatever complexities may arise in administering this proposed class action will be insignificant compared to the complexities of litigating numerous individual lawsuits. Accordingly, proceeding as a class action here is superior to all other methods of

adjudication.  *Accord McGuire v. Dendreon Corp.*, 267 F.R.D. 690 (W.D. Wash. 2010) (certifying subclass with respect to insider trading claims).

## C.     PLAINTIFF RESPECTFULLY SUBMITS THE CLASS SHOULD INCLUDE SALES TO DEFENDANTS OUTSIDE OF THE TENDER OFFER

The issue of "class standing" was recently dealt with by the Second Circuit in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).  There, the plaintiff sought to assert claims on behalf of other purchasers of mortgage backed securities certificates (the "Certificates") sold in different tranches as well as separate offerings, which all arose out of the same shelf registration.  *Id.* at 149.  The district court dismissed the plaintiff's claims and permitted the plaintiff to amend its complaint to represent only those persons that purchased exactly the same Certificates purchased by plaintiff, but not those persons who purchased in different tranches or offerings.  *Id.* at 154-55.

The Second Circuit reversed and remanded holding that irrespective of the plaintiff's Article III standing to pursue the claims of others, "class standing" is adequately alleged where: (1) the plaintiff alleges actual injury as a result of the defendant's illegal conduct; and (2) that conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.  *Id.* at 162.  Accordingly, the Second Circuit found that the plaintiff had standing to assert claims on behalf of persons who purchased in the same offering, but in different tranches, because the same defendants and same set of concerns were implicated by those claims.  *Id.* at 164-65.  On remand, the district court was to decide whether the Rule 23 factors could be met with respect to all persons the plaintiff sought to represent.  *Id.* at 165.

Here, on September 4, 2014, in the context of a motion to dismiss, the Court ruled that Plaintiff did not have standing to assert claims on behalf of any other person who sold Xcelera stock to Defendants outside of the Tender Offer.  *See* Sept. 4th Tr. (ECF No. 125) at 12:7-10 and 19-22.  Plaintiff respectfully submits that ruling involved both a procedural and substantive error of law.  Procedurally, the issue of Plaintiff's standing to pursue claims of other persons is traditionally and appropriately resolved in the context of a class certification motion.  *See*, *e.g.*, *NECA-IBEW*, 693 F.3d at 165 (remanding claims for determination on class certification); *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 415 (S.D.N.Y. 2013) (deferring the question of whether the plaintiffs had class standing to represent shareholders who purchased in different offerings until the class certification stage).

Substantively, Plaintiff's claims relating to her sale of stock in the Tender Offer allows her, in the context of class certification, to assert claims on behalf of a class of similarly situated investors who sold Xcelera stock to Defendants outside of the Tender Offer because those claims implicate the same set of concerns related to Defendants' failure to disclose material non-public information or abstain from trading in the context of their other purchases of Xcelera stock. *Accord NECA-IBEW*, 693 F.3d at 162.

*NECA-IBEW* is on point because Plaintiff would like to represent the claims of others which involve the same defendants and the same set of concerns, *i.e.*, whether Defendants breached their duty to disclose material facts prior to purchasing Xcelera stock.  *See* Amended Complaint ¶16.  As in *NECA-IBEW*, Plaintiff has adequately alleged her class standing to pursue claims on behalf of Xcelera shareholders who sold outside of the Tender Offer.  Thus, although Plaintiff has limited the scope of the class to only those persons who sold in the Tender Offer based on the Court's ruling, Plaintiff respectfully submits the Class should additionally include

-19-

any person who sold Xcelera stock to Defendants on or after February 6, 2007 and respectfully requests, in the alternative to the limited Class based on the Court's September 4, 2011 Order,[4] that the Court certify the broader Class of all persons who sold Xcelera stock to any of the Defendants on or after February 6, 2007.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) certify a class consisting of all shareholders of Xcelera who sold Xcelera stock into a Tender Offer commenced on or about December 17, 2010, or in the alternative, a class consisting of all persons who sold Xcelera Stock to any of the Defendants on or after February 6, 2007; (ii) apppoint Plaintiff as the class representative; and (iii) appoint Lead Counsel Abraham, Fruchter & Twersky, LLP as class counsel.

Dated: October 29, 2014

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

/s/  Philip T. Taylor
Jeffrey S. Abraham, *pro hac vice*
Mark S. Hamill, *pro hac vice*
Philip T. Taylor, *pro hac vice*
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655
jabraham@aftlaw.com
ptaylor@aftlaw.com

---

[4]     The Court, in its discretion, may revisit any non-final orders.  *See*, *e.g.*, Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.")

**SCOTT+SCOTT LLP**
**ATTORNEYS AT LAW**
Erin Green Comite (ct24886)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 9, 2014, I caused the PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing documents or paper to be mailed via United States Postal Service to the non-CM/ECF participants indicated on the manual Notice List.

I hereby certify that I also caused the foregoing documents to be served via United States Postal service upon the following persons:

OFC Ltd.                                        Hans Eirik Olav
c/o Mercury Management Limited                  Dagaliveien 18 F
13 Curate Fenech Street                         0776 Oslo
Birzebbugia, BBG2032                            Norway
Malta

I certify under the laws of the United States of America that the foregoing is true and correct.  Executed on October 29, 2014.

/s/ Philip T. Taylor
Philip T. Taylor