## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GLORIA STEGINSKY, Individually and On Behalf of
All Others Similarly Situated,

                       Plaintiff,

           vs.

XCELERA INC., OFC LTD., VBI CORPORATION,
ALEXANDER M. VIK, GUSTAV M. VIK, and HANS
EIRIK OLAV,

                  Defendants.

Case No. 3:12-cv-00188-SRU

## THE XCELERA DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ...................................................................................................................2

STANDARD OF REVIEW .....................................................................................................7

ARGUMENT .........................................................................................................................9

      I.     Ms. Steginsky Does Not Have Typical Claims. ......................................................9

            A.     Reliance is an  Essential Element of Plaintiff's Fraud Claims. ................10

            B.     Ms. Steginsky Is Subject to a Unique Defense of Non-Reliance. .............13

            C.     Ms. Steginsky's Disregard of the Tender Offer Materials Subjects Her to a Unique Defense of Non-Reliance ...............................................................17

            D.     Ms. Steginsky's Consultation With AFT Subjects Her Fiduciary Duty Claims to Unique Defenses ........................................................................18

      II.    Plaintiff's Claims Are Not Amenable to Classwide Proof and Individualized Issues Will Predominate Over Common Questions of Fact and Law. ..................19

            A.     Whether Investors Were Deceived by the Tender Offer Is Not Susceptible to Classwide Proof. ...................................................................................20

            B.     Whether Investors Relied Upon the Alleged Omission Is Not Susceptible to Classwide Proof. ...................................................................................23

            C.     Plaintiff's Fiduciary Duty Claims Are Not Susceptible to Classwide Proof. ........................................................................................25

      III.   This Court Should Reject Plaintiffs' Request To Reconsider Its Dismissal Decision. .......................................................................................................25

CONCLUSION ....................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,*
269 F.R.D. 252 (S.D.N.Y. 2010) ............................................................24

*Affiliated Ute Citizens of Utah v. United States,*
406 U.S. 128 (1972) .................................................................. *passim*

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,*
133 S. Ct. 1184 (2013) .....................................................................11

*Ansoumana v. Gristede's Operating Corp.,*
201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................19

*APA Excelsior III L.P. v. Premiere Technologies, Inc.,*
476 F.3d 1261 (11th Cir. 2007) ...........................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,*
222 F.3d 52 (2d Cir. 2000)..................................................................10

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988)....................................................................11, 23

*Bello v. Integrated Resources, Inc.,*
No. 88 CIV. 1214(CSH), 1990 WL 52087 (S.D.N.Y Apr. 19, 1990) ....................17

*Brown v. E.F. Hutton Group, Inc.,*
991 F.2d 1020 (2d Cir. 1993)...............................................................22

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ............................................................... *passim*

*Dobson v. Hartford Life & Accident Insurance Co.,*
No. 99CV2256 (JBA), 2006 WL 861021 (D. Conn. Mar. 31, 2006) .......................9

*duPont v. Brady,*
828 F.2d 75 (2d Cir. 1987)..................................................................12

*Eckstein v. Balcor Film Investors,*
58 F.3d 1162 (7th Cir. 1995) ...........................................................18, 24

*Erica P. John Fund, Inc. v. Halliburton Co.,*
131 S. Ct. 2179 (2011)......................................................................20

*Feiner Family Trust v. VBI Corp.,*
No. 07 Civ. 1914(RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ....................4

*Feiner Family Trust v. Xcelera.com, Inc.*,
   No. 07 Civ. 1914(RPP), 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008), *aff'd*, 352 F.
   App'x 461 (2d Cir. 2009) ...................................................................................................4

*Feiner Family Trust v. Xcelera Inc.*,
   No. 10-cv-3431(RPP), 2010 WL 3184482 (S.D.N.Y. Aug. 9, 2010)...................................4, 5

*Gallup v. Clarion Sintered Metals, Inc.*,
   489 F. App'x 553 (3d Cir. 2012) ...................................................................................18, 24

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
   917 F. Supp. 2d 246 (S.D.N.Y. 2013)..................................................................................13

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   119 F.R.D. 344 (S.D.N.Y. 1988), *aff'd*, 903 F.2d 176 (2d Cir. 1990)...................................15

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990).....................................................................................9, 15, 17

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982)..........................................................................................................7, 9

*Goodman v. Genworth Financial Wealth Management Inc.*,
   300 F.R.D. 90 (E.D.N.Y. 2014) ..........................................................................................8, 25

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999)....................................................................................................16

*Haddock v. Nationwide Financial Services, Inc.*,
   272 F.R.D. 61 (D. Conn. 2010).........................................................................................26, 27

*Hallet v. Li & Fung, Ltd.*,
   No. 95 Civ. 8917(JSM), 1997 WL 621111 (S.D.N.Y. Oct. 6, 1997) .....................................16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014).............................................................................................8, 11, 12, 23

*Harborview Master Fund, L.P. v. Lightpath Technologies*,
   601 F. Supp. 2d 537 (S.D.N.Y. 2009)..................................................................................22

*Healey v. Chelsea Resources, Ltd.*,
   947 F.2d 611 (2d Cir. 1991)...................................................................................................13

*In re Initial Public Offerings Securities Litigation*,
   471 F.3d 24 (2d Cir. 2006)...........................................................................................8, 9, 20, 23

*In re Literary Works in Electronic Databases Copyright Litigation*,
   654 F.3d 242 (2d Cir. 2011)..................................................................................................15

*In re Livent, Inc. Noteholders Securities Litigation,*
    211 F.R.D. 219 (S.D.N.Y. 2002) ....................................................18

*In re Merrill Lynch Auction Rate Securities Litigation,*
    704 F. Supp. 2d 378 (S.D.N.Y. 2010).........................................16

*In re Moody's Corp. Securities Litigation,*
    274 F.R.D. 480 (S.D.N.Y. 2011) ...................................................23

*In re Refco, Inc. Securities Litigation,*
    503 F. Supp. 2d 611 (S.D.N.Y. 2007).........................................21

*In re Smith Barney Transfer Agent Litigation,*
    290 F.R.D. 42 (S.D.N.Y. 2013) .....................................................12

*In re Vivendi Universal, S.A. Securities Litigation,*
    242 F.R.D. 76 (S.D.N.Y. 2007) .......................................................7

*Jacob v. Duane Reade, Inc.,*
    289 F.R.D. 408 (S.D.N.Y. 2013) ...................................................20

*Jensen v. Kimble,*
    1 F.3d 1073 (10th Cir. 1993) ..................................................21, 22

*Kamerman v. Ockap Corp.,*
    112 F.R.D. 195 (S.D.N.Y. 1986) ...................................................17

*Koehler v. Bank of Bermuda (New York) Ltd.,*
    209 F.3d 130 (2d Cir. 2000).........................................................13

*Levitt v. J.P. Morgan Securities, Inc.,*
    710 F.3d 454 (2d Cir. 2013)..........................................................12

*Lewis v. McGraw,*
    619 F.2d 192 (2d Cir. 1980)........................................11, 12, 13, 14

*Manela v. Garantia Banking Ltd.,*
    5 F. Supp. 2d 165 (S.D.N.Y. 1998)..............................................16

*McCormick v. Fund American Cos., Inc.,*
    26 F.3d 869 (9th Cir. 1994) ....................................................21, 22

*McLaughlin v. American Tobacco Co.,*
    522 F.3d 215 (2d Cir. 2008).........................................................24

*Moore v. PaineWebber, Inc.,*
    306 F.3d 1247 (2d Cir. 2002).................................................20, 28

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010).........................................................................8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012).........................................................25, 26, 27, 28

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003).......................................................................26

*Peskin v. Anderson*,
    [2001] 1 B.C.L.C. 372 ......................................................................18, 19, 25

*Salsitz v. Peltz,*
    210 F.R.D. 95 (S.D.N.Y. 2002) ...................................................................16

*Santa Fe Industries Inc. v. Green*,
    430 U.S. 462 (1977).................................................................................20

*Shores v. Sklar*,
    647 F.2d 462 (5th Cir. 1981) ......................................................................18

*Stark Trading v. Falconbridge Ltd.*,
    No. 05-C-1167, 2008 WL 153542 (E.D. Wis. Jan. 14, 2008), *aff'd* ,552 F.3d 568
    (7th Cir. 2009)..............................................................................14, 15, 16

*Stark Trading v. Falconbridge Ltd.*,
    552 F.3d 568 (7th Cir. 2009) ................................................................15, 16

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014).......................................................................10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)..................................................................10, 11, 12, 23

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008).........................................................................7

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
    No. 05 Civ. 1898, 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196
    (2d Cir. 2008)........................................................................................23

*Tzanetis v. Weinstein & Riley, P.S.*,
    No. 3:09–CV–00413 (DJS), 2011 WL 3163503 (D. Conn. July 26, 2011)...........26

*United States v. Finnerty*,
    533 F.3d 143 (2d Cir. 2008).......................................................................21

*United States v. O'Hagan*,
    521 U.S. 642 (1997)......................................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..............................................................................................8, 19

*Wardrop v. Amway Asia Pacific Ltd.*,
    No. 99 Civ. 12093 (DC), 2001 WL 274067 (S.D.N.Y. Mar. 20, 2001) ...........................14, 16

*Willco Kuwait (Trading) S.A.K. v. deSavary*,
    843 F.2d 618 (1st Cir. 1988)..........................................................................................21

*Wilson v. Comtech Telecommunications Corp.*,
    648 F.2d 88 (2d Cir. 1981)..............................................................................................12

RULES

Fed. R. Civ. P. 23 ................................................................................................ *passim*

OTHER AUTHORITIES

Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* (10th ed. 2013) ........17

Defendants Xcelera, Inc., Alexander M. Vik, Gustav M. Vik, and VBI Corporation (collectively, the "Xcelera Defendants") respectfully submit this Memorandum in Opposition to Plaintiff's Motion for Class Certification. Because Plaintiff's Memorandum in Support of Class Certification (Dkt. No. 127) ("Mem.") fails to establish the prerequisites required by Fed. R. Civ. P. 23, no class should be certified.

## PRELIMINARY STATEMENT

The law firm of Abraham Fruchter and Twersky, LLP ("AFT") has filed more than a half dozen complaints against the Xcelera Defendants over the past seven years. All were on behalf of minority Xcelera shareholders, and all, prior to this action, were dismissed or withdrawn.

Now, discovery in this suit reveals that the Plaintiff (a) conferred with AFT *before* she sold shares into the tender offer, (b) concluded *before she sold* that the offer was not fair and that material information had been withheld, but nevertheless (c) tendered her shares as part of a plan to file this lawsuit. Ms. Steginsky's participation in the tender offer with the advice of lawyers who had devoted years to suing Xcelera for fraud, and in anticipation of this very litigation, subjects her fraud and breach of fiduciary duty claims to obvious and unique defenses—namely, that since she was not defrauded or misled, she has no claim. Her claims are not typical of the class on whose behalf she purports to act because litigation with her as a class representative will focus on her pre-sale consultation with counsel and the conclusion she had reached – before she sold – that the transaction was fraudulent and unfair.

Ms. Steginsky's admission that she never read the terms of the tender offer likewise renders her claims atypical and subjects her to the unique defense of non-reliance: because she did not read what was in the tender offer's terms, she could not have relied upon what was omitted from them. Moreover, this is not a "fraud-on-the-market" case, and essential elements

of her claims, deception and reliance, are inimical to common, class-wide proof. The individualized inquiries they demand predominate over any common questions of fact or law.

## BACKGROUND

### A.  Xcelera

Xcelera's common stock was for a time registered by the Securities and Exchange Commission ("SEC") and listed for trading in the U.S. on the American Stock Exchange ("AMEX").  Def.'s Answer (Dkt. No. 129) ¶ 23.  In 2004, after the internet bubble burst, Xcelera became delinquent in its reporting obligations as a public company when it failed to file with the SEC its annual report for fiscal year ending January 31, 2004 in a timely manner.  *Id.* at ¶¶ 24-25.  In November 2004, AMEX de-listed the Company's stock.  *See id.* ¶ 25.  The SEC then revoked the registration of Xcelera's securities due to its continued failure to file timely periodic reports required of registered companies under SEC rules.  *Id.* ¶ 28; *see also* Ex. A (11/3/2006 Order revoking Xcelera's registration).[1]  Both AMEX's de-listing and the SEC's de-registration decisions were publicized and generally available to Xcelera investors.  *See* Def.'s Answer ¶ 25; Ex. A (Order revoking Xcelera's registration).

### B.  The OFC Tender Offer

Years later, in late 2010, Defendant OFC initiated a "tender offer" seeking to purchase 10 million unregistered shares of Xcelera common stock for $0.25 per share.  *See* Ex. B (Letter of Transmittal).  OFC sent Xcelera shareholders a "Letter of Transmittal" in connection with its "tender offer."  *See id.*  Recipients wishing to tender their shares were directed to sign the Letter of Transmittal and return it to Xcelera's transfer agent.  *See id.*  By signing the Letter of Transmittal, selling shareholders acknowledged receipt of an "Offer to Purchase" dated

---

[1]      Citations to "Ex. __" refer to exhibits to the accompanying Declaration of David Zetlin-Jones.

December 17, 2010 (the "Offer to Purchase," and together with the Letter of Transmittal, the "Tender Offer Materials").  *Id.* at 2-3.  The Offer to Purchase purportedly set forth the terms and conditions of the tender offer; sellers into the tender offer agreed that their sales were pursuant to those enumerated terms and conditions.  *Id.*

OFC's tender offer remained open until March 31, 2012.  Ex. C.  Although OFC sought to acquire up to 10 million shares of Xcelera stock, it was able to purchase only about 3.2 million shares.  *Id.*  Less than $800,000 exchanged hands in the tender offer.  *See id.*  Of sellers into the tender offer, only about 45 shareholders even held the shares in their own name.  *See* Mem. at 10; Ex. C.  The remaining tenderors (representing approximately 2.5 million out of 3.2 million shares sold) held their Xcelera positions in street name, and there is no evidence of their receipt or review of the Tender Offer Materials.  *See id.*

Plaintiff sold 100,010 shares to OFC in the tender offer for $0.25 per share (or approximately $25,000).  Def.'s Answer ¶ 8.  Through her motion, she seeks to certify a class of all persons who tendered their Xcelera shares to OFC in the tender offer.   Mem. at 1.

Plaintiff claims that through the OFC tender offer, the Xcelera Defendants violated the federal securities laws' prohibitions against insider trading, and breached fiduciary duties supposedly owed to minority shareholders under Cayman Islands Law.  Am. Compl. (Dkt. No. 124) ¶¶ 48-53, 71-75.  Plaintiff claims that the Xcelera Defendants breached those duties by engaging in the tender offer without providing information regarding Xcelera's current financial condition, and that Xcelera stock is worth more than the $0.25 OFC offered for it.  *Id.* ¶¶ 29-34.  Because the Xcelera Defendants (allegedly through OFC) withheld information regarding the Company's true worth, she asserts that she and similarly-situated sellers should be entitled to

recover the difference between the $0.25 they received and the true value of the shares.  *See id.*
¶¶ 52-53.

### C.    Prior Lawsuits

Since 2007 Plaintiff's counsel, Abraham Fruchter and Twersky, LLP ("AFT"), has filed a
series of complaints against the Xcelera Defendants in the actions captioned *Feiner Family Trust
v. VBI Corp.*, No. 07 Civ. 1914(RPP) (S.D.N.Y), *Feiner Family Trust v. Xcelera Inc. et al.*,
Index No. 650204/2010 (N.Y. Sup. Ct.), and *Feiner Family Trust v. Xcelera Inc.*, No. 10-cv-
3431(RPP) (S.D.N.Y.).  Ex. D.  Each claimed that the Xcelera Defendants orchestrated the de-
listing and de-registration of Xcelera's securities to induce minority shareholders to sell their
shares back to the Xcelera Defendants at deflated prices.  *See id.* at 2, ¶ 1 ("the controlling
shareholders of Xcelera have deliberately depressed the trading price of Xcelera common stock
with the goal of buying the shares of Xcelera … at prices severely discounted from their true
value").  Each also contended that the Xcelera Defendants sought to purchase Xcelera shares at
$0.25 per share.  *See id.*  In each, the plaintiff claimed that $0.25 per share materially
undervalued the true worth of Xcelera's stock.  *See id.*  In each, the Court dismissed the
allegations as meritless.  *See Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914(RPP), 2007
WL 2615448 (S.D.N.Y. Sept. 11, 2007); *Feiner Family Trust v. Xcelera.com, Inc.*, No. 07 Civ.
1914(RPP), 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008), *aff'd*, 352 F. App'x 461 (2d Cir.
2009); *Feiner Family Trust v. Xcelera Inc.*, No. 10-cv-3431(RPP), 2010 WL 3184482 (S.D.N.Y.
Aug. 9, 2010).

### D.    Ms. Steginsky's Tender of Xcelera Stock to OFC

Ms. Steginsky accumulated her 100,010 share position in Xcelera stock through a joint
account she shared with her husband.  *See* Ex. E (Steginsky Tr.), at 49:21-50:12, 52:4-22; Ex. F
(account statements) at GS-402, GS-722.  Ms. Steginsky's husband, a stock broker at Merrill

Lynch, controlled and directed all investments in that account.  Ex. E (Steginsky Tr.), at 32:15-33:10.  Ms. Steginsky testified that she had no involvement whatsoever in her family's decisions to buy or sell Xcelera stock before the OFC tender offer.  She did not know when, why or how her husband determined to invest in Xcelera stock or what factors he considered important in making his investment decisions.  *Id.* at 42:6-43:15, 49:21-51:6.

Her husband's investment patterns, however, show that Xcelera's financial statements were not a factor he considered important in deciding whether to invest in Xcelera securities.  Of the 100,010 shares of Xcelera stock he accumulated (which were later sold in the OFC tender offer), 80,000 were purchased ***after*** Xcelera's de-listing in over-the-counter trades, when Xcelera had ceased publicizing its financial information.  *See* Ex. F at GS-720-23 (December 2005 account statement reflecting that 80,000 of the Xcelera shares the Steginskys held were purchased between November 8, 2004 and January 10, 2005—after AMEX had de-listed Xcelera's stock).  These purchases were made at prices between $0.27 and $0.39 per share.  *Id.*

In or around December 2010, the 100,010 share position her husband had accumulated in Xcelera was transferred to Ms. Steginsky's personal brokerage account.  Ex. F at GS-398-411 (December 2010 account statements reflecting the transfer of securities from Ms. Steginsky's joint account with her husband to her personal account).  The decision whether to sell those shares to OFC was hers alone.  *See* Ex. E (Steginsky Tr.), at 130:3-8, 134:21-136:12.

Ms. Steginsky admitted in her deposition that she never reviewed any of the Tender Offer Materials, neither receiving nor reviewing either the Offer to Purchase or the Letter of Transmittal.  *See id.* at 123:12-21.  And she acknowledged that she would not know one way or the other whether the Tender Offer Materials contained any information regarding Xcelera's financial condition.  *Id.* at  132:15-133:20.

Instead, Ms. Steginsky contacted individuals she believed to be affiliated with Xcelera or who otherwise might have information about the tender offer, and reviewed publicly available information about the Company.  *See* Ex. G (GS-015-23) (compendium of emails and notes of attempted calls to Xcelera affiliates); Ex. H (GS-432-59) (compendium of news reports and articles Ms. Steginsky reviewed in evaluating whether to participate in the OFC tender offer). This led to a call to AFT lawyer Philip Taylor, one of the *Feiner* plaintiff's counsel, and now Ms. Steginsky's counsel in this case.  Ex. E (Steginsky Tr.), at 164:9-25.  Ms. Steginsky spoke to Mr. Taylor before tendering any shares.  *Id.*  The substance of that conversation is unknown; at Ms. Steginsky's deposition, her attorney (Mr. Taylor) invoked the attorney-client privilege and foreclosed any inquiry into the substance or even the subject matter of this conversation.  *See id.* at 165:24-171:5.

After her call with Mr. Taylor, Ms. Steginsky determined that she would sell her Xcelera shares to OFC; she submitted the majority of her Xcelera shares for tender on February 8, 2011 and the balance on February 10, 2011.  Ex. F at GS-010.  Ms. Steginsky admitted at her deposition that she did not believe that the $0.25 offered for her Xcelera shares was a fair price, or one reflective of Xcelera's true financial condition when she sold her shares.  To the contrary, she acknowledged readily that she believed Xcelera was, in fact, worth more than $0.25 per share.  *See* Ex. E (Steginsky Tr.), at 71:16-74:20; *id.* at 125:3-7 ("Q: When you sold your shares did you think 25 cents was a fair price for Xcelera? … A:  No, I did not feel it was a fair price."). Ms. Steginsky further testified that when she sold her shares, she believed that the Xcelera Defendants were behind the OFC tender offer.  *See id.* at 115:21-116:10.

Ms. Steginsky also admitted at her deposition that at the time she tendered her shares, she believed that the tender offer was a fraud; she sold nonetheless:

Q:      When you tendered your shares, did you believe that the Xcelera
        defendants had committed a violation?

A:      Yes.

Q:      And you tendered your shares anyway?

A:      Yes.

*Id.* at 78:18-23.   Notwithstanding her belief that the tender offer was unfair and fraudulent, neither Ms. Steginsky nor her counsel made efforts to alert prospective sellers of their suspicions. Nor did they take any steps to prevent the effectuation of the purported fraud.   Instead, Ms. Steginsky sold her shares to OFC for $0.25 per share believing that she was being lowballed and planning to file this lawsuit.   *See id.* at 78:3-13 ("Q: You decided to file this case before you tendered your shares?  A: Yes I did … Q:  Did you tender your shares knowing that you were going to file a lawsuit?  A:  Yes."); *see also id.* at 173:11-14 ("Q: Ms. Steginsky, when you tendered your shares to OFC did you do so knowing you would initiate a lawsuit?  A: Yes.").

## STANDARD OF REVIEW

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citations and internal quotation marks omitted).   To establish that the exception is applicable to a given case, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23."  *Id.*   Generally, consideration of a motion for class certification under Rule 23 entails a two-step process.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007).  First, "the court must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982)); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) ("In determining whether class

certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy.").

If a court has concluded that Rule 23(a)'s four requirements have been satisfied, it must then determine whether the party seeking certification has satisfied "through evidentiary proof" at least one of the provisions of Rule 23(b). *Comcast,* 133 S. Ct. at 1432. Here, Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(3). Mem. at 14-18. Rule 23(b)(3) authorizes class certification when plaintiffs establish, "by a preponderance of the evidence, that: (1) common questions predominate over questions affecting individual plaintiffs; and (2) class resolution is the best means of adjudicating the case." *Goodman v. Genworth Fin. Wealth Mgmt. Inc.*, 300 F.R.D. 90, 101 (E.D.N.Y. 2014) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 23(b)(3).

Plaintiff "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Rather, "plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014). A class may only be certified if the court has "receive[d] enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). In determining whether a putative class meets the requirements of Rule 23, the court must resolve any factual disputes and find any facts relevant to this determination. *Id.* That obligation "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."

*Id.*; *see also Comcast*, 133 S. Ct. at 1433 (a district court must make a "determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim").

## ARGUMENT

Ms. Steginsky cannot satisfy Rule 23's requirements. First, the circumstances of her transaction subject her to unique defenses that render her claims atypical from those of the class she seeks to represent. Second, her claims are not amenable to common proof, and individualized issues will predominate over any questions of law or fact common to absent class members.

## I.    MS. STEGINSKY DOES NOT HAVE TYPICAL CLAIMS.

The typicality requirement assures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982). To establish typicality, a putative representative must demonstrate that "each class member's claim arise[s] … from the same course of events, and each class member make[s] … similar legal arguments to prove defendant's liability." *Dobson v. Hartford Life & Accident Ins. Co.*, No. 99CV2256 (JBA), 2006 WL 861021, at *6 (D. Conn. Mar. 31, 2006).

"Typicality will be found to be lacking where a defendant has 'unique defenses' to the individual claims of the class members." *See id.*; *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses…."). This is because unique defenses to which the representative may be subject can threaten to become the focus at trial, thereby damaging absent class members by diverting attention from their concerns. *See Gary Plastic*, 903 F.2d at 180 ("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see*

*also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (class representative is atypical if "subject to unique defenses which threaten to become the focus of the litigation").

Here, Ms. Steginsky's claims are subject to several and fatal vulnerabilities not shared by the absent class members she seeks to represent.  Her admitted knowledge of the supposed tender offer fraud is an absolute bar to her claims and would become a (if not the) central focus of any trial.  By her own account of events, she was not deceived by any omissions from the Tender Offer Materials, did not rely on any omissions, and did not enter into any transaction as a result of them.  The unique and peculiar circumstances of her stock sale render her claims fundamentally different from those of absent class members.  The remaining class would suffer substantial prejudice from Ms. Steginsky's representation of them.

## A.    Reliance is an  Essential Element of Plaintiff's Fraud Claims.

The Second Circuit Opinion from this case contains the following language:  "the Supreme Court has dispensed with a requirement of positive proof of reliance, where a duty to disclose material information has been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established."  *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014).  Seizing opportunistically on this dictum, Plaintiff insists that she need not prove detrimental reliance as an element of her insider trading claims. Mem. at 15.  She is wrong.

The Second Circuit did not, through this single sentence, read the reliance requirement out of claims of securities fraud.  To the contrary, the Second Circuit cited in support of that proposition the Supreme Court's decision in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).  *See Steginsky*, 741 F.3d at 370 (citing *Stoneridge*). *Stoneridge*, in turn, confirms the longstanding rule that "[r]eliance by the plaintiff upon the

- 10 -

defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge*, 552 U.S. at 159; *see also Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191-92 (2013) (listing "reliance upon the misrepresentation or omission" as a required element of a private securities fraud action under Section 10(b)).   The reliance requirement "ensures that, for liability to arise, the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury exists as a predicate for liability."  *Stoneridge*, 552 U.S. at 159.   Nothing in the Second Circuit's opinion in this matter suggests an intent to disturb, overrule, or otherwise amend this basic requirement of a securities fraud claim.

Rather, the Second Circuit's language reflects merely an acknowledgment, reinforced by *Stoneridge*, that the case law affords plaintiff a *presumption* of reliance in two, narrow situations. *See Stoneridge*, 552 U.S. at 159 ("We have found a rebuttable presumption of reliance in two different circumstances.").   The only presumption relevant to this matter is the one created by the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972) (the "*Affilated Ute* presumption" or the "*Ute* presumption"), which affords a securities plaintiff a rebuttable presumption of reliance in omissions cases.  *See Stoneridge*, 552 U.S. at 159 (citing *Affiliated Ute*, 406 U.S. at 153-54).[2]

Contrary to Plaintiff's arguments, *Affiliated Ute* "did not abolish [reliance] as an element of the cause of action."  *Lewis v. McGraw*, 619 F.2d 192, 195 (2d Cir. 1980).   It merely affords a *presumption* of reliance in certain circumstances.  *Id*.   "To say that reliance is 'presumed' is

---

[2]    The other circumstance triggering a presumption of reliance is known as the "fraud-on-the-market" theory.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988).   Invocation of the fraud-on-the-market presumption requires that a plaintiff prove, among other things, that "the stock traded in an efficient market."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2413 (2014).   Because Xcelera was a de-registered security at the time of the OFC tender offer, it did not trade on any market, much less an efficient one, and accordingly, the fraud-on-the-market presumption has no application in this case.  Plaintiff's memorandum in support of class certification does not suggest otherwise.

simply not the same thing as saying that reliance is 'irrelevant.'"  *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1272 (11th Cir. 2007).

The *Affiliated Ute* presumption "is a pragmatic one."  *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013).  The rationale for applying the presumption in omissions cases is that when "*no* positive statements exist reliance as a practical matter is impossible to prove."  *Wilson v. Comtech Telecommc'ns Corp.*, 648 F.2d 88, 93 (2d Cir. 1981).  In other words, the *Affiliated Ute* presumption exists only to alleviate the conceptual difficulty in requiring a plaintiff to prove reliance on statements that were never made.  *See id.*

The Second Circuit has cautioned, however, that courts should employ *Affiliated Ute*'s presumption of reliance narrowly, and only "where it is logical to do so," *i.e.* where "reliance is possible, and even likely, but is unduly burdensome to prove."  *Lewis*, 619 F.2d at 195.  Where evidence affirmatively negates reliance, such that "no reliance [is] possible under any imaginable set of facts," *Affiliated Ute*'s presumption of reliance "would be illogical in the extreme" and therefore may not attach.  *See id.*  Further, even where the presumption is applicable, it is rebuttable.  *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (stating that "an omission of a material fact by a defendant with a duty to disclose establishes a *rebuttable* presumption of reliance upon the omission by investors to whom the duty was owed") (emphasis added); *see also Stoneridge*, 552 U.S. at 159 (referring to the *Affiliate Ute* presumption as a "rebuttable" one).  A demonstration that the plaintiff's investment decision was unaffected by the omitted information rebuts the *Ute* presumption.  *See duPont v. Brady*, 828 F.2d 75, 76-78 (2d Cir. 1987).  A court must consider rebuttal evidence at the certification stage.  *Halliburton*, 134 S. Ct. at 2413.

**B.     Ms. Steginsky Is Subject to a Unique Defense of Non-Reliance.**

"A plaintiff who had knowledge of the untruth or omission may not recover under § 10(b)." *Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130, 136 (2d Cir. 2000) (citing *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 617 (2d Cir. 1991)).  This is because "a plaintiff who transacts in a security despite having knowledge of the fraud cannot prove reliance." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 253 (S.D.N.Y. 2013).

Here, Ms. Steginsky's own account of events confirms that she did not rely on the purported omissions forming the basis of her fraud claim.  Before tendering her Xcelera stock for $0.25 per share, she spoke with lawyers from AFT.  *See supra* at 6.  These are the same lawyers who had filed serial pleadings in federal court asserting that Xcelera was worth substantially more than that, and that the Xcelera Defendants had illegally schemed to depress artificially the market for Xcelera stock so that they could buy it back on the cheap.  *See* Ex. D.

Following this discussion (if not sooner), Ms. Steginsky believed that Xcelera was worth more than $0.25 per share.  *Supra* at 6.  She believed that Xcelera insiders were behind OFC's tender offer.  *See supra* at 6.  And she believed a fraud was afoot.  *Supra* at 7.  She consulted with counsel (a firm which had sued Xcelera on the same fraud theory several times) and then sold into the tender offer nearly six weeks before it expired, with a plan to file this action.  *Supra* at 6-7.  She sold not because she thought the tender offer was a good deal or a fair deal, but rather as a predicate for a planned lawsuit.  *Supra* at 7.

On this evidence, the *Affiliated Ute* presumption of reliance is not available to Ms. Steginsky because "no reliance is possible under any imaginable set of facts." *Lewis*, 619 F.2d at 195.  Affording Ms. Steginsky any such presumption of reliance under these circumstances would be "illogical in the extreme." *Id.*  Indeed, courts routinely refuse to extend *Affiliated Ute*'s

- 13 -

presumption of reliance where, as here, the alleged fraud was known by the Plaintiff when she executed the offending transactions.

*Wardrop v. Amway Asia Pacific Ltd.*, No. 99 Civ. 12093 (DC), 2001 WL 274067 (S.D.N.Y. Mar. 20, 2001) is instructive.   There, as here, a securities fraud plaintiff premised her Exchange Act claims on allegedly material omissions contained in a company's tender offer materials.  *Id.*  at *5.   There, also as here, the plaintiff identified the purportedly fraudulent omission, consulted with counsel, and determined to sue the offeror before the tender offer period expired.  *Id.*  Judge Chin held that because "plaintiffs were aware of the alleged fraud before the tender offer expired,"  they "could not have reasonably relied to their detriment on" the claimed omission.  *Id.*  In so holding, Judge Chin specifically rejected plaintiff's invocation of *Affiliated Ute*'s presumption of reliance, observing that application of the presumption under those circumstances would be "illogical in the extreme."  *Id.* (quoting *Lewis*, 619 F.2d at 195).

Likewise, in *Stark Trading & Shepherd Investments Int'l, Ltd. v. Falconbridge Ltd.*, evidence established that recipients of a tender offer solicitation had identified certain inaccuracies in the offering materials and raised their concerns both with the offeror and with securities regulators before the expiry of the tender offer period.   No. 05-C-1167, 2008 WL 153542, at *2 (E.D. Wis. Jan. 14, 2008), *aff'd*, 552 F.3d 568 (7th Cir. 2009).   Notwithstanding their concerns, plaintiffs tendered their shares and then initiated a suit alleging securities fraud on the basis of those transactions.  *Id.*  Plaintiffs' awareness of the supposed fraud before their tender mandated dismissal of their claims, because it foreclosed the possibility of any proof or any presumption of the required element of reliance.  *Id.* at *13 ("A person who is aware of the alleged fraud before tendering his shares but nonetheless did so … will be barred from bringing a § 10(b) … claim based on an inability to plead the element of reliance").   The Court observed

that "[a]ny other result would run contrary to public policy in that it would not encourage the strong public policy of preventing frauds before they occur."  *Id.*

Affirming for the Seventh Circuit, Judge Posner specifically repudiated the sell-first, sue-later approach that Ms. Steginsky and her lawyers admittedly pursued with respect to the OFC tender offer:

> [N]o one who saw through the fraud would be able to sue for fraud, for he could not have relied directly or indirectly.  And that was the plaintiffs' position. … [Plaintiffs] must have considered the combination of the tender-offer price and a later suit (this suit) against the defendants a better deal than holding on to their shares and by doing so, and disseminating their doubts, trying to defeat the tender offer.  That is not a strategy that the courts should reward in the name of rectifying securities fraud.

*Stark Trading v. Falconbridge Ltd*., 552 F.3d 568, 573 (7th Cir. 2009).  That absent class member shareholders may have been deceived by the fraud—even though named plaintiffs were not—was of no moment:  "even if the other minority shareholders were blind sheep and the law impotent to prevent a dishonest tender offer, the plaintiffs would not have a claim under Rule 10b-5, or any other securities law requiring proof of reliance, because they were never deceived." *Id.*[3]

---

[3]     The Seventh Circuit also pointedly questioned why plaintiffs did not warn ignorant shareholders of the ongoing fraud before the tender offer period expired.  *See id.*  The same could be asked of Ms. Steginsky and her lawyers, raising substantial concerns as to their capacity to fairly and adequately represent absent class members' interests.  *See In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (adequacy inquiry under Fed. R. Civ. P. 23(a)(4) focuses on whether named plaintiff and class counsel have interests that are "antagonistic to the interests of other class members") (citations and internal quotation marks omitted).  Compounding these adequacy concerns is the active role AFT assumed in Ms. Steginsky's decision to tender, which may require their lawyers' participation as a fact witness in this case.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344, 349 (S.D.N.Y. 1988) (denying class certification on adequacy grounds where class counsel was an "obvious and objectively necessary witness" on the issue of non-reliance), *aff'd*, 903 F.2d 176 (2d Cir. 1990).

Also similar is *Manela v. Garantia Banking Ltd.*, 5 F. Supp. 2d 165, 168 (S.D.N.Y. 1998).   There, plaintiff acknowledged in his deposition that he saw through the misstatement forming the basis of his fraud claim at the time it was made.   That candid admission required dismissal of his action for failure to demonstrate reliance.   *Id.*   Plaintiff argued nonetheless that it would be "unfair" to dismiss his 10b-5 claim merely because he was not "hoodwinked" by the claimed fraudulent misstatement.   Rejecting the argument, the Court noted that dismissal "is precisely the result that should follow" because "the core of a Rule 10b-5 claim is fraud" and where "there is no fraud, there is no claim."   *Id.* at 174-75.

As in *Wardrop*, *Stark Trading*, *Manela*, and other cases,[4]  Ms. Steginsky's admission that she knew of the supposed fraud before tendering her shares disposes of her claim for lack of reliance.   Neither logic nor authority supports extending *Affiliated Ute*'s presumption of reliance under these circumstances.   Even if *Affiliated Ute* could apply, Ms. Steginsky's own words squarely rebut any presumption it might afford.   *See Salsitz v. Peltz*, 210 F.R.D. 95, 98 (S.D.N.Y. 2002) (denying class certification because "[h]ere, it is not logical to presume such reliance, as Plaintiff himself admits that [he] did not rely on the allegedly misleading tender offer material").

It bears emphasis, too, that the Xcelera Defendants "need not show at the certification stage that the unique defense will prevail."   *See Hallet v. Li & Fung, Ltd.*, No. 95 Civ. 8917(JSM), 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997).   It is sufficient to show merely that the defense "is meritorious enough to require the plaintiff to devote considerable time to rebut" it.   *Id.*   Where there is just the *possibility* that a securities fraud plaintiff *may* have sussed out the

---

[4]      *See also Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) (affirming dismissal of securities fraud claim; reliance cannot be pled where plaintiff was indisputably aware of the alleged scheme, but transacted anyway); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 398 (S.D.N.Y. 2010) (dismissing securities fraud claim; where allegedly manipulative activities were fully disclosed, plaintiff was not entitled to a presumption of reliance under *Affiliated Ute*).

supposed fraud before entering into the purportedly fraudulent transaction, courts have found class certification inappropriate on typicality grounds.  *See Bello v. Integrated Res., Inc.*, No. 88 CIV. 1214 (CSH), 1990 WL 52087, at *2-3 (S.D.N.Y Apr. 19, 1990) (denying certification on typicality grounds in securities fraud action where there was a disputed issue of fact as to whether named plaintiff knew of the information he claimed was withheld before tendering his shares); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197-98 (S.D.N.Y. 1986) (denying class certification because named plaintiff's "admission that he learned of the alleged omissions and misstatements of fact before the merger vote and therefore did not rely on the representations in [defendant's] proxy statement subjects plaintiff to unique defenses, and plaintiff cannot, therefore, satisfy the typicality requirement").

Where, as here, the evidence establishes conclusively the class representative's non-reliance, certification must be denied.  *See id.*; *see also* Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice*, § 4.18 (10th ed. 2013) ("If a putative representative of a class alleging securities fraud … made his or her purchase with knowledge of the facts alleged in the complaint, the representative cannot serve as a representative in the action.") (citing *Gary Plastic*, 903 F.2d at 179-80).

### C.   Ms. Steginsky's Disregard of the Tender Offer Materials Subjects Her to a Unique Defense of Non-Reliance

Ms. Steginsky is also subject to unique defenses on the basis of her admission that she never read the Tender Offer Materials.  Ms. Steginsky's claim rests on the theory that the Tender Offer Materials were rendered misleading by their failure to include information about Xcelera's financial condition.  Ms. Steginsky, however, never read the materials.  She also admitted she did not know one way or another whether or not those materials included financial information concerning Xcelera.  *See supra* at 5.

Because Ms. Steginsky did not rely on what was in the Tender Offer Materials, she could not rely on what was omitted from them. Her deposition testimony thus squarely rebuts any potential presumption that might be afforded under *Affiliated Ute*, and subjects her to a unique defense of non-reliance that will become a focus of this litigation. *See Gallup v. Clarion Sintered Metals, Inc.*, 489 F. App'x 553, 556-57 (3d Cir. 2012) (affirming summary judgment order dismissing securities fraud claim: where plaintiffs testified that they did not read the reports that contained allegedly omitted material information, "Defendants have satisfied their burden of proving non-reliance"); *In re Livent, Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 223 (S.D.N.Y. 2002) (denying class certification where named plaintiffs "admit that they did not examine any financial documents pertaining to [the company or its securities] before purchasing them.... [T]his juxtaposition … present[s] significant differences of fact that speak to an essential element of the § 10(b) claims, namely, reliance on the alleged omissions and misrepresentations in financial reports").[5]

### D.     Ms. Steginsky's Consultation With AFT Subjects Her Fiduciary Duty Claims to Unique Defenses.

Ms. Steginsky's awareness of the supposed fraud also subjects her fiduciary duty claims to unique defenses, rendering her claims atypical of the class's. Under Cayman Islands law, a director defendant owes a fiduciary duty to a minority shareholder only where there exists a "special factual relationship" between them. *Peskin v. Anderson*, [2001] 1 B.C.L.C. 372 ¶ 33.

---

[5]     *See also Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1171 (7th Cir. 1995) (denying class certification; *Affiliated Ute* presumption rebutted by plaintiffs' failure to read the materials that allegedly omitted material information); *Shores v. Sklar*, 647 F.2d 462, 468 (5th Cir. 1981) (Plaintiff "alleged that the Offering Circular … failed to state material facts necessary to make the statements made not misleading. At the same time, he admitted he never read or otherwise relied on the Offering Circular. If the *Ute* presumption applies to these nondisclosures, [plaintiff's] admission rebuts it.").

Such a relationship arises rarely and requires "direct and close" contact between the shareholder and director capable of "involv[ing] duties of trust, confidence and loyalty."  *See id.* at ¶ 34.

Ms. Steginsky's deposition testimony refutes any notion that she was induced to repose any trust or confidence in the Xcelera Defendants in any respect.  To the contrary, she responded to the OFC tender offer with suspicion, distrust and litigation.  On these facts—unique to her— she will not be able to show a "special relationship" existed, and she is ill-suited to represent absent class members in prosecuting this cause of action.

## II. PLAINTIFF'S CLAIMS ARE NOT AMENABLE TO CLASSWIDE PROOF AND INDIVIDUALIZED ISSUES WILL PREDOMINATE OVER COMMON QUESTIONS OF FACT AND LAW.

Plaintiff has also failed to carry her dual burden under Fed. R. Civ. P. 23(a)(2) and 23(b)(3) of demonstrating that "there are questions of law or fact common to the class" (commonality) and that those questions "predominate over any questions affecting only individual members" (predominance).  Fed. R. Civ. P. 23(a)(2), 23(b)(3).  In urging commonality, Plaintiff lists a series of questions that she claims will be common to class members' claims. Mem. at 11.  But common *questions* are beside the point; what matters for purposes of the certification inquiry is whether those questions are capable of generating common *answers*.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

The predominance inquiry is still more demanding.  *Comcast*, 133 S. Ct. at 1432; *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001) ("The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2).").  A plaintiff may satisfy it only upon demonstration that "resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and … these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). It is the Court's "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 133 S. Ct. at 1432. If "certification of the class will not negate the need for a series of mini-trials," certification should be denied. *Moore*, 306 F.3d at 1253.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). "In making the predominance determination, a court must generally consider whether the proposed class can establish each of the … required elements of their claims using common evidence." *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 418 (S.D.N.Y. 2013). Failure to show that any single required element may not be satisfied through common proof may require denial of certification. *See In re IPO*, 471 F.3d at 42-44 (reversing certification on predominance grounds in securities fraud action because variation among class members would require individualized inquiry into the extent of each class member's knowledge of, and reliance upon, the fraudulent scheme alleged).

Here, at least two of the elements Plaintiff is required to prove to sustain her insider trading claims cannot be established through common proof: deception and reliance.

A.     **Whether Investors Were Deceived by the Tender Offer Is Not Susceptible to Classwide Proof.**

Ms. Steginsky brings her action against the Xcelera Defendants under Section 10(b) of the Exchange Act. "The language of 10(b) gives no indication that Congress meant to prohibit any conduct not involving manipulation or deception." *Santa Fe Indus. Inc. v. Green*, 430 U.S.

462, 473 (1977).  Insider trading—the theory Ms. Steginsky relies upon here—fits within Section 10(b)'s proscription only because it qualifies as a "deceptive device."  *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 n.46 (S.D.N.Y. 2007) ("Acts of insider trading fall with § 10(b)'s prohibition of the use of 'any manipulative or deceptive device or contrivance' in the purchase or sale of securities.").

Conduct amounting to a prohibited "deceptive device" under Section 10(b) "irreducibly entails some act that gives the victim a false impression."  *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008).  In a typical insider trading case, that "false impression" is created by the fiduciaries' feigned fidelity to those with whom they share "a relationship of trust and confidence;" those who deal with insiders have a reasonable expectation that their fiduciaries will disclose all material, non-public information they possess before trading, and breach of that trust operates as a deceit upon the uninformed counterparty.  *See O'Hagan*, 521 U.S. at 651-52.

By contrast, a plaintiff who transacts with an insider while aware of the existence of undisclosed, material information has not been "deceived" within the meaning of federal securities laws' anti-fraud prohibitions.  And absent "deception," there is no fraud claim.  *See Jensen v. Kimble*, 1 F.3d 1073, 1078 (10th Cir. 1993) (where plaintiff "knew what he didn't know" no insider trading action can lie; even if a duty to disclose exists, any omissions "were neither manipulative nor deceptive within the meaning of Rule 10b-5"); *McCormick v. Fund Am. Cos., Inc.*, 26 F.3d 869, 880 (9th Cir. 1994) ("since plaintiff 'knew what he didn't know,' there was nothing misleading in the omission—and Rule 10b-5 penalizes only those who are responsible for misleading omissions or misrepresentations"); *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 627 (1st Cir. 1988) (where plaintiff "voluntarily decided to proceed with the transaction even after [defendant insider] had refused to furnish the information

requested … there can be no claim of misrepresentation or material omission relative to the price information"); *Harborview Master Fund, L.P. v. Lightpath Techs.*, 601 F. Supp. 2d 537, 549 (S.D.N.Y. 2009).

Here, the material, non-public information purportedly withheld was Xcelera's then-current financial information.  Any class member who knew that Xcelera did not make its financial information available but traded nonetheless cannot complain that she was deceived by the omission of that financial information and therefore cannot sustain an insider trading claim under Section 10(b).  *See Jensen*, 1 F.3d at 1078.  By the time of the tender offer, Xcelera had not publicized its financial statements in the better part of a decade, and Xcelera's de-listing and de-registration were well known.  *See supra* at 2.  Plaintiff's counsel's previous, *seriatim* suits against Xcelera on virtually the same theory as that advanced here further amplified the open and notorious nature of Xcelera's failure to make its financials public, and its lack of any financial disclosure.  Most putative class members would be virtually certain to have "kn[own] what [they] didn't know," and cannot credibly establish the essential element of deception.  *Jensen*, 1 F.3d at 1078; *McCormick*, 26 F.3d at 880.[6]  At the very least, establishing "deception" here will demand an individualized and untenable inquiry into the knowledge of any particular class member at the time of the tender offer.  Proof of deception will depend upon the nature and extent of each plaintiff's particular knowledge as to the inaccessibility of Xcelera's financial records.  This individualized inquiry into the extent of class members' knowledge defeats

---

[6]     Indeed, any class member's ignorance of Xcelera's lack of financial disclosure would be the product of the shareholder's own recklessness, which would itself defeat any fraud claim they might assert.  *See Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993) ("§ 10(b) liability will not be imposed when an investor's conduct rises to the level of recklessness.").  Of course, Ms. Steginsky transacted not merely in reckless disregard, but with actual knowledge, of the alleged fraudulent omission, and that presents still another defense unique to her claims.

predominance.  *See In re IPO*, 471 F.3d at 43-44 (reversing certification on predominance grounds; where knowledge of alleged fraudulent scheme was "widespread," proof of liability would "precipitate individual inquiries as to the knowledge of each member of the class").

> **B.**     **Whether Investors Relied Upon the Alleged Omission Is Not Susceptible to Classwide Proof.**

Plaintiff's claims to reliance on the alleged omissions are not amenable to common, class-wide resolution.  As detailed above, "[r]eliance is an essential element of the § 10(b) private cause of action." *Stoneridge*, 552 U.S. 159.  In almost every fraud case "when plaintiffs must individually prove reliance … the putative class action fails the predominance requirement." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *12 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196, 201-02 (2d Cir. 2008).  For this reason, the reliance element frequently presents an insurmountable obstacle to certification under Fed. R. Civ. P. 23(b).  *Halliburton*, 131 S. Ct. at 2184 ("Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance.").

Here, for largely the same reasons that Ms. Steginsky's non-reliance renders her claims atypical, the issue of reliance also renders individualized issues of law and fact predominant over common ones.  Absent application of the *Affiliated Ute* presumption, the question of reliance will necessarily entail the predominance of individual issues.  *Halliburton*, 134 S. Ct. at 2408 ("If every plaintiff ha[s] to prove direct reliance on the defendant's misrepresentation, individual issues would overwhelm the common ones, making certification under Rule 23(b)(3) inappropriate.") (citations and internal quotation marks omitted); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 494 (S.D.N.Y. 2011) ("Without either the *Basic* or *Affiliated Ute* presumptions,

Plaintiffs are unable to satisfy their burden of proving that common questions of reliance predominate and class certification must be denied.").

But whether it is "logical" for the *Ute* presumption to attach—or, alternatively, whether that presumption has been rebutted—itself requires individualized inquiry into the particular circumstances of each class member's decision to tender.   Application of the *Affiliated Ute* presumption will depend upon the level of each investor's knowledge of the allegedly omitted information.  A plaintiff who (like Ms. Steginsky) knew that Xcelera's financial statements were unavailable, believed that the shares were worth more, and concluded that the tender offer was unfair, but traded anyway, has no valid claim to any reliance presumption under *Affiliated Ute*. *See* Section I.B, *supra*; *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008) ("[D]ifferences in plaintiffs' knowledge and levels of awareness also defeat the presumption of reliance."); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 269 F.R.D. 252, 265 (S.D.N.Y. 2010) (concluding that plaintiffs failed to establish common evidence of reliance, because "[w]hile the evidence presented by plaintiffs here is convincing on the question of whether investors generally rely on credit ratings, it does nothing to refute the fact that in *this* case some sophisticated investors chose not to rely—or relied only minimally—on the credit ratings prior to investing in the Rated Notes") (emphasis in original).

Likewise, a plaintiff who (like Ms. Steginsky) traded without reading the Tender Offer Materials has no claim to *Ute*'s presumption.  *See* Section I.C, *supra*; *Gallup*, 489 F. App'x at 556-57 (where named plaintiffs testified that they did not read reports containing allegedly misleading financial statements, the *Ute* presumption was rebutted because "[i]t necessarily follows that their decisions to sell their shares … were entirely unaffected by the contents of [the] financial statements"); *Eckstein*, 58 F.3d at 1171 (denying class certification on

predominance grounds despite *Affiliated Ute*:  "[p]eople who did not rely on what was in the materials cannot have relied on what was omitted; to them the public offering materials were so much waste paper"); *Goodman*, 300 F.R.D. at 108 ("that all members of the putative class invested in … portfolios does not necessarily mean that each putative class member even read or heard defendants' [allegedly false] representations").

Determination of whether each shareholder relied—or should be presumed to have relied—on anything that the Xcelera Defendants did or did not disclose would require inquiry into each shareholder's preferences, priorities and reasons for tendering his or her shares.  Such individualized inquiry into what each class member read, what they knew, and what they cared about, would overwhelm any common reliance questions.  Because the availability of the presumption of reliance is inimical to common proof, no Rule 23(b)(3) class should be certified.

### C.    Plaintiff's Fiduciary Duty Claims Are Not Susceptible to Classwide Proof.

The existence of a director's fiduciary duty to corporate shareholders under Cayman Islands law is "dependent on establishing a special factual relationship between the directors and the shareholders in the particular case."  *Peskin*, [2001] 1 B.C.L.C. 372 ¶ 33.  Whether any Xcelera Defendant was a fiduciary of any particular shareholder will require a delicate assessment of "all the circumstances" of that Defendant's relationship or contacts with that individual shareholder.  *Id.* at ¶ 34.  Such an individualized determination fundamentally, and by definition, resists amenability to common, class-wide proof.

## III.    THIS COURT SHOULD REJECT PLAINTIFFS' REQUEST TO RECONSIDER ITS DISMISSAL DECISION.

Plaintiff additionally moves this Court under Fed. R. Civ. P. 54(b) to reconsider its September 4, 2014 order dismissing her claims based on transactions other than the OFC tender offer.  Mem. at 18-20.  As her basis, Ms. Steginsky argues that this Court's dismissal of her

claims for lack of standing overlooked a supposedly controlling Court of Appeals decision from 2012 addressing the issue of "class standing." *See* Mem. at 18 (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)).   According to Ms. Steginsky, failure to consider that opinion requires this Court not only to reinstate those dismissed claims, but also to certify a broader class consisting of those who might assert them. Mem. at 18-20.   The request for reconsideration is without merit.

"The standard for granting motions for reconsideration is strict." *Haddock v. Nationwide Fin. Servs., Inc.*, 272 F.R.D. 61, 70 (D. Conn. 2010).   The Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citations and internal quotation marks omitted).   A court should not revise a prior order "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.*

Plaintiff's motion fails to meet the strict standards for reconsideration for at least three independent reasons.

*First*, Plaintiff's belated identification of a two-year-old precedent hardly represents an intervening change in controlling law or a remedy to any manifest injustice.   Indeed, in opposing the Xcelera Defendants' renewed motion to dismiss, Plaintiff raised the very argument she re-asserts in this motion (albeit without reference to *NECA-IBEW*)—*i.e.*, that Ms. Steginsky's supposed injuries are comparable to those of the broader class she seeks to represent.   *See* Dkt.

No. 108 at 8-10.  The location of additional authority for a lost argument is not sufficient justification to re-litigate issues already decided.  *See Tzanetis v. Weinstein & Riley, P.S.*, No. 3:09–CV–00413 (DJS), 2011 WL 3163503, at *3 (D. Conn. July 26, 2011) (denying motion for reconsideration where litigant "point[ed] to no new controlling law or evidence warranting consideration" but merely "forcefully repeat[ed] … arguments … previously presented …").

*Second*, Plaintiff ignores that her lack of standing was not the only basis for the dismissal of her non-tender offer claims.  More fundamental than her failure to plead an injury-in-fact arising from transactions in which she did not participate was her failure to plead that any such transactions even occurred.  After ample opportunity to amend, Plaintiff's Complaint still did not identify a single sale of Xcelera stock outside the context of the tender offer, much less with the specificity Rule 9(b) and the PSLRA require.  As the Court observed:

> [T]here's no effort to state a cause of action outside the tender offer.  There's no, literally no other transaction that is described in the complaint.  You have as a background statement that there were other transactions.  That's not 9b.  9b requires that you say so-and-so purchased so many shares from so-and-so on such-and-such date at such-and-such price and they were induced to do so by the following fraudulent statement.  It's not there.  She didn't even try to do that.

Dkt. No. 125 (Sept. 4 Hearing Transcript) at 12:23-13:6.  As a result, the Court held that "all claims unrelated to the tender offer have to be dismissed, both because they have not been adequately pled under Rule 9b, [and] frankly under Rule 8…."  *Id.* at 17:4-9.  Nothing in Plaintiff's standing argument addresses this more basic pleading deficiency.  *See Haddock*, 272 F.R.D. at 70 (denying reconsideration motion where argument for reconsideration failed to address alternate grounds for the Court's initial decision).

*Last*, *NECA-IBEW* offers Plaintiff no support in any event.  The Second Circuit there authorized a named plaintiff's "class standing" only where the conduct that allegedly caused her harm implicates "the same set of concerns" as the conduct alleged to have caused harm to a

distinct set of absent class members.   *NECA-IBEW*, 693 F.3d at 162.   In the misrepresentation/omission context, whether the alleged misconduct implicates the "same set of concerns for distinct sets of plaintiffs … will depend on the nature and content of the specific misrepresentation alleged."   *Id.*   Where each investor in each tranche of a mortgage-backed security purchased pursuant to the same offending representation in the same offering document, the alleged misconduct was of a sufficiently similar nature to permit a purchaser of one tranche to represent purchasers of other tranches under the doctrine of "class standing."   *Id.* at 164-65.

Sellers into the OFC tender offer, and sellers outside of the OFC tender offer, do not share such overlapping concerns.   Sales into the tender offer were allegedly made pursuant to a uniform set of written solicitation materials.   Sales outside the tender offer—presuming any of these hypothetical and un-pled transactions occurred at all—would have been made on shareholders' independent initiative and pursuant to individually negotiated terms.   *See* Am. Compl. ¶ 2-3 (noting that non-tender offer transactions occurred in "privately negotiated transactions" when minority shareholders "thr[e]w[] in the towel").   These two distinct sets of plaintiffs present alleged claims that are too fundamentally different in character, nature and content to merit application of the "class standing" doctrine.   *Cf. NECA-IBEW*, 693 F.3d at 162-64.   Besides, these supposed "privately negotiated" transactions unrelated to the tender offer would have involved non-uniform, oral representations and therefore would not be amenable to common proof in any event.   *Moore*, 306 F.3d at 1253.

## CONCLUSION

Plaintiff's Motion for Class Certification should be denied.   The Xcelera Defendants believe that the record before the Court demonstrates both that Plaintiff has failed to carry her burden to establish that a class should be certified, and that no further evidence is required. However, to the extent that the Court deems it necessary to supplement the record with

additional information or evidence, the Xcelera Defendants respectfully request that the Court conduct a hearing on any such issues.


Dated: November 19, 2014


Respectfully submitted,


/s/ Peter J. Macdonald
Peter J. Macdonald, phv01529
J. David Zetlin-Jones, phv06627
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
peter.macdonald@wilmerhale.com
david.zetlin-jones@wilmerhale.com


Charles W. Pieterse, Esq., ct01577
**WHITMAN BREEN ABBOTT**
   **& MORGAN LLC**
500 West Putnam Ave.
Greenwich, Connecticut 06830
Telephone: (203) 862-2332
Facsimile: (203) 869-1951
cpieterse@wbamct.com

*Attorneys for Defendants Xcelera, Inc., VBI Corp.,*
*Alexander M. Vik, and Gustav M. Vik*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 19th, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to the parties listed below who were unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

| | |
|---|---|
| Hans Eirik Olav<br>Dagaliveien 18 F<br>0776 Oslo<br>Norway | OFC Ltd.<br>c/o Mercury Management Limited<br>13 Curate Fenech Street<br>Birzebbugia, BBG2032<br>Malta |

By: /s/ David Zetlin-Jones
David Zetlin-Jones, phv06627