# EXHIBIT P



ABRAHAM, FRUCHTER & TWERSKY, LLP

August 29, 2014

**By E-Mail and US Mail**

David Zetlin-Jones, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

    Re:   *Steginsky v. Xcelera Inc., et al.*, No. 12 Civ. 188 (SRU) (D. Conn.)

Dear David:

    I write in response to your letter dated August 25, 2014 with respect to Plaintiff Gloria Steginsky's August 12, 2014 deposition.

    The Xcelera Defendants assert they should be able to explore the substance of a confidential conversation with Abraham, Fruchter & Twersky, LLP ("AF&T") because: (a) Plaintiff was not a client or prospective client of AF&T upon initial contact; (b) Plaintiff has involuntarily forfeited any privilege because reliance is purportedly at issue; and (c) at the very least, the subject matter of conversations with AF&T are discoverable. The Xcelera Defendants additionally argue that Plaintiff's designation of the deposition transcript as confidential was improper. The Xcelera Defendants' arguments are without merit.

**A.**    **Plaintiff's Initial Communication With AF&T is Protected by the Attorney-Client Privilege**

    This dispute arises out of a news article (bates stamped GS-445) describing the earlier *Feiner* action litigated by AF&T against certain of the Xcelera Defendants. The article appears to have been printed on or about February 1, 2011 by Plaintiff's daughter Eileen Steginsky, but Plaintiff could not recall on what date the article was sent to her. *See* Tr. at 160:12-17. Plaintiff testified that the article caused her to contact AF&T, but could not recall on what date the initial call to AF&T was made. *See* Tr. at 164:15-16. Plaintiff asserts that her initial communication with counsel was privileged.

    "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Matthews v. Lynch*, No. 07 Civ. 739 (HBF), 2009 U.S. Dist LEXIS 68591, at *5-6 (D. Conn. Aug. 6, 2009). Under Connecticut law

David Zetlin-Jones, Esq.
August 29, 2014
Page 2

"[a]n attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." *Id.* (quoting *DiStefano v. Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (Conn. 2005)). The attorney-client relationship can arise prior to formal engagement and will attach to a client's "initial statements" to an attorney. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) (quoting *U.S. v. Dennis*, 843 F.2d 652, 656 (2d Cir. 1988).

Contrary to the Xcelera Defendants' assertion that Plaintiff's initial contact was solely "for the purpose of deciding whether to sell her shares in Xcelera," Plaintiff specifically testified that she decided to file a lawsuit when she received the Tender Offer (*i.e.*, before she contacted AF&T). *See* Tr. 78:6-10 ("Q. You decided to file this case when you received the tender offer? . . . A. Yes."). Plaintiff believed that the Xcelera Defendants were affiliated with OFC. *See*, *e.g.*, Tr. at 118:12-17. Plaintiff's suspicions also caused her to document her efforts to obtain information about Xcelera prior to tendering. *See*, *e.g.* Tr. at 136:22-138:4. Plaintiff additionally testified that she decided to retain AF&T during the period she was searching for information concerning the Tender Offer. *See* Tr. at 112:6-10 ("Q. Do you know about when you decided to retain Abraham, Fruchter and Twersky? A. About the time I was very frustrated about not being able to receive any information no matter how many inquiries I made. Q. Do you recall approximately what month or what year that was? A. Around the time that the tender offer came.").

Thus, at the time Plaintiff contacted AF&T she was already suspicious that the Xcelera Defendants were behind the Tender Offer. Plaintiff knew that AF&T had previously been involved in a lawsuit against certain of the Xcelera Defendants and that she wanted to file a lawsuit. Under these circumstances it is fanciful for the Xcelera Defendants to argue that Plaintiff's initial confidential conversation with counsel at AF&T does not fall under the attorney-client privilege, especially where that lawsuit was, in fact, filed.

Nor is there any merit to the Xcelera Defendants' assertion that Plaintiff could not have been a prospective client at the time of her initial conversation because she had not yet tendered her shares. Plaintiff's claims were not entirely dependent on tendering and there still exists the possibility of certain other claims which do not depend on Plaintiff's tender. In any event, the invocation of the attorney client privilege is not dependent on claim's accrual, but rather on whether a person is seeking legal advice in confidence. *Accord Dennis*, 843 F.2d at 657 ("The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the conference to be confidential."). Here, the evidence demonstrates the privilege is applicable as Plaintiff contacted AF&T in confidence with the intent to file an action arising out of the Tender Offer.

Although Plaintiff did not recall at the time of her deposition (*see* Tr. at 110:23-111:2), Plaintiff and AF&T actually formalized their attorney-client relationship on or about February 15, 2011 as reflected in an engagement letter executed by Plaintiff on that date. Thus, Plaintiff's initial conversation with AF&T was contemporaneous with her formal engagement of the firm.

Accordingly, Plaintiff has properly invoked the attorney-client privilege where Plaintiff and AF&T, in fact, have an attorney-client relationship and had conversations at a time during which Plaintiff was contemplating filing a lawsuit arising out of the Tender Offer or otherwise. Moreover, Plaintiff's repeated assertion of the attorney-client privilege demonstrates that she intended those conversations to be confidential. *See, e.g.*, Tr. at 167:9-10 ("A. Any conversation that we had is between us.").

*The Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507 (S.D.N.Y. 2003), relied upon by the Xcelera Defendants, is not on point. In *Diversified*, the documents examined by the court *in camera* demonstrated that the potential client sought to "build a successful *business* relationship" with the attorneys. Here, in contrast, the evidence shows that Plaintiff contacted the attorneys at AF&T with the intent of filing a lawsuit arising out of the Tender Offer. In addition, AF&T has only acted in its professional capacity as attorneys in providing legal advice and has never provided any business advice to Plaintiff, including whether she should tender her shares of Xcelera.

### B. Plaintiff is Not Subject to Involuntary Forfeiture of the Attorney-Client Privilege

The Xcelera Defendants argue that the privilege protecting Plaintiff's conversation with counsel has been forfeited because reliance is at issue. That argument is based on a false premise.

The Second Circuit specifically held in this case that "the Supreme Court has 'dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established.'" *Steginsky v. Xcelera Inc.*, 741 F.3d 265, 370 (2d Cir. 2014) (quoting *Basic v Levinson*, 485 U.S. 224, 243 (1988), and citing *Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008)). Accordingly, the relevant inquiry here is not what Plaintiff's reasoning was for tendering her shares, but rather whether the Xcelera Defendants were in possession of material non-public information when purchasing Xcelera stock in the Tender Offer. *Accord Steginsky*, 741 F.3d at 370.

In arguing that the Xcelera Defendants are entitled to discovery as to "why [Plaintiff] tendered her shares[,]" the Xcelera Defendants ignore that Plaintiff has already provided ample testimony on that topic. Indeed, Plaintiff testified that she tendered her shares because she needed the money. *See, e.g.*, Tr. at 124:24-125:2 ("Q. Why did you ultimately decide to tender your shares into the tender offer? A. I needed the money."). Accordingly, even if involuntary forfeiture were appropriate here -- which it is not -- the Xcelera Defendants have suffered no undue prejudice where they, in fact, have evidence in hand of Plaintiff's reasons for tendering her shares.

The involuntary forfeiture doctrine only applies where undue prejudice results from a party attempting to use privilege as both a sword and a shield in presenting its claim to a fact finder. *See John Doe v. U.S.*, 350 F.3d 299, 302 (2d Cir. 2003). "The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's

David Zetlin-Jones, Esq.
August 29, 2014
Page 4

advancing a claim *to a court or jury (or perhaps another type of decision maker)* while relying on its privilege to withhold from litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *Id.* (emphasis added). The involuntary forfeiture doctrine is not applicable to deposition testimony which has not been used to influence a fact finder. *Accord In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).[1]

Here, Plaintiff makes no effort to rely on the advice of counsel as a basis for her claim. Accordingly, the doctrine of involuntary forfeiture is not applicable as the issue of reliance is being interjected by the Xcelera Defendants, making any purported unfairness a figment of their imagination.[2]

C.   **Defendants Possess Sufficient Information to Assess Plaintiff's Privilege Assertion**

The Xcelera Defendants contend that counsel's instruction not to answer questions concerning the subject matter of privilege communications was "fatally overbroad." The Xcelera Defendants are in error.

Fed. R. C. P. 26(b)(5), provides that a party seeking to withhold privileged information must: (i) expressly make that claim; and (ii) "describe the *nature* of the . . . communications . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." (Emphasis added.)

Plaintiff has satisfied her obligation under Fed. R. Civ. P. 26(b)(5). Plaintiff expressly asserted the attorney-client privilege at the deposition. As discussed in Section A, *supra.*, Plaintiff has also provided sufficient information concerning the circumstances of Plaintiff's first contact with AF&T to allow the Xcelera Defendants to assess the claim of privilege. Moreover, Plaintiff specifically testified to the nature of her first contact with AF&T. *See* Tr. at 163 ("A. . . . What I was anxious to do was get some information regarding them, and with the name of the law firm there I called . . ."). To provide more specifics concerning the purported "subject matter" of the initial contact, to the extent Plaintiff could recall (*see* Tr. at 165:3-4), would require revealing the privileged information itself.

The Xcelera Defendants' reliance on Conn. Local Rule 26(e), is entirely without merit as the rule specifically states that: "[t]his rule shall apply only to requests for documents or

---

[1]   *U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), upon which the Xcelera Defendants' also rely, is inapposite. In *Bilzerian* Second Circuit held that if defendant's testimony *at trial* touched upon his good faith compliance with the federal securities laws the jury would be entitled to know the basis of his understating that his actions were legal. Here, Plaintiff testimony was at a deposition and Plaintiff has not relied upon the advice of counsel as support for her claim.

[2]   *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 257 (S.D.N.Y. 2013), and the other cases discussed by the Xcelera Defendants concerning knowledge of fraud are factually and legally inapposite and irrelevant to this discovery dispute and, therefore, will not be addressed further here.

David Zetlin-Jones, Esq.
August 29, 2014
Page 5

electronically stored information." *Bowne v. Ambase Corp.*, 150 F.R.D. 465, 472 (S.D.N.Y. 1993), also relied upon by the Xcelera Defendants, is inapposite as the party opposing discovery there failed to provide any evidence to support its claim of privilege. Here, as discussed above in Section A, *supra.*, Plaintiff's deposition testimony provides ample support for her privilege assertion.

Accordingly, the Xcelera Defendants' efforts to undermine the privilege are without merit.

**D.   Plaintiff's Deposition Transcript is Properly Designated Confidential**

The Stipulated Protective Order entered by the Court on April 29, 2014, provides that a party may designate as confidential any "information implicating an individual's legitimate expectation of privacy." The deposition touched on many such subjects which Plaintiff could legitimately expect to be kept private including her family's finances, her husband's health and other personal matters. *Accord California Banker Association v. Shultz*, 416 U.S. 21, 88 (1974) ("One's bank accounts are within the 'expectations of privacy' category."); *Fleming v. State Univ. of New York*, 502 F. Supp. 2d 324, 342 (E.D.N.Y. 2007) ("the Supreme Court has recognized a constitutional privacy right protecting 'the individual interest in avoiding disclosure of personal matters,' . . . and the Second Circuit has held that this right encompasses 'information about the state of one's health'") (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977) and *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)). Accordingly, the deposition transcript is entitled to confidential treatment under the terms of the Protective Order.

\*   \*   \*

Plaintiff is available to meet and confer as to these issues at the parties' earliest mutual convenience.

Very truly yours,

Philip T. Taylor